BRUCE M. BETTIGOLE (Admitted *Pro Hac Vice*)
bruce.bettigole@sutherland.com
DEBORAH G. HEILIZER (Admitted *Pro Hac Vice*)
deb.heilizer@sutherland.com
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004-2415
Telephone: (202) 383-0100
Facsimile: (202) 637-3593

MIKE MARGOLIS, ESQ. SBN: 087785
margolis@winlaw.com
TIMOTHY J. MARTIN, ESQ. SBN: 150304
tmartin@winlaw.com
MARGOLIS & TISMAN LLP
444 South Flower Street, Suite 2300
Los Angeles, California 90071
Telephone: (213) 683-0300
Facsimile: (213) 683-0303

Attorneys for Defendants
AMERIPRISE FINANCIAL, INC., SECURITIES AMERICA, INC.
and SECURITIES AMERICA FINANCIAL CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| JANA MCCOY, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>CULLUM & BURKS SECURITIES, INC., et al.,<br><br>Defendants. | Case No. SACV 09-1084 DOC(RNBx)<br><br>**DEFENDANT SECURITIES AMERICA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| This document relates to:<br>No. 09-SACV-1084 DOC (RNBx)<br>No. 09-SACV-1295 DOC (RNBx)<br>No. 09-SACV-1340 DOC (MLG)<br>No. 09-SACV-8482 DOC (RNBx) | **Date:** **May 24, 2010**<br>**Time:** **8:30 a.m.**<br>**Place:** **Ctrm 9D** |

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

8988812.1

# Table Of Contents

**Page**

1.   PRELIMINARY STATEMENT ................................................. 1

2.   ALLEGATIONS RELEVANT TO THIS MOTION ........................ 2

3.   ARGUMENT ......................................................................... 5

    A.   PLAINTIFFS MUST SATISFY AN EXACTING PLEADING
        STANDARD UNDER RULE 8 AND RULE 9(b) ................... 5

    B.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION
        12(a)(1) OF THE ACT (COUNT I) ................................. 7

        (1)   The Claim Is Time Barred ..................................... 8

        (2)   Even If The Claim Were Not Time Barred, It Is
               Improperly Alleged ............................................. 8

    C.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION
        12(a)(2) OF THE ACT (COUNT II) ............................... 10

        (1)   Neither The Underlying Fraud Nor Securities America's
               Alleged Role In It Is Pled With Particularity ............... 12

               a.   The Alleged Underlying Fraud Is Not Pled With
                    Particularity ............................................. 12

               b.   Securities America's Alleged Role in the
                    Underlying Fraud Is Not Pled With Particularity ............. 17

        (2)   The Complaint Does Not Properly Plead That Any
               Alleged Misstatements Or Omissions In The PPMs Were
               False or Misleading When Made ................................... 19

4.   CONCLUSION ....................................................................... 21

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

i

# Table of Authorities

**Pages**

**Cases**

Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 __ L. Ed. 2d __ (2009) ....................... 5, 6, 7, 9

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929
(2007).......................................................................................................... passim

Carroll v. Fort James Corp., 470 F.3d 1171 (5th Cir. 2006) (citations omitted) .......................... 7, 16

Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)..................................... 6

Eshelman v. Orthclear Holdings, Inc., No. C-07-1429-JSW, 2009 WL 506864, at *11 (N.D. Cal.
Feb. 27, 2009) .................................................................................................... 9

Ferland v. Orange Groves of Florida, Inc., 377 F. Supp. 690, 706 (M.D. Fla. 1974) ...................... 15

Hanson v. Johnson, Civil No. 02-3709, 2003 U.S. Dist. LEXIS 11717, at *7-*11 (D. Minn. 2003) . 8

In re Daou Sys., Inc. Securities Litigation, 411 F.3d 1006, 1027 (9th Cir. 2005)..................... passim

In re Flag Telecom Holdings, Ltd. Sec. Litig., 308 F. Supp. 2d 49 (S.D.N.Y. 2004) ...................... 20

In re Glenfed, Inc. Securities Litigation, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc)......... 7, 16

In re Harmonic, Inc. Securities Litigation, 163 F. Supp. 2d 1079, 1088-89 & n.8 (N.D. Cal. 2001) 11

In re Infonet Servs. Corp. Securities Litigation, 310 F. Supp. 2d 1080, 1094 (C.D. Cal. 2003)....... 11

In re Leadis Technology, Inc. Securities Litigation, No. C-05-00882, 2006 WL 496039, at *4 (N.D.
Cal. Mar. 1, 2006).......................................................................................... 10, 15

In re Stac Elecs. Securities Litigation, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996), cert. denied, 520 U.S.
1103 (1997).................................................................................................. 11, 19

Nolfi v. Ohio Kentucky Oil Corp., 562 F. Supp. 2d 904, 909 (N.D. Ohio 2008) .............................. 8

Patel v. Holiday Hospitality Franchising, Inc., 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001)............ 19

TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S. Ct. 2126, 2132, 48 L. Ed. 2d 757
(1976)............................................................................................................ 20

Ves v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003) ....................................... 12

Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1278 (11th Cir. 2006)........................... 10, 11

Williams v. WMX Technologies, Inc., 112 F.3d 175, 178 (5th Cir. 1997)................................... 12, 19

ii

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW
444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

M2Dismiss(SAI)_100524_MPA

## Statutes

15 U.S.C. § 75l(a)(1) ................................................................................................ 7

15 U.S.C. § 77 l(2) .................................................................................................. 15

15 U.S.C. § 77l(a)(2) .............................................................................................. 10

15 U.S.C. § 77m .................................................................................................... 8

## Rules

17 C.F.R. §§ 230.501(e)(1)(iv), 230.506 ............................................................. 7

17 CFR § 240.10b-5 .............................................................................................. 15

Fed. R. Civ. P. 8(a)(2) (emphasis added) ............................................................. 5

Fed. R. Civ. P. 9(b) ............................................................................................... 6

Rule 506 of Regulation D may be found at 17 C.F.R. § 230.506 ......................... 3

Rule 506 of Regulation D, 17 C.F.R. § 230.506 .................................................. 7

Securities and Exchange Commission Rule 10b-5 ............................................... 15

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

Defendant Securities America, Inc. ("Securities America") submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss the Consolidated Amended Class Action Complaint ("Complaint" or "Compl.").

## 1.   PRELIMINARY STATEMENT

The Complaint seeks to impose liability on Securities America, and several other registered broker-dealers, for alleged misrepresentations, omissions and other misconduct by several entities that are presently under the control of a court-appointed receiver and immune from suit under a court-ordered stay.  Unable to pursue their alleged claims against the proper defendants, Plaintiffs Henry Mitchell and Alvin and June Sabroff ("Plaintiffs") instead attempt to stretch provisions of the Securities Act of 1933 (the "Act") beyond the breaking point in seeking to hold Securities America and the other Defendants accountable for the alleged misconduct of these other insolvent entities.  With the benefit of hindsight, a statutory receiver, and a civil action by the Securities and Exchange Commission ("SEC"), Plaintiffs outline, in purely conclusory fashion, the purported indicia of a fraudulent scheme perpetrated by others but for which Plaintiffs seek to hold Securities America liable. This action is misdirected and baseless, as is vividly demonstrated by Plaintiffs' inability to properly plead their claims against Securities America.

The Complaint alleges three claims.  Count I alleges a violation of Section 12(a)(1) of the Act against all Broker Defendants (as the term "Broker Defendants" is defined in paragraph 1 of the Complaint); Count II alleges violations of Section 12(a)(2) of the Act against all Broker Defendants; and Count III alleges control person liability under Section 15 of the Act against the purported Control Person Defendants (as the term "Control Person Defendants" is defined in paragraph 11 of the Complaint).   The Complaint, while painting a picture of purported misrepresentations, omissions, accounting irregularities, misuse of funds, and other wrongdoing by the Medical Capital entities (as those entities are defined in paragraph 5 of the Complaint), fails to allege facts that show any wrongdoing by Securities

1

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 South Flower Street
Suite 2300
Los Angeles
California 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

M2Dismiss(SA)_100524_MPA

America.  Rather, Plaintiffs' case against Securities America is based solely on unsupported and conclusory assertions that Securities America is responsible under the referenced sections of the Act for the alleged wrongdoing of the Medical Capital entities.  Plaintiffs' allegations are insufficient as a matter of law, and in the case of Count I, the claim is time-barred.  The Complaint against Securities America should be dismissed in its entirety.[1]

## 2.    ALLEGATIONS RELEVANT TO THIS MOTION

The Complaint alleges, in pertinent part, the following:

In July 2007, Plaintiffs Alvin and June Sabroff purchased certain securities issued by Medical Provider Financial Corporation IV ("MP IV"), and in December 2007 and July 2008, Plaintiff Henry Mitchell purchased certain securities issued by Medical Provider Funding Corporation V ("MP V").  (Compl. ¶¶ 1, 16, 18.)  Both MP IV and MP V are special purpose corporations wholly-owned by Medical Capital Holdings, Inc. ("MCHI") and administered by Medical Capital Corporation ("MCC"), another wholly-owned subsidiary of MCHI.  (Id. ¶¶ 1, 5.)  These securities were part of a series of unregistered securities offered by MCHI from September 2003 until July 2009.  These offerings were for the stated purpose of funding MCHI's medical provider financing operations, as MCHI was in the business of providing financing to healthcare providers in the United States by purchasing their accounts receivable and making secured loans to them.  (Id. ¶¶ 4, 30.)  MCHI raised funds by selling Notes issued by the special purpose corporations, such as MP IV and MP V, which were created by MCHI to hold the receivables and related assets.  (Id.)  Sales

---

[1]  Only three of the eight named plaintiffs in this consolidated class action allegedly purchased securities from Securities America, as distinct from the other named Broker Defendants.  Accordingly, this motion on behalf of Securities America is directed to the claims of Plaintiffs Henry Mitchell and Alvin and June Sabroff under Counts I and II.  Defendants Ameriprise Financial, Inc. and Securities America Financial Corp. are alleged as "Control Person Defendants" with respect to Securities America under Count III and have moved separately for dismissal of that claim.

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW
444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

M2Dismiss(SA1)_100524_MPA

of the Notes were made pursuant to Private Placement Memoranda ("PPMs").  (Id. ¶ 6.)

The Notes were offered and sold to the public through a nationwide network of more than sixty broker-dealers, including the Broker Defendants, pursuant to PPMs, "in a series of integrated Offerings as unregistered private placements exempt from the registration requirements of the Securities Act under Rule 506 of Regulation D."  (Id. ¶ 66).[2]

Without specifying the particular Broker Defendants to which the allegations are directed, the Complaint alleges that certain Broker Defendants solicited attendees and conducted presentations on Medical Capital investments, among other options, in Sarasota, Florida, Dallas/Fort Worth, Texas, Boston, Massachusetts, and Los Angeles, California, allegedly resulting in more than thirty-five of the Medical Capital investors not being "accredited investors."  (Id. ¶¶ 69-73, 76.)  The Complaint offers no definition of the term "accredited investor" and fails to identify any individuals, including any of the Plaintiffs themselves, as persons who were not accredited investors.

Defendant Securities America is a registered broker-dealer (id. ¶ 23), and is not alleged to have been, nor was it, an issuer or underwriter of the Medical Capital securities at issue.  Nor is Securities America alleged to have had any involvement in the drafting or preparation of any portion of the PPMs or any other offering document issued by MP IV and/or MP V.

Various Medical Capital entities, none of which is a named defendant, are alleged to have offered the securities at issue pursuant to PPMs, alleged to be "substantially similar in all material respects" (id. ¶ 83), that contained untrue statements of material fact and omissions of material fact necessary in order to make the statements, in light of the circumstances under which they were made, not

---

[2]  Rule 506 of Regulation D may be found at 17 C.F.R. § 230.506.

3

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW
444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

M2Dismiss(SA)_100524_MPA

misleading.  "The untrue statements and omissions concerned, among other things, Medical Capital's accounting deficiencies and failures, use of investor proceeds for improper investments, lack of internal controls, misuse of investor proceeds, inflated and unreliable collateral valuations and defaults."  (Id. ¶ 9.)  The Complaint, relying exclusively on reports by the court-appointed receiver and materials alleged in the SEC's complaint, alleges the foregoing activity in conclusory fashion, but very clearly and expressly alleges that all of such wrongdoing was committed by, or reflected the improper and wrongful practices of, Medical Capital (id. ¶¶ 63-65), not Securities America.[3]

Despite such repeated, though conclusory, allegations of fraudulent practices with respect to the underlying securities offerings, however, "Plaintiffs specifically disclaim any allegations of fraud in connection with these Securities Act claims." (Id. ¶ 2.)  Plaintiff Mitchell allegedly purchased MP V securities from Securities America (id. ¶ 16), but no allegations are made as to the specific time or place of purchase, or the specific identity of any Securities America representative allegedly involved in the purchase.  Similarly, Plaintiffs Alvin and June Sabroff allegedly purchased MP IV securities from Securities America (id. ¶ 18), but again no allegations are made as to the specific time or place of the purchase, or the identity of any Securities America representative allegedly involved in the purchase.

It is alleged that, beginning in August 2008, MP III through MP VI began to default on their obligations to make payments of interest and/or principal to holders of Notes (as the term "Notes" is defined in paragraph 1 of the Complaint).  (Id. ¶ 54.) The Broker Defendants and other broker-dealers allegedly continued to offer and sell the Notes and represent that Medical Capital had never defaulted on any of the Notes

---

[3]  The term "Medical Capital" when used in the Complaint refers to MCHI and its subsidiaries, including the special purpose corporations that issued the Notes, unless otherwise indicated in the Complaint.  (Id. ¶¶ 5, 31.)

4

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

(id. ¶ 55), but no detail or specificity whatsoever is provided as to who, when or where any individual Broker Defendant did so, or in what manner and to whom such alleged representations were made.   On July 16, 2009, the SEC commenced an enforcement action against several of the Medical Capital entities for alleged securities violations.  (Id. ¶ 56.)  In that action, the court issued an order on August 3, 2009 that stayed all litigation against such Medical Capital entities.  (Id. ¶ 42.)

## 3.   ARGUMENT

While the Complaint alleges that Securities America and other Broker Defendants violated Sections 12(a)(1) and 12(a)(2) of the Act and are liable to Plaintiffs for unspecified damages, these allegations are purely conclusory and are unaccompanied by the requisite level of factual detail to make out legally cognizable claims against Securities America.   At no point do Plaintiffs allege that Securities America conducted, or even knew about, any of the alleged wrongdoing of the Medical Capital entities.   Indeed, at no point in the Complaint do Plaintiffs even differentiate among the various Defendants with respect to any alleged acts of wrongdoing; rather, all Defendants are repeatedly lumped together in conclusory fashion.  Plaintiffs fail to meet the exacting pleading standard under either Rule 8 or Rule 9(b) of the Federal Rules of Civil Procedure.   In addition, Plaintiffs' Section 12(a)(1) claim is time-barred and should be dismissed for that additional reason.

### A.   PLAINTIFFS MUST SATISFY AN EXACTING PLEADING STANDARD UNDER RULE 8 AND RULE 9(B)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  The Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) and, more recently, Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 __ L. Ed. 2d __ (2009), articulated the standards that apply to test the sufficiency of a plaintiff's complaint in the face of a motion to dismiss pursuant to Rule 12(b)(6). "To survive a

5

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

M2DismissSAD_100524_MPA

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The Court must accept all factual allegations as true, but this requirement does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. (citing Twombly, 550 U.S. at 555). Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

Essentially, the Supreme Court has endorsed a two-step process for evaluating the sufficiency of a complaint under this plausibility standard. This process requires district courts to (1) identify and disregard all legal conclusions in the complaint, and (2) determine whether the remaining factual allegations plausibly suggest the defendant's liability.

The Supreme Court's decisions in Twombly and Iqbal mark a considerable departure from the oft-invoked "no set of facts" standard, extracted from Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), for evaluating a defendant's motion to dismiss. By replacing Conley's "no set of facts" standard with the plausibility standard of Twombly and Iqbal, the Supreme Court has ushered in a more rigorous and fact-intensive test for assessing whether a complaint fails to state a claim upon which relief can be granted.

In addition to the new Rule 8(a)(2) plausibility standard, Rule 9(b) of the Federal Rules of Civil Procedure continues to require even greater specificity when pleading fraud or mistake. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s demand for particularity, the complaint

6

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

M2Dismiss(SA)_100524_MPA

must plead two types of information: (1) the "time, place, and content of alleged misrepresentation" (the "neutral FACTS necessary to identify the transaction" (emphasis added)); and (2) "an explanation as to why the statement or omission complained of was false or misleading." In re Glenfed, Inc. Securities Litigation, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc). In essence, Rule 9(b) requires the complaint to show "the who, what, when, where, and how of the alleged fraud." Carroll v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006) (citations omitted).

As discussed below, Plaintiffs' allegations fail to satisfy Twombly and Iqbal, as well as the particularity requirements of Rule 9(b) for fraud-based claims.

## B.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 12(A)(1) OF THE ACT (COUNT I)

Count I of the Complaint alleges a violation of Section 12(a)(1) of the Act. Section 12(a)(1) provides a cause of action for the purchaser of a security that is offered or sold in violation of Section 5 of the Act. 15 U.S.C. § 77l(a)(1). Section 5 provides that it is unlawful to sell a security for which a registration statement has not been filed. Id. at § 77e. Section 5 does not apply, however, if the securities are exempt from registration as a private offering. Exemption from the registration requirements may be found under the regulatory safe harbor provision that permits the sale of unregistered securities to thirty-five or fewer "unaccredited investor[s]." See 17 C.F.R. §§ 230.501(e)(1)(iv), 230.506.[4] Plaintiffs' claim under Section 12(a)(1) is time barred, and their allegations fall far short of sufficiently alleging a claim even if the claim were not time barred.

---

[4] Private offerings that are exempt from registration requirements are often referred to as "Regulation D" offerings, as the limitation on sales to no more than thirty-five unaccredited investors is embodied in Rule 506 of Regulation D, 17 C.F.R. § 230.506.

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

### (1)   The Claim Is Time Barred

An action to enforce a liability created under Section 12(a)(1) is untimely "unless brought within one year after the violation upon which it is based." 15 U.S.C. § 77m. The one-year statute of limitations for Section 12(a)(1) claims is not subject to a discovery rule or any other equitable tolling doctrine. See Nolfi v. Ohio Kentucky Oil Corp., 562 F. Supp. 2d 904, 909 (N.D. Ohio 2008); Hanson v. Johnson, Civil No. 02-3709, 2003 U.S. Dist. LEXIS 11717, at *7-*11 (D. Minn. 2003). Since the original complaint in this action was filed on September 18, 2009, only a claim for purchases made on or after September 18, 2008 would be timely. However, the only named Plaintiffs who allege the purchase of Medical Capital securities from Securities America are Plaintiffs who made purchases of such securities prior to September 18, 2008. Plaintiffs Alvin and June Sabroff are alleged to have purchased MP IV Notes in July 2007, and Plaintiff Henry Mitchell is alleged to have purchased MP V Notes in December 2007 and July 2008. (Compl. ¶¶ 16, 18.) Plaintiffs further allege that prior to the time of these purchases in July 2007, December 2007, and July 2008, a violation of Section 5 of the Securities Act had already occurred. (Compl. ¶¶ 16, 18.) There is no allegation in the Complaint that any of the named Plaintiffs purchased Medical Capital securities from Defendant Securities America on or after September 18, 2008. Because none of the named Plaintiffs purchased Medical Capital securities from Securities America within the one-year limitations period, Plaintiffs' cause of action against Securities America for a violation of Section 12(a)(1) is time-barred and must be dismissed.

### (2)   Even If The Claim Were Not Time Barred, It Is Improperly Alleged

Plaintiffs have failed to allege sufficient facts to support their conclusory allegations that Defendant Securities America offered and/or sold Notes to unaccredited investors, that more than thirty-five Medical Capital investors were unaccredited, and that a violation of Section 5 of the Act (pertaining to the

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

M2Dismiss(SA)_100524_MPA

1   registration requirement) occurred before Plaintiffs purchased their MP IV and MP V

2   Notes. (Compl. ¶¶ 16, 76, 79.)  Accordingly, Plaintiffs have failed to properly plead

3   the elements of a Section 12(a)(1) claim.

4       To properly plead a Section 12(a)(1) claim under the plain language of the

5   statute, a plaintiff must demonstrate that his/her own purchase violated the

6   registration or qualification requirements, "either because the plaintiff was not an

7   accredited investor or because the company was not entitled to an exemption at the

8   time of the plaintiffs' investment."  Eshelman v. Orthclear Holdings, Inc., No. C-07-

9   1429-JSW, 2009 WL 506864, at *11 (N.D. Cal. Feb. 27, 2009).  Plaintiffs do not

10  allege that they were not accredited investors at the time of their purchases, or that

11  their purchases as unaccredited investors exceeded the limit of thirty-five and caused

12  either MP IV or MP V to lose its exempt status.

13      Plaintiffs must therefore allege that they personally were offered or bought

14  securities that, at the time of such offer or sale, should have been registered but were

15  not -- i.e., that the thirty-five limit was previously exceeded.  Id.  Plaintiffs fail to

16  properly do so.  While they allege that, prior to the time of their purchases "a

17  violation of Section 5 of the Securities Act had occurred" (Compl. ¶¶ 16, 18), such

18  allegations are purely conclusory and are unsupported by any credible factual

19  allegations.  Plaintiffs allege that certain unspecified Broker Defendants generally

20  solicited attendees and conducted Medical Capital presentations in a variety of states

21  but then speculate that more than thirty-five of the resulting investors are not

22  "accredited investors" without identifying Securities America as one of these Broker

23  Defendants, or any specific individuals alleged to be unaccredited investors, or

24  providing any other basis for such speculation. (Id. ¶¶ 69-73, 76.)  Such pleading by

25  speculation is precisely the sort of pleading that the new standard under Rule 8 no

26  longer allows.  See Iqbal, 129 S. Ct. at 1949 (court should not accept as true

27  "[t]hreadbare recitals of the elements of a cause of action, supported by mere

28

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

9

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

M2Dismiss(SAI)_100524_MPA

conclusory statements" (citing <u>Twombly</u>, 550 U.S. at 555)).   Count I should be dismissed for this additional reason.

## C.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 12(A)(2) OF THE ACT (COUNT II)

Count II of the Complaint alleges a violation of Section 12(a)(2) of the Act. Section 12(a)(2) provides a cause of action to purchasers of securities when any person offers or sells a security by means of a prospectus or oral communication which includes an untrue statement of a material fact, or omits to state a material fact necessary in order to make the statements, in light of the circumstances in which they were made, not misleading.   15 U.S.C. § 77l(a)(2).   This section does not require a plaintiff to allege or prove fraud.   Nevertheless, Plaintiffs' claim against Securities America under Section 12(a)(2) of the Act is in the nature of a fraud claim.   As such, the claim must be pled with the particularity required by Rule 9(b).   Plaintiffs fail to satisfy Rule 9(b), or even the new standard under Rule 8.

Where the gravamen of a claim involves fraud, even if the claim is pled as a non-fraud claim under the Act, the exacting pleading requirements of Rule 9(b) apply, and the circumstances constituting fraud "shall be stated with particularity." Fed. R. Civ. P. 9(b); <u>see</u> <u>In re Daou Sys., Inc. Securities Litigation</u>, 411 F.3d 1006, 1027 (9th Cir. 2005) (where a complaint "sounds in fraud" the heightened pleadings standards of Rule 9(b) apply to claims brought under Sections 11 and 12(a)(2) of the Act); <u>Wagner v. First Horizon Pharm. Corp.</u>, 464 F.3d 1273, 1278 (11th Cir. 2006) ("The purpose of [Rule 9] is to protect a defendant's good will and reputation when that defendant's conduct is alleged to be fraudulent."); <u>In re Leadis Technology, Inc. Securities Litigation</u>, No. C-05-00882, 2006 WL 496039, at *4 (N.D. Cal. Mar. 1, 2006) (despite the absence of fraud elements in a Section 12(a)(2) claim, an issuer's failure to disclose ongoing conduct the issuer must have known about is "a quintessential fraud claim"); <u>In re Infonet Servs. Corp. Securities Litigation</u>, 310 F.

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

M2DamianSAJ_100524_MPA

Supp. 2d 1080, 1094 (C.D. Cal. 2003); In re Harmonic, Inc. Securities Litigation, 163 F. Supp. 2d 1079, 1088-89 & n.8 (N.D. Cal. 2001).

Moreover, Rule 9(b) applies to a non-fraud claim under the Act even where a complaint, as here, affirmatively disclaims reliance on fraud (Compl. ¶ 2), where "the gravamen of the complaint is plainly fraud." In re Stac Elecs. Securities Litigation, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996), cert. denied, 520 U.S. 1103 (1997).

In Wagner, the complaint alleged nonfraud claims under sections 11 and 12 of the Act as well as certain fraud claims. The court concluded, with respect to the non-fraud securities claims, that:

> The purpose of the rule is to protect a defendant's good will and reputation when that defendant's conduct is alleged to have been fraudulent. This conclusion does not add new elements to the nonfraud claims nor does it elevate the pleading standard when the claim is not alleged to have been part of another fraud-based claim. **If plaintiffs bring a § 11 or § 12(a)(2) claim without alleging the misrepresentation at issue in the claim was fraudulent, they would avoid the heightened pleading requirements of Rule 9(b). On the other hand, if the plaintiffs are claiming that the § 11 or § 12(a)(2) misrepresentation is part and parcel of a larger fraud, then the rule's protective purpose attaches, and plaintiffs must plead with particularity.**

464 F.3d at 1278 (emphasis added).

In In re Daou, the Ninth Circuit clarified when claims under the Act are subject to Rule 9(b)'s heightened pleading requirements and held that, where the plaintiff alleges a "unified course of fraudulent conduct" and relies "entirely on that course of conduct as the basis of a claim," the claim must be viewed as being "grounded in

11

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

M2Dismiss(SA)_100524_MPA

fraud" and "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." In re Daou, 411 F.3d at 1027 (citing Ves v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003)).  Further, even where fraud is not an essential element of the claim, the plaintiff must still satisfy the heightened pleading requirements of Rule 9(b) as to any particular allegations of fraudulent conduct.  In that instance, "[t]he proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." Id. (citation omitted).

Plaintiffs fail to meet this standard, or even the standard under Rule 8.

### (1)     Neither The Underlying Fraud Nor Securities America's Alleged Role In It Is Pled With Particularity

As to Count II, the Complaint, despite its length, fails to satisfy either Rule 9(b)'s particularity standard or even the new Rule 8 standard with respect to (i) the underlying alleged fraud, and (ii) Securities America's alleged role in that fraud.[5]

### a.     The Alleged Underlying Fraud Is Not Pled With Particularity

The Complaint is replete with conclusory allegations of a unified course of fraudulent conduct perpetrated by the Medical Capital entities.  Such alleged fraudulent conduct by the Medical Capital entities forms the predicate for Plaintiffs' Section 12(a)(2) claim against Securities America.  Despite Rule 9(b)'s clear application here, and its demanding particularity requirements, Plaintiffs have failed to plead the underlying fraud with sufficient particularity to survive dismissal.

---

[5]   Although the Complaint is fairly lengthy (at 28 pages), it is important to keep in mind that "[a] complaint can be long-winded, even prolix, without pleading with particularity.  Indeed, such a garrulous style is not an uncommon mask for an absence of detail." Williams v. WMX Technologies, Inc., 112 F.3d 175, 178 (5th Cir. 1997).

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

M2Dismiss(SA)_100524_MPA

There can be no dispute that this Complaint is based upon an alleged unified course of fraudulent conduct.  Plaintiffs thus allege that MCHI issued "a series of overlapping integrated unregistered offerings of the Notes" from September 2003 through July 2009 (Compl. ¶ 4); that these Note offerings were for the stated purpose of funding MCHI's medical provider financing operations (id.); that MCHI raised such funds by selling specific Notes issued by special purpose corporations (such as MP IV and MP V) which were created allegedly to hold the receivables and related assets (id.); that the Notes were offered and sold pursuant to PPMs, alleged to be substantially similar to one another, through a national network of broker-dealers that included the Broker Defendants (id. ¶¶ 6, 83); that presumably all of the PPMs contained untrue statements of material fact and omissions of material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading (id. ¶ 9); that two senior executives of the Medical Capital enterprise "misappropriated and wrongfully used hundreds of millions of dollars of investor funds raised in the Offerings" (id. ¶ 10); that the PPMs concealed or effectively misrepresented ongoing accounting deficiencies and failures, repeated and ongoing use of investor proceeds for improper investments, lack of internal controls, inflated and unreliable collateral valuations, and defaults (id. ¶¶ 9, 90); and that an SEC complaint and reports by the court-appointed receiver identify numerous instances of wrongdoing in the Medical Capital operation, including for example misstating the value of numerous assets, improperly making numerous undisclosed investments unrelated to the represented health care purpose of the Notes, and misappropriating and wrongfully using investor funds to pay administrative fees to an affiliate (id. ¶¶ 91, 102, 105, 107).

The Medical Capital entities' alleged fraud can be summed up as a six-year scheme to secure investors' funds for personal and improper purposes, using numerous "substantially similar" PPMs containing misrepresentations or omissions to sell "overlapping integrated unregistered offerings of Notes" to "more than 20,000

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

M2DismissSAI)_100524_MPA

investors" on a nationwide basis by "at least 60 brokerage firms." (See id. ¶¶ 4, 8, 66, 75, 83, 89-121.)   The misrepresentations and omissions in the PPMs are clearly alleged to pertain to many existing and ongoing acts, events and conditions that were not disclosed or in some cases were affirmatively misrepresented, including:

- The alleged failure to disclose (i) that Medical Capital's accounting records did not comply with GAAP (id. ¶¶ 92, 93); (ii) the practice of repeated sales of an asset by one related entity to another (id. ¶¶ 94, 95); (iii) that the special purpose corporations purchased non-existent receivables (id. ¶¶ 96, 97); (iv) that Medical Capital commingled funds between entities and overpaid for assets (id. ¶¶ 98, 99); (v) that Medical Capital's collateral reports overstated assets and resulted in improper payments of administrative fees to MCC (id. ¶¶ 102-04); and (vi) numerous investments unrelated to the healthcare field (id. ¶¶ 105, 106); and

- The alleged misrepresentation (i) that proceeds from sales of Notes would not be used to pay administrative fees to MCC, when in fact they were (id. ¶¶ 86, 107); (ii) that the Notes would be secured by assets consisting of healthcare accounts receivable proceeds, other rights and assets related to the healthcare industry and other assets which would be pledged to a trustee for the benefit of Note holders, when in fact they were not (id. ¶¶ 87, 113); (iii) the manner in which collateral was to be preserved and maintained by the trustee, which was not followed (id. ¶¶ 88, 114-15); and (iv) that a specific amount of proceeds from the issuance of the Notes has been used to finance accounts receivable, when in fact a much smaller amount was so used with the difference used to pay commissions and other administrative expenses (id. ¶¶ 107-08).

The nature, extent and longevity of the alleged misconduct by the Medical Capital entities indisputably constitutes an alleged "unified course of fraudulent conduct" by those entities. In re Daou, 411 F.3d at 1027.

14

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

M2Dismiss\SA\_100524_MPA

The alleged use of misrepresentations and omissions in the Complaint to conceal the true state of ongoing misconduct is similar to the scheme alleged in In re Leadis.  There, plaintiff investors filed claims under Sections 11, 12(b)(2) and 15 of the Act against a corporate issuer, underwriters and several individual officers of the company, alleging that the initial public offering prospectus was materially false and misleading as it pertained to price pressures and demand in the industry and the company's continued relationship with its customers.   2006 WL 496039, at *2.  Observing that the complaint "very carefully attempts to outline only a negligence claim" under the Act, and avoids any allegations of fraud or knowing misconduct, the court nevertheless found "a quintessential fraud claim" in that the factual basis of the claim was that defendants knew that some of the potential events about which the prospectus warned were already occurring (such as, for example, reduced orders from key customers) and failed to disclose such information. Id. at *3-*4.  The defendants allegedly misled investors by making disclosures of already occurring events "in forward-looking rather than present-tense statements." Id. at *4.   The court characterized this as "a classic fraud case masquerading as a negligence claim," held that "the heightened pleading standard of Rule 9(b) applies," and dismissed the case with prejudice on plaintiffs' admission that they could not cure the pleading defects. Id. at *4-*5.  The same can be said of the Medical Capital entities' scheme outlined in the instant Complaint.[6]

_____

[6]   To the extent that Plaintiffs have actually pled forward-looking statements of intended future conduct, and such forward-looking statements are alleged as misrepresentations, those alleged misstatements are "untrue" only if they were made with no intention of performing at the time they were made, not just that future events and decisions retrospectively rendered the statements false. See Ferland v. Orange Groves of Florida, Inc., 377 F. Supp. 690, 706 (M.D. Fla. 1974) ("A promissory representation, whether asserted in a common law fraud action, an action under 15 U.S.C. § 77 l(2), or an action under the Securities and Exchange Commission Rule 10b-5, 17 CFR § 240.10b-5, should only be considered a misrepresentation of fact where the evidence shows that the promise was made without the intent to

15

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

Viewing the allegations of the Medical Capital entities' alleged fraud through the prism of Rule 9(b), they are deficient.  With respect to each of the alleged misrepresentations and omissions summarized above, there are no specific details provided as to the underlying concealed or misrepresented conduct alleged to be wrongful.  Thus, for example, no transaction dates or details are provided regarding alleged improper sales or purchases of assets; there is no breakdown of which special purpose corporation paid how much in administrative fees at what time and in what manner to MCC; and there is no detailed explanation as to why affirmative statements were fraudulent or the way in which omitted facts made the representations misleading with respect to the PPMs for MP IV and MP V.  See In re Glenfed, Inc., Securities Litigation, 42 F.3d at 1547-48 (requiring under Rule 9(b) the time, place and content of alleged misrepresentations, and "an explanation as to why the statement or omission complained of was false or misleading"); see also Carroll v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006) (in an omission case plaintiffs must "plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading").

As to Rule 8, Plaintiffs fail to allege facts that make their alleged fraud scheme plausible, as distinct from possible.  It is equally possible, and certainly plausible, that Plaintiffs have alleged high risk investments that, because of changed circumstances, simply were not successful through no fault of any defendant.  It is plausible that the Medical Capital entities had to alter the approach to these investments, internal accounting protocols, payment of administrative fees, and other operational priorities due to economic or other factors beyond their control.   Apart from conclusory

---

perform.").  Nowhere in the Complaint do Plaintiffs allege that any statements of intended future performance were made with no intention to perform at the time they were made.

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

M2Dismiss(SAI)_100524_MPA

allegations of wrongdoing, Plaintiffs have failed to provide sufficient facts to push their theory of the case from the realm of the possible to the realm of the "plausible." Twombly, 550 U.S. at 570.

### b. Securities America's Alleged Role in the Underlying Fraud Is Not Pled With Particularity

Securities America's alleged role in devising the underlying fraud scheme, or in preparing the documents containing the alleged misrepresentations or omissions, is non-existent.  To the extent that Securities America is alleged to have facilitated the scheme as a selling broker, the details of that alleged involvement are not pled with the particularity required by Rule 9(b).

It is plainly alleged in the Complaint that the unified course of fraudulent conduct described above was perpetrated over a six-year period by the Medical Capital entities, not Securities America.  Plaintiffs thus allege the role of each Medical Capital entity in this course of conduct:  MCHI conducted the activity through its various subsidiaries (Compl. ¶ 30); MCMI was formed by MCHI in 2000 to acquire healthcare receivables (id. ¶ 31); MCC administered each of the special purpose corporations, including MP IV and MP V, and handled their management, underwriting and accounting functions (id. ¶ 32); Medical Tracking Services, Inc. serviced the special purpose corporations' accounts receivable transaction data, and monitored, tracked and posted asset purchases and collections (id. ¶ 33); MP IV and MP V were the MCHI subsidiaries that issued the Notes complained of by Plaintiffs (id. ¶¶ 16, 18, 39-40); and Messrs. Sidney M. Field and Joseph J. Lambariello were the principals of MCHI who apparently orchestrated this activity (id. ¶¶ 34-35).

It is the Medical Capital entities, not Securities America, that are alleged to have committed "improper and/or other wrongful practices . . . in connection with [their] operations, assets and financial condition," including accounting violations, improperly used investor proceeds, inflated collateral valuations, and outright misappropriation of "more than $300 million of investor funds through the improper

17

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW
444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

M2Dismiss(SAI)_100524_MPA

payment of purported administrative fees." (Id. ¶¶ 63-65.) Indeed, not only does the Complaint fail to allege any involvement by Securities America in the foregoing, there is no basis on which to conclude Securities America had any ability to influence such conduct by the Medical Capital entities and their principals, either directly or as a "control person" under the Act.

Since Plaintiffs' claims against Securities America arise from a "unified course of fraudulent conduct" and rely "entirely on that course of conduct as the basis of" their Section 12(a)(2) claim, the claim must be viewed as being "grounded in fraud" and "the pleading of that claim as a whole must satisfy the particularity requirements of Rule 9(b)." In re Daou, 411 F.3d at 1027 (citation omitted).   Accordingly, Plaintiffs must plead Securities America's activities as broker with particularity, but fail to do so in several material respects.

First, although the Complaint alleges that Plaintiff Mitchell purchased MP V Notes through Securities America, and that Plaintiffs Alvin and June Sabroff purchased MP IV Notes through Securities America, nowhere does the Complaint identify when such purchases were made.   More importantly, nowhere does the Complaint identify when the PPMs for MP V and MP IV, and the allegedly false and misleading statements contained within those PPMs, were given to Plaintiff Mitchell or Plaintiffs Alvin and June Sabroff.   Plaintiffs allege at one point that several of the special purpose corporations, including MP IV and MP V, began to default on their obligations to make payments of interest and/or principal to noteholders, and that the Broker Defendants continued to offer the Notes and "represent that Medical Capital had never defaulted on any of the Notes." (Compl. ¶¶ 54-55.) Plaintiffs do not, however, specify whether any individual Broker Defendant made such representation to them, what the precise representation was, or when, where, and by what means the representation was made.   No other specific misrepresentations are alleged apart from the alleged misrepresentations and/or omissions in the PPMs themselves.   Indeed, the Complaint is silent with respect to when any allegedly false or misleading statement

18

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES,
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

was made to any of the named Plaintiffs. <u>See Dorsey v. Portfolio Equities, Inc.</u>, 540 F.3d 333, 341 n.4 (5th Cir. 2008) (finding failure to plead fraud with particularity where plaintiff "did not include the specific dates of any subsequent transactions and did not identify the speakers making alleged misrepresentations").

Second, the Complaint does not specify where Plaintiffs Mitchell or Alvin and June Sabroff, or any other Plaintiff received the PPMs containing the allegedly false and misleading statements. <u>Cf.</u> <u>Williams</u>, 112 F.3d at 178-79 (complaint failed to state the place where an alleged misstatement was made). Finally, the Complaint does not allege who provided the PPM for MP V or MP IV to either Plaintiff Mitchell or Plaintiffs Alvin and June Sabroff. <u>See</u> <u>Dorsey</u>, 540 F.3d at 341 n.4. The failure to plead any aspect of the alleged fraud with particularity mandates dismissal of the claim.

Rather than plead any of these necessary specifics with respect to Securities America, Plaintiffs instead lump all Broker Defendants together and fail to differentiate among these Defendants as to any substantive allegations of wrongdoing. (<u>See</u>, <u>e.g.</u>, Compl. ¶¶ 54-55, 66, 69-78.) The failure to specify which of many defendants committed which particular acts of alleged wrongdoing, accompanied by the requisite specificity, itself constitutes grounds for dismissal. <u>See</u> <u>Patel v. Holiday Hospitality Franchising, Inc.</u>, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) ("[G]eneral allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b).") (citation omitted).

### (2)   The Complaint Does Not Properly Plead That Any Alleged Misstatements Or Omissions In The PPMs Were False or Misleading When Made

Plaintiffs fail to properly plead, with particularity or otherwise, that any alleged misstatements or omissions were false or misleading when made. <u>See</u> <u>In re Stac</u>, 89 F.3d at 1403-05. Plaintiffs fail to provide any facts or detail as to why any alleged

19

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW
444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

M2Dismiss(SA), 100524_MPA

misstatements in the PPMs were false at the time that they were made, or what information either the Medical Capital entities or Securities America had at the time of the PPMs in question that made such statements false. <u>See</u> <u>id.</u>; <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, 308 F. Supp. 2d 249 (S.D.N.Y. 2004). In order to plead a material omission, Plaintiffs' allegations must also show "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." <u>TSC Industries, Inc. v. Northway, Inc.</u>, 426 U.S. 438, 449, 96 S. Ct. 2126, 2132, 48 L. Ed. 2d 757 (1976). Plaintiffs have failed to do so.

Plaintiffs' deficiencies fail to satisfy the standards under either Rule 8 or Rule 9(b). Plaintiffs thus fail to properly allege an essential element of a Section 12(a)(2) claim, and the Complaint must be dismissed for this additional reason.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

20

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW
444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1

M2Dismiss(SA)_100524_MPA

## 4.    CONCLUSION

For the foregoing reasons, Defendant Securities America requests that the Complaint, and all claims against Securities America, be dismissed.


Dated:  March 1, 2010                    Respectfully submitted,

                                         BRUCE M. BETTIGOLE
                                         DEBORAH G. HEILIZER
                                         PETER LIGH
                                         SUTHERLAND ASBILL & BRENNAN LLP


                                         By: /s/ Bruce M. Bettigole
                                              Bruce M. Bettigole


                                         MIKE MARGOLIS
                                         TIMOTHY J. MARTIN
                                         MARGOLIS & TISMAN LLP


                                         By: /s/ Timothy J. Martin
                                              Timothy J. Martin

                                         Attorneys for Defendants
                                         AMERIPRISE FINANCIAL, INC., SECURITIES
                                         AMERICA, INC. and SECURITIES AMERICA
                                         FINANCIAL CORPORATION

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S MPAS IN SUPPORT OF ITS MOTION
TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
8988812.1