Christine Dusbabek (State Bar No. 257575)
CORPORATE LEGAL, LLC
6041 South Syracuse Way, Suite 305
Greenwood Village, CO 80111
Telephone: (303) 874-3185
Facsimile: (303) 397-1967
Email: cdusbabek@corporatelegal.us

Attorneys for Defendant CAPITAL FINANCIAL SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JANA MCCOY, HENRY MITCHELLL, JEFF HUBER, ALVIN SABROFF, JUNE SABROFF, JAMES MERRILL, CHERYL MERRILL and DON RIBACCHI, on behalf of themselves and all others similarly situated <br><br> Plaintiffs, <br><br> vs, <br><br> CULLUM & BURKS SECURITIES, INC., CAPWEST SECURITIES, INC., SECURITIES AMERICA, INC., AMERIRPISE FINANCIAL, INC., SECURITIES AMERICA FINANCIAL CORP., NATIONAL SECURITIES CORP., NATIONAL HOLDINGS CORP., CAPITAL FINANCIAL SERVICES, INC. and CAPITAL FINANCIAL HOLDINGS, INC. <br><br> Defendants | Case No. 8:09-CV-01084-DOC-RNB <br><br> **DEFENDANT CAPITAL FINANCIAL SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> HEARING DATE: May 24, 2010 <br> TIME: 8:30 a.m. <br> JUDGE: Hon. David O. Carter <br> CTRM: 9D |

This document relates to:
Case No. 8:09-CV-01084-DOC-RNB
Case No. 8:09-CV-01295-DOC-RNB
Case No. 8:09-CV-01340-DOC-MLG
Case No. 8:09-CV-08482-DOC-RNB

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on May 24, 2010, at 8:30 a.m., or as soon thereafter as the matter can be heard in Courtroom 9D of the above-entitled Court, located at 411 West 4th Street, Santa Ana, California, 92701-4516, Defendant Capital Financial Services, Inc. ("CFS") will and hereby moves this Court for an order dismissing the Consolidated Amended Class Action Complaint for Violations of Sections 12 and 15 of the Securities Act of 1933 ("Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 9(b) for failure to plead fraud with particularity and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Pursuant to Local Rule 7-3, on February 22, 2010 (more than five days prior to the last day for filing the motion) counsel for Defendant CFS emailed counsel for Plaintiffs Don Ribacchi ("Ribacchi") and those similarly situated in an attempt to set up a date and time to confer. Counsel then conferred on February 25, 2010 prior to the filing of this Motion. Counsels were unable to reach a resolution other than to the date for hearing of the Motion.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the pleadings and papers filed in this action; all matters of which judicial notice can be taken, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

DATED: March 1, 2010   CORPORATE LEGAL, LLC

         By: ___/s/ Christine K Dusbabek_____
           Christine K. Dusbabek

         Attorneys for Defendant
         CAPITAL FINANCIAL SERVICES, INC.

1

# TABLE OF CONTENTS

I.     **INTRODUCTION** ................................................................................... 1

II.    **DESCRIPTION OF MATERIAL ALLEGATIONS IN COMPLAINT** .......... 3

     **A.**    **Medical Capital** ............................................................................... 3

     **B.**    **The Offerings and Solicitation of Investors** .............................. 3

     **C.**    **Class Action Allegations** ............................................................... 5

III.    **ARGUMENT** ....................................................................................... 7

     **A.**    **The Legal Standards Governing This Motion.** ......................... 7

     **B.**    **Count 1 for Violation of Section 12(a)(1) of the Securities Act of 1933 Should Be Dismissed Because the Plaintiffs Fail to State a Claim for Relief.** 8

     **C.**    **Count 2 for Violation of Section 12(a)(2) of the Securities Act of 1933 Should Be Dismissed for Failure to Meet the Plausibility Standard and for Failure to Plead Fraud with Requisite Particularity.** ......................... 10

         **1.**    *The Factual Allegations Pled in Complaint Do Not Plausibly Suggest CFS's liability under Rule 8.* ....................................................... 13

            a   Allegations Regarding Medical Capital's Accounting Irregularities and Failures. ............................................................. 15

            b   Allegations that Medical Capital Invested Assets in Non-Medical Investments. ................................................................ 18

            c   Allegations that Medical Capital Misused Investor Proceeds. .......................................................................... 19

            d   Allegations that Medical Capital Inflated and Used Unreliable Collateral Valuations. .................................................. 19

            e   Allegations that SPC's Were in Default. ................................ 19

            f   Allegations that Medical Capital Lacked Sufficient Internal Controls. ......................................................................... 20

         **2.**    *Neither the Underlying Fraud nor CFS's Alleged Role in the Fraud is Pled With Particularity.* ............................................... 20

i

a   The Alleged Underlying Scheme to Defraud Investors Is Not Pled With Particularity. ........................................................ 20

b   CFS's Alleged Role in the Underlying Scheme to Defraud Investors is Not Pled With Particularity. ....................................... 21

IV.   CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ................................................................................... 7, 13

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................... 7, 8, 11, 13

*Belodoff v. Netlist, Inc.,*
  2009 WL 2777320 (C.D. Cal. Sept. 1, 2009) ................................................... 8

*Cozzarelli v. Inspire Pharmaceuticals Inc.,*
  549 F.3d 618 (4th Cir. 2008) ........................................................................ 11

*Employees' Ret. Sys. v. Chubb Corp.,*
  394 F.3d 126 (3d Cir.2004) ........................................................................... 12

*Falkowski v. Imation Corp.,*
  309 F.3d 1123 (9th Cir. 2002) ................................................................. 11, 14

*In re Gilead Scis, Secs. Litig.,*
  536 F.3d 1049 (9th Cir. 2008) ........................................................................ 8

*In re Stac Electronics Securities Litigation,*
  89 F.3d 1399 (9th Cir. 1996) ................................................................... 11, 12

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ................................................................. 11, 12

*Melder v. Morris,*
  27 F.3d 1097 (5th Cir.1994) ......................................................................... 11

*Mertan v. Am. Home Mortg. Servicing, Inc.,*
  2009 WL 3296698 (C.D. Cal. Oct. 13, 2009) ................................................. 4

*P. Stolz Family Partnership L.P., et al v. Daum, et al.,*
  355 F.3d 92 (2d 2003) .................................................................................... 9

*Schreiber Distrib. v. Serv-Well Furniture, Co.,*
  806 F.2d 1393 (9th Cir. 1986) ...................................................................... 12

*Sears v. Likens,*
  912 F.2d 889 (7th Cir.1990) ......................................................................... 11

*Shapiro v. UJB Fin. Corp.,*
  964 F.2d 272 (3d Cir. 1992) ......................................................................... 11

*Sheldon v. Vermonty,*
  246 F.3d 682 (10th Cir. 2000) ........................................................................ 9

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001)), *cert. denied* __ U.S. __, 129 S. Ct. 1993 (2009) ................. 8

*Swartz v. KPMG, LLP,*
  476 F.3d 756 (9th Cir. 2007) ........................................................................ 12

*Vess v. Ciba-Geigy Corp.,*
  317 F.3d 1097 (9th Cir. 2003) ...................................................................... 12

*Wagner v. First Horizon Pharm. Corp.,*
  464 F.3d 1273 (11th Cir. 2006) .................................................................... 11

## Statutes

15 U.S.C. § 77k, Section 11 of the Securities Act ........................................... 9, 12

15 U.S.C. § 77l, Section 12(a)(1) of the Securities Act ................ 1, 2, 6, 8, 9, 10, 15

15 U.S.C. § 77l, Section 12(a)(2) of the Securities Act .............. 1, 2, 6, 8, 9, 10, 11, 12, 13, 15

15 U.S.C. § 77m, Section 13 of the Securities Act .................................................... 1, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 9

Fed. R. Civ. P. 8(a)(2) ................................................................................ 7, 10, 13, 20

Fed. R. Civ. P. 9(b) ................................................................................... 11, 12, 13, 20

**Regulations**

17 C.F.R. § 230.506 ..................................................................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Don Ribacchi, on behalf of himself and all others similarly situated ("Plaintiffs"),[1] are investors in notes issued by a group of companies affiliated with Medical Capital Holdings, Inc. (collectively, "Medical Capital").[2]  Medical Capital is subject to a Court Order in an SEC enforcement action (the "SEC Order") which has stayed all litigation against Medical Capital.  (Compl. ¶ 42).  Facing unspecified losses, Plaintiffs seek to impose liability on Capital Financial Services, Inc. (CFS") and several other registered broker-dealers, for allegedly offering and selling unregistered securities in violation of Section 12(a)(1) of the Securities Act of 1933 ("Securities Act") and for allegedly offering and selling securities by use of the mails or interstate facilities by means of a Private Placement Memorandum ("PPM"), which includes untrue statements or omissions of a material fact in violation of Section 12(a)(2) of the Securities Act.  At the outset, it should be noted that Section 12 of the Securities Act applies to a prospectus (i.e. public offering), not a private placement as in this matter, and for this reason alone, the claims against CFS should be dismissed.

As to the alleged violation of Section 12(a)(1) of the Securities Act, Plaintiffs misconstrue the time limitations on bringing this claim.  Pursuant to Section 13 of the Securities Act, any claim under Section (12)(a)(1) must be brought within <u>one year after the violation</u> upon which it is based, which would be the date the security was purchased, not the date the violation was discovered or reasonably could have been discovered as the Plaintiffs

---

[1] Only one of the eight named plaintiffs in this consolidated class action allegedly purchased securities from CFS.  The other plaintiffs allegedly purchased securities from other named broker-dealers defendants.  Accordingly, this Motion on behalf of CFS is directed to the claims of Plaintiff Don Ribacchi in Count I (alleging a violation of Section 12(a)(1) of the Securities Act), and Count II (alleging a violation of Section 12(a)(2) of the Securities Act).

[2] The Plaintiffs allegedly purchased or otherwise acquired the Notes of MP III, MP IV, MP V, and/or MP VI on or after September 18, 2006 from the Defendant broker dealers. (Compl. ¶ 142).  Plaintiff Don Ribacchi, in particular, allegedly purchased MP III, MP IV and MP V between November 2006 and May 2008 from Defendant CFS. (Compl. ¶ 20).

1

assumed.  The Plaintiffs purchased the notes issued by Medical Capital between November 2006 and May 2008 (Compl. ¶ 20) and did not file their Complaint until November 17, 2009, more than one year after the purchases (i.e. violation), thus the Plaintiffs' claims for violation of Section 12(a)(1) of the Securities Act is time barred.

As to the alleged violation of Section 12(a)(2) of the Securities Act, Plaintiffs state that the PPMs for the Medical Capital Notes contained untrue statements of material fact and omitted material facts necessary in order to make the statements, in light of the circumstances, not misleading.  (Compl. ¶ 146).  However, these alleged misstatements and omittances were devised and perpetrated by other persons and entities that are presently subject to the SEC Order.  Unable to pursue their alleged claims against the proper defendants, Plaintiffs instead attempt to stretch the boundaries of the provisions of the Securities Act in seeking to hold CFS accountable for the alleged misconduct of these other immune persons and entities.  With the benefit of hindsight, a court-appointed receiver (and his reports to the Court), an SEC civil action, and a class action complaint against Wells Fargo Bank, NA and the Bank of New York Mellon Corporation, Plaintiffs outline, in conclusory fashion, the purported indicia of a fraud scheme (material misstatements and omissions related to Medical Capital's accounting irregularities and failures, use of investor proceeds for improper investments, misuse of investor proceeds, inflated and unreliable collateral valuations, Note Offering defaults, and lack of internal controls) that CFS somehow allegedly should have uncovered before anyone else did or could have.  This action is misdirected and baseless.  Further, although Plaintiffs "specifically disclaim any allegations of fraud in connection with these Securities Act claims" (Compl. ¶ 2), the entire complaint is filled with allegations of a fraud scheme that CFS should have known about and should have disclosed to Plaintiffs.  Accordingly, Plaintiffs are required to plead their claim with specificity and failed to this.

For the reasons set forth herein, Plaintiffs fail to state a claim upon which relief can be granted against CFS under Counts I and II of their Complaint, and those claims (and thus

2

1  the whole Complaint against CFS) should be dismissed.  The only other claim in the case,

2  Count III, alleges liability on controlling persons under Section 15 of the Securities Act with

3  respect to the various broker-dealer defendants.  Defendant Capital Financial Holdings, Inc.

4  is alleged as a control person defendant with respect to CFS under Count III and has moved

5  separately for dismissal of that claim.

6  **II.      DESCRIPTION OF MATERIAL ALLEGATIONS IN COMPLAINT**

7  **A.      Medical Capital**

8          Medical Capital Holdings, Inc. ("MCHI") was a company in the business of financing

9  healthcare providers by purchasing their accounts receivable and making secured loans to

10  them. (Compl. ¶ 3).  To finance its business, MCHI raised funds through six separate special

11  purpose entities ("SPC"), which included "Medical Provider Funding Corporation I" through

12  Medical Provider Funding Corporation VI" (referred to as MP I, MP II, MP III, MP IV, MP

13  V, and MP VI). (Compl. ¶¶ 4-5).  Medical Capital Corporation ("MCC"), a wholly owned

14  subsidiary of MCHI, served as the special administrator for the SPCs and received fees for

15  these services from amounts collected from healthcare receivables.  (Compl. ¶¶ 5, 52)

16  **B.      The Offerings and Solicitation of Investors**

17          Notes for each of the MP's were offered and sold to the public through a nationwide

18  network of more than sixty (60) broker-dealers, including the Defendant broker-dealers, as

19  unregistered private placements exempt from the registration requirements of the Securities

20  Act under Rule 506 of Regulation D, 17 C.F.R. § 230.506, to be sold only to accredited

21  investors through PPMs.  (Compl. ¶ 66).  Each of the Offerings were structured and

22  conducted in a similar manner. (Compl. ¶¶ 68, 83).

23          Each PPM for the Medical Capital Notes disclosed the terms of the offering,

24  including an array of risks associated with the offering that contradict what Plaintiffs now

25  claim were untrue statements of material fact or material omissions.  The PPMs for MP III,

26  MP IV and MP V are attached as **Exhibit A, B, and C**, respectively, (collectively, the "PPM

27  Exhibits") to Capital Financial Services, Inc's Request for Judicial Notice.  As explained in

28

3

the Request for Judicial Notice, the Court may consider the contents of these documents in ruling upon this Motion to Dismiss. See *Mertan v. Am. Home Mortg. Servicing, Inc.*, 2009 WL 3296698, at *2 (C.D. Cal. Oct. 13, 2009) (Carter, J.). By way of example, the PPM for MP V stated that (i) Medical Capital would invest in assets other than medical receivables (*see Exhibit C* at 11) (under risk factor titled "We have limited experience outside the healthcare industry" – "We will limit our investment in assets other than healthcare accounts receivable to not more than 40% of our assets…") (emphasis added); (ii) Medical Capital was free to commingle the assets of different MP's (*Id.* at 12) (under risk factor titled "We have conflicts of interest that may result in us taking actions that are not in your best interest" – "From time to time, these criteria may cause Medical Capital Corporation to direct the sale of accounts receivable and other assets from one affiliate to another.") (emphasis added); and (iii) Medical Capital would set its own administrative fees, paying itself on the basis of its own appraisals of the assets held by the MPs. (*Id.* at 13) ("The administrative fee consists of any amount in the trust account that exceeds the amount needed for the collateral coverage ratio to equal 100%..."); (*Id.* at 26) ("Medical Capital Corporation is responsible for…the underwriting evaluation of receivables and other financial assets…").

Besides these disclosed risks, the PPMs were equally notable for what they did not contain - there was no underwriter associated with the offerings; there was no mention of auditors; and there were no financial statements regarding Medical Capital included in the PPMs. The PPM's also did not state that the broker-dealers were involved in the preparation of these PPMs.

All investors executed a Subscription Agreement (part of the PPM's, with page numbers beginning with "S-"attached as **Exhibit A, B and C** to CFS Request for Judicial Notice) for the Medical Capital notes in which the investor represented and warranted, *inter alia*, the following: (1) In evaluating the suitability of an investment in the Company, the Subscriber has not relied upon any representations or other information (whether oral or written) from any other person, including without limitation, the Company, other than as set

4

forth in the Memorandum, and is not relying on any other person to undertake to furnish or verify the information relating to this transaction. (See B(4) of Subscription Agreement) (*emphasis added*); and (2) The Subscriber is an accredited investor (See B(6) of Subscription Agreement).

Plaintiffs alleged that the Offerings included general solicitations of investors (without regard as to investors sophistication or knowledge as investors or as to whether they were accredited investors) through, *inter alia*, (i) advertisements in newspapers; (ii) mailings of postcards that solicited potential investors to attend meetings, (iii) sales pitches delivered at seminars, meetings and dinners; and (iv) written materials on the Internet. (Compl. at ¶¶ 69-74.). However, the Complaint does not identify who solicited the investment (i.e. which broker-defendant and individual at the broker-dealer defendant solicited the investment - just states that "one of the Broker-Defendants" or "conducted by a Broker Defendant and a representative of Medical Capital"), what the untrue statement or omission was as a result of the prospectus or oral communication, when the solicitations occurred with respect to each of the broker defendants, how the solicitation was done by the particular broker defendants, and the role of each broker-defendant in the alleged misstatements or omissions.

## C.  Class Action Allegations

Plaintiffs' Consolidated Class Action Complaint (the "Complaint" or "Compl.") was original filed on November 17, 2009 and later amended on January 29, 2010.  The Complaint is largely devoted to alleging a litany of wrongful conduct by Medical Capital, including: (i) accounting deficiencies and failures; (ii) use of investor proceeds for improper investments; (iii) lack of internal controls, (iv) misuse of investor proceeds; and (v) inflated and unreliable collateral valuations and defaults. (Compl. ¶¶ 9, 63, 65, 91-122).

Medical Capital and the Medical Capital Entities, none of which is a named defendant, are alleged to have offered the Medical Capital Notes pursuant to a PPM that was substantially similar for each offering and that contained materially false and misleading statements, or that omitted material facts. (Compl. ¶¶ 68, 83, 89-122)  Despite such repeated,

5

though conclusory, allegations of fraud with respect to the underlying securities offerings, however, "Plaintiffs specifically disclaim any allegations of fraud in connection with these Securities Act claims." (Compl. ¶ 2.)

Plaintiff Don Ribacchi allegedly purchased MP III, MP IV, and MP V Notes from CFS between November 2006 and May 2008 (Compl. ¶ 20), but no allegations are made as to the time or place of purchase, the specific identity of any CFS representative allegedly involved in the purchase, and the specific nature of the alleged untrue statement of material fact or omission with respect to CFS (i.e. facts that show what the untrue statement or omission was, and how, when, where, to whom, and by what means the representations were tendered).

Defendant CFS is a broker-dealer, and is not alleged to have been, nor was it, an issuer, underwriter, or managing dealer of the Medical Capital Notes.  Some of CFS's accredited investor customers purchased the Medical Capital Notes, but CFS is not alleged to have created or issued the PPMs or any other offering documents issued by Medical Capital or the Medical Capital Entities.

Beginning in August 2008, MP III through MP VI began to default on their obligations to make payments of interest and/or principal to Noteholders.  (Compl. ¶ 54). In July 2009, the SEC commenced an enforcement action against Medical Capital (and its entities) for securities violations and the Court appointed a Receiver.  (Compl. ¶¶ 56-60)

The Complaint alleges that CFS and the other broker-dealers are liable for the investment losses because they offered and sold unregistered securities in violation of Section 12(a)(1) of the Securities Act.  Even if this allegation is true (which it is not), the Plaintiffs claims are time barred by the one-year statute of limitation.  The Complaint also alleges that CFS and other broker-dealers are liable for the investment losses suffered by Plaintiffs because the PPMs, issued by Medical Capital, allegedly contained false and misleading statements or omitted material facts in violation of Section 12(a)(2) of the Securities Act.  These allegations are purely conclusory and are unaccompanied by the

6

1  requisite level of factual detail to make out legally cognizable claims against CFS.  Indeed, at

2  no point in the Complaint do Plaintiffs differentiate among the various defendants with

3  respect to any alleged acts of wrongdoing; rather, all defendants are repeatedly lumped

4  together in conclusory fashion.

5                        **III.    ARGUMENT**

6  **A.      The Legal Standards Governing This Motion.**

7              Under Federal Rules of Civil Procedure 8(a)(2), a pleading must contain a "short and

8  plain statement of the claim <u>showing</u> that the pleader is entitled to relief."  Fed. R. Civ. P.

9  8(a)(2) (emphasis added).  As the Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S.

10  544, 555 (2007), the pleading standard Rule 8 announces does not require detailed factual

11  allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

12  accusation.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the

13  elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor does a complaint

14  suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement. *Twombly*,

15  550 U.S. at 557.

16              "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

17  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

18  129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial

19  plausibility when the plaintiff pleads factual content that allows the court to draw the

20  reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

21  *Twombly*, 550 U.S. at 556) ("Where a complaint pleads facts that are 'merely consistent

22  with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

23  entitlement to relief.'")  Unless a plaintiff's well-pleaded allegations have "nudged [its]

24  claims across the line from conceivable to plausible, [the] complaint must be dismissed."

25  *Twombly*, 550 U.S. at 570.

26              The Court "'need not...accept as true allegations that contradict matters properly

27  subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations

28

7

---

that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead Scis, Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)), *cert. denied* __ U.S. __, 129 S. Ct. 1993 (2009); *see also Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *accord Belodoff v. Netlist, Inc.*, 2009 WL 2777320, at *4 (C.D. Cal. Sept. 1, 2009) (Carter, J.) ("First, while a court must take as true all factual allegations in a complaint, conclusory allegations and legal conclusions can be rejected.  Second, only plausible claims for relief will withstand a motion to dismiss." (citation omitted)).

Essentially, the Supreme Court has endorsed a two-step process for evaluating the sufficiency of a complaint under this plausibility standard.  This process requires district courts to (1) identify and disregard all legal conclusions in the complaint (i.e. identify and disregard allegations that are merely "labels and conclusions," "formulaic recitations," or "naked assertions"), and (2) determine whether the remaining factual allegations plausibly suggest the defendant's liability (i.e. determine whether remaining allegations "plausibly give rise to an entitlement to relief").

By these standards, Plaintiffs' claims are incurably defective because (i) Section 12 of the Securities Act applies to a public offering, not a private placement, (ii) Plaintiffs claim for violation of Section 12(a)(1) of the Securities Act is time barred and (iii) Plaintiffs fail to allege any facts in support of their allegations of liability by CFS under Section 12(a)(2) of the Securities Act (as opposed to Medical Capital and its principals).  Further, the theories advanced by Plaintiffs are conclusively negated, as a matter of law, by judicially noticeable documents.

**B.**     **Count 1 for Violation of Section 12(a)(1) of the Securities Act of 1933 Should Be Dismissed Because the Plaintiffs Fail to State a Claim for Relief.**

Count One of the Consolidated Amended Class Action Complaint alleges a violation of Section 12(a)(1) of the Securities Act.  Plaintiffs' claims are time barred and therefore this

8

1  claim should be dismissed for failure to state a claim upon which relief can be granted under

2  Federal Rule of Civil Procedure 12(b)(6).

3         Section 12(a)(1) of the Securities Act provides a right of action for the <u>immediate</u>

4  <u>purchaser</u> against any person who offers or sells an unregistered securities required to be

5  registered. To enforce a liability created under Section 12(a)(1), the purchaser must bring the

6  action "<u>within one year after the violation</u> upon which it is based" (emphasis added) and, in no

7  event, "more than three years after the security was bona fide offered to the public." Section 13

8  of the Securities Act, 15 U.S.C. § 77m. In comparison, to enforce a liability created under

9  Section 11 or Section 12(a)(2) the purchaser must bring the action "<u>within one year after the</u>

10 <u>discovery</u> of the untrue statement or the omission, <u>or after such discovery should have been</u>

11 <u>made by the exercise of reasonably diligence</u>" (emphasis added) and, in no event, "more than

12 three years after the security was bona fide offered to the public" for Section 11 violation or

13 "more than three years after the sale" for a Section 12(a)(2) violation. Section 13 of the

14 Securities Act, 15 U.S.C. § 77m. Thus, contrary to what the Plaintiffs alleged in their

15 Complaint, this violation date for the Section 12(a)(1) claim is the date the allegedly

16 unregistered security was offered or sold to the Plaintiffs and Class Members, not the date the

17 Plaintiffs and Class Members discovered or reasonably could have discovered the violations

18 (which is the date used for a violation of Section 11 or Section 12(a)(2) of the Securities Act).

19 *See also Sheldon v. Vermonty*, 246 F.3d 682 (10th Cir. 2000) (the § 12(1) claim was time-

20 barred because the "last purchase of stock occurred in April of 1997, but that this action not

21 filed until June 1998, more than one year later."); *P. Stolz Family Partnership L.P., et al v.*

22 *Daum, et al.*, 355 F.3d 92 (2d 2003) (the 12(a)(1) claim was time barred because the stock was

23 offered to the public in June 1997, and the original complaint was not filed until February 20,

24 2001.)

25        Here, Plaintiffs alleged in their Complaint that they purchased MP III, MP IV and MP

26 V Notes offered and sold to them by Defendant CFS between November 2006 and May 2008

27 (the Complaint was silent as to the date any of the Notes were allegedly sold to an unaccredited

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CFS' MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

investor but this is not important to the analysis because the last sale was allegedly in May 2008).  However, the Plaintiffs' original complaint was not filed until November 17, 2009, more than one year after the alleged violations for offering or selling unregistered securities. Because the Plaintiffs did not bring their action "within one year after the violation upon which it is based" (i.e. the date the Notes were offered and sold to Plaintiffs or to an alleged unaccredited investor), Count 1 for violation of Section 12(a)(1) is time barred ("not plausible") and must be dismissed for failure to state a claim upon which relief may be granted.

**C.**     **Count 2 for Violation of Section 12(a)(2) of the Securities Act of 1933 Should Be Dismissed for Failure to Meet the Plausibility Standard and for Failure to Plead Fraud with Requisite Particularity.**

Count Two of the Consolidated Amended Class Action Complaint alleges a violation of Section 12(a)(2) of the Securities Act.  Plaintiffs' allegations fall far short of sufficiently alleging a claim under Section 12(a)(2) of the Securities Act and should be dismissed.

Section 12(a)(2) of the Securities Act imposes liability on any person who offers or sells securities by means of a prospectus containing material misstatements. It states, in relevant part:

> Any person who . . .
> (2) offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, *by means of a prospectus or oral communication*, which includes an *untrue statement of a material fact or omits to state a material fact* necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission)... shall be liable . . . to the person purchasing such security from him...

15 U.S.C. § 77l(a)(2) (emphasis added).

At the outset, it should be noted that Section 12 of the Securities Act applies to a prospectus (i.e. public offering), not a private placement as in this matter, and for this reason alone, the claims against CFS should be dismissed.  In addition to the new Rule 8(a)(2) plausibility standard (as discussed above), Rule 9(b) of the Federal Rules of Civil Procedure continues to require even greater specificity when pleading fraud or mistake.  Rule 9(b)

1  requires that "[i]n alleging fraud or mistake, a party must state with particularity the

2  circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Rule 9(b) serves to give

3  defendants notice of the claims against them, to protect against the reputational injury that

4  can result from being accused of fraud, and to reduce the number of frivolous suits brought

5  solely to extract settlements. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.

6  2009). *See also Twombly*, 550 U.S. at n.14 (in dicta, the Supreme Court linked the

7  particularity requirement of Rule 9(b) with "certain subjects understood to raise a high risk of

8  abusive litigation.").

9         The particularity requirements of Rule 9(b) apply to claims brought under Section

10  12(a)(2) when they are grounded in fraud. *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133

11  (9th Cir. 2002); *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1404-05 (9th Cir.

12  1996). *See also Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3d Cir. 1992) (observing that

13  "the plain language [of Rule 9(b) ] clearly encompasses § 11 and § 12(2) claims based on

14  fraud," but reserving judgment on the issue of whether the rule applies to claims that a

15  defendant negligently violated these sections), cert. denied, 506 U.S. 934, 113 S.Ct. 365, 121

16  L.Ed.2d 278 (1992); *Cozzarelli v. Inspire Pharmaceuticals Inc.*, 549 F.3d 618, 629 (4th Cir.

17  2008) ("[a]lthough claims under Sections 11 and 12(a)(2) may not have fraud as an element,

18  Rule 9(b) refers to 'alleging fraud,' not to causes of action or elements of fraud. When a

19  plaintiff makes an allegation that has the substance of fraud, therefore, he cannot escape the

20  requirements of Rule 9(b) by adding a superficial label of negligence or strict liability.");

21  *Melder v. Morris*, 27 F.3d 1097, 1100 n. 6 (5th Cir.1994) (holding Rule 9(b) applies to 1933

22  Securities Act claims when they are grounded in fraud rather than negligence, and applying

23  the rule to §§ 11 and 12(2) claims); *Sears v. Likens*, 912 F.2d 889, 892-93 (7th Cir.1990)

24  (applying Rule 9(b) to 1933 Securities Act claims sounding in fraud); *Wagner v. First*

25  *Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006) (where the gravamen of a

26  claim involves fraud, even if the claim is pled as a non-fraud claim, the exacting pleading

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CFS' MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

1    requirements of Rule 9(b) apply, and the circumstances constituting fraud shall be stated with

2    particularity.)

3        It is not enough to present a general disclaimer in an attempt to immunize the non-

4    fraud claims from the Rule 9 requirements. *In re Stac Electronics Securities Litigation*, 89

5    F.3d 1399, n.2 (9th Cir. 1996) (in dicta, the Court noted that plaintiffs arguments that it

6    "specifically disclaimed any allegations of fraud with respect to its Section 11 claims" was

7    "unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to

8    show any other basis for the claims levied at the Prospectus."). *See also Employees' Ret. Sys.*

9    *v. Chubb Corp.*, 394 F.3d 126, 160 & n. 24 (3d Cir.2004) (plaintiffs argued that Rule 9(b)

10   should not apply because the complaint expressly excluded and disclaimed any allegation

11   that could be construed as alleging fraud with respect to the Securities Act claims, but the

12   court stated that a conclusory disclaimer cannot alter the substance of plaintiffs' allegations,

13   which sound in fraud.)

14       In the Ninth Circuit, the Rule 9(b) standard for pleading fraud requires the Plaintiff to

15   allege the "who, what, where, when, and how" of the fraudulent conduct. *Ford Motor Co.*,

16   567 F.3d at 1124; *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003). Fraud

17   allegations must state "the time, place and specific content of the false representations as well

18   as the identities of the parties to the misrepresentation." *Schreiber Distrib. v. Serv-Well*

19   *Furniture, Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). In cases with multiple defendants, the

20   plaintiff must be sure to specify the role of each defendant in the alleged fraud. *Swartz v.*

21   *KPMG, LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

22       Here, Plaintiffs' claim against CFS under Section 12(a)(2) is in the nature of a fraud

23   claim and thus is subject to Rule 9(b). The Complaint treats the allegedly false statements in

24   Medical Capital's PPMs as part of a single, coordinated scheme to defraud investors and that

25   the named broker-defendants failed to uncover the fraud at Medical Capital. Indeed,

26   Plaintiffs' allegations regarding the PPMs that they were misleading -- because they were

27   misstated and failed to disclose Medical Capital's accounting deficiencies and failures, use of

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CFS' MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

investor proceeds for improper investments, the lack of internal controls, the use of investor

proceeds for improper administrative fees and inflated and unreliable collateral valuations --

are exactly the allegedly false statements that support Plaintiffs' 12(a)(2) Exchange Act

count. But Plaintiffs cannot make that claim without also admitting that the Complaint

alleges the PPM's to be fraudulent.  Although the Plaintiffs Complaint "specifically

disclaim[s] any allegations of fraud in connection with these Securities Act claims" (Compl.

¶ 2), such a conclusory disclaimer cannot alter the substance of Plaintiffs' allegations, which

sound in fraud.  As set forth below, Plaintiffs' Complaint fails to meet the plausibility

standard under Rule 8(a)(2) and the particularity standard under Rule 9(b).  Rule 9(b) of the

Federal Rules of Civil Procedure.

     1.    ***The Factual Allegations Pled in Complaint Do Not Plausibly Suggest CFS's liability under Rule 8.***

As to Rule 8 of the Federal Rules of Civil Procedure, Plaintiffs fail to allege facts that

suggest their claim against CFS for violation of Section 12(a)(2) of the Securities Act is

plausible.  It is equally possible, and certainly plausible, that Plaintiffs' alleged losses in the

Medical Capital Notes were sustained through no fault of CFS or any of the other broker

defendants, through no material misstatements or omissions in the PPM's, and that CFS was

also a victim of the alleged fraudulent scheme of Medical Capital.

Utilizing the two-step process adopted by the United States Supreme Court in

*Twombly* and *Iqbal*, Plaintiffs' conclusory allegations and naked assertions must first be

discarded (that is, the allegations are not entitled to be assumed true).[3]  Paragraphs 1 through

42 of the Complaint describe the nature of the action, jurisdiction and venue, and the parties

and relevant non-party entities (Medical Capital entities and officers).  Except for the

assertions of what each Plaintiff purchased and from what broker-dealers (and the holding

companies of the broker-dealers), these are naked assertions and should be discarded.

---

[3] These allegations are not rejected on the ground that they are unrealistic or nonsensical, but due to the conclusory nature of the allegations. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Paragraphs 43 through 65 of the Complaint describe Medical Capital and the SEC Action and receivership of the Medical Capital Entities.  No where in these paragraphs does it suggest that CFS is liable for the alleged misconduct (they are mere recitals about Medical Capital and the SEC Action against Medical Capital) and should be discarded.  Paragraphs 66 through 80 allege facts on the offerings and solicitation of investors and are potentially relevant to the claim against CFS but, as discussed below, they lack specificity as to who, what, when, where, and how the offerings were solicited by CFS.  Paragraphs 81 through 88 describe the general contents of the PPMs for the Medical Capital Notes and that the broker defendants offered and sold the Notes in the offerings.  The relevant information relates to the allegation that the broker-defendants offered and sold the Notes through a PPM; and the PPM's speak for themselves.  It is curious and telling that when describing the PPM's, the Plaintiffs failed to mention that the PPMs also described the risks associated with the investments in the Notes.  Paragraphs 89 through 122 identify the alleged material misstatements and omissions in the PPM's as identified in the SEC Complaint against Medical Capital and the Receiver's Reports (the allegations of which have not been proven yet).  Although these allegations may be relevant to the Plaintiffs' claim, they lack specificity as to who, what, when, where, and how and the role of CFS (and the other broker defendants) in the alleged misstatements and omissions.  Paragraphs 123 through 130 of the Complaint describe the class action allegations and why the Plaintiffs believe this action is a proper class action.  Because these allegations are recitals of the elements to maintain a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, these allegations should be discarded.  *See Falkowski v. Imation Corp.*, 309 F.3d 1123, 1134 (9th Cir. 2002) (complaint's allegation that prospectus "contained untrue statements of material facts, omitted to state other facts necessary to make the statements not misleading, and concealed and failed to disclose material facts" are textbook examples of conclusory allegations.)  The last Paragraphs 131 through 155 recite the elements of each of the three counts asserted in the Complaint without further enhancements, except to state that

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CFS' MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

"Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as if fully set forth herein." (Compl. ¶¶ 131, 140, 152). As a result of the naked assertions devoid of further factual enhancement, these paragraphs must be discarded and the factual allegations drawn from the preceding paragraphs should be used to support the Plaintiffs' claims.

Once the legal conclusions and naked assertions are discarded, the remaining allegations do not plausibly suggest CFS's liability. Basically we are left with the assertions that CFS and the other broker defendants offered and sold Medical Capital Notes to allegedly unaccredited investors (although there are no specifics in the Complaint as to who these supposedly unaccredited investors are, when the Notes were sold to unaccredited investors, which Notes were sold to unaccredited investors, and which defendant sold to unaccredited investors) through PPMs that allegedly included untrue statements or omitted facts (with no specifics as to the who, what, where, when, how and role of each defendant and the materiality of these statements or omissions). As to Count 1 for violation of Section 12(a)(1) of the Securities Act, this action is time barred, thus CFS cannot "plausibly" be liable for this cause of action. As to Count 2 for violation of Section 12(a)(2) of the Securities Act, this action is possible but not "plausible" as pled in the Complaint. Taking into account the PPMs that can be judicially noticed and used to determine this Motion to Dismiss, the alleged misstatements and omissions stated in Plaintiffs' Complaint are not "plausible."[4]

        a    Allegations Regarding Medical Capital's Accounting Irregularities and Failures.

The Plaintiffs make several allegations regarding Medical Capital's Accounting Irregularities and Failures, all of which were disclosed in the PPMs (and not plausible

---

[4] It should also be noted that Plaintiffs' complaint bases these misstatements and omissions on the SEC Complaint against Medical Capital and the Receiver's Reports in the SEC Action with Medical Capital (these misstatements and omissions are denied by Medical Capital and have not been proven yet).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CFS' MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

misstatements or omissions).  At the outset, it should be noted that any "future" activity related to the MPs was qualified in the PPMs as follows:

> Some of the statements in this Private Placement Memorandum that are not historical facts are "forward-looking" statements. Forward-looking statements can be identified by the use of words like "believes," "could," "possibly," "probably," "anticipates," "estimates," "projects," "expects," "may," "will," "should," "intend," "plan," "consider" or the negative of these expressions or other variations, or by discussions of strategy that involve risks and uncertainties. We based these forward-looking statements on our current expectations and 'projections about future events and information currently available to us. Although we believe that the assumptions for these forward-looking statements are reasonable, any of the assumptions could prove to be inaccurate. Some of the risks, uncertainties and assumptions are identified in the risk factors discussed above. We wish to caution you that the forward-looking statements in this Private Placement Memorandum are only estimates and predictions. Our actual results could differ materially from those anticipated in the forward-looking statements due to risks, uncertainties or actual events differing from the assumptions underlying these statements. These risks, uncertainties and assumptions include, but are not limited to, those discussed in this Private Placement Memorandum.

See *Exhibits A, B, and C* at 15.

First, Plaintiffs allege that "the PPM's failed to disclose that Medical Capital's accounting records did not comply with GAAP." (Compl. ¶ 93).  However, the PPMs stated that the specific MP was a new entity and had no or limited operating history.  *See Exhibit A* at 8 and 11 ("Medical Provider Financial Corporation III was formed in February, 2005. It has limited operating history") (emphasis added), *Exhibit B at 11* ("Medical Provider Financial Corporation IV was founded in July, 2005, and commenced business in October, 2006. It has limited operating history") (emphasis added), *and Exhibit C* at 11. (Medical Provider Funding Corporation V is a new company, formed on September 20, 2007. It has no operating history) (emphasis added).  With no or limited operating history, there were no accounting records for the MP at the time the PPM was used to offer and sale the Notes to Plaintiffs and thus no way that the PPM could have disclosed this fact.  Further, the PPMs disclosed how the MP's purchased receivables and recorded the revenue.  *See Exhibits A, B, and C* at 12, 22, and 24-25.

16

Second, Plaintiffs allege that "the PPM's failed to disclose that Medical Capital engaged in 'round-tripping'" (the practice of selling an asset of one related entity to another repeatedly) (Compl. ¶¶ 94-95). However, the PPMs did disclose its practice of selling assets to related entities. Specifically, the PPMs stated that "Medical Capital Corporation [may] direct the sale of accounts receivable and other assets from one affiliate to another." See *Exhibits A, B, and C* at 12, 18, and 33. The PPMs also disclosed that "[t]he purchase price of accounts receivable sold among affiliates in the Medical Capital Holdings group...could be greater or less than the fair market value of the receivables at the time of the transaction." See *Exhibits A, B, and C* at 33.

Third, Plaintiffs allege that "the PPMs failed to disclose that the SPC's 'purchased' non-existent receivables." (Compl. ¶ 97). The PPMs describe the characteristics of the accounts receivable and the fact that in some cases, the MP "may purchase accounts receivable that are more than 90 days old." See *Exhibits A, B, and C* at 23. The PPMs further state that the MP "may be unable to collect some or all of the accounts receivable that [it] purchased." See *Exhibits A, B, and C* at 11-14. The PPMs also state that the MP's "ability to fully recover amounts due under [its] account receivable purchase and financing agreements and loan and security agreements may be adversely affected by, among other things...the purchase or financing of fraudulent accounts receivable from a seller, misrepresentations of a seller or a conversion of account proceeds by a seller...[and] erroneous assessment, valuation or estimate of the expected value of an account receivable or other asset." All of these disclosures make it plausible that the MPs did not (and had no intention to) purchase "non-existent receivables" but certain receivables become uncollectible.

Fourth, the Plaintiffs allege that 'the PPMs failed to disclose that Medical Capital commingled funds between entities and overpaid for assets. (Compl. ¶ 99). However, the PPMs expressly stated that Medical Capital periodically would transfer assets between MP's. See *Exhibits A, B, and C* at 12, 18, and 33. The PPMs also disclosed that "[t]he purchase

17

price of accounts receivable sold among affiliates in the Medical Capital Holdings group...could be greater or less than the fair market value of the receivables at the time of the transaction." See *Exhibits A, B, and C* at 33.

Fifth, the Plaintiffs allege that "the PPMs failed to disclose that Medical Capital mischaracterized non-medical collateral as medical receivables." (Compl. ¶ 101). This allegation, however, refers to MP VI (which was after the other MP PPMs) and has no bearing on any of the Notes offered and sold to Plaintiffs from CFS. If the allegation relates to MP III, MP IV or MP V, the Plaintiffs need to be specific as to the untrue statement or omission in these PPMs related to a mischaracterization of the non-medical receivables.

Finally, Plaintiffs allege that "the PPMs failed to disclose that Medical Capital's collateral reports overstated assets and resulted in improper payments of administrative fees to MCC." (Compl. ¶ 104). However, the PPMs disclosed that Medical Capital would <u>set its own administrative fees</u>, paying itself on the basis of its <u>own appraisals</u> of the assets held by the MPs. See *Exhibits A, B, and C* at 13 ("The administrative fee consists of any amount in the trust account that exceeds the amount needed for the collateral coverage ratio to equal 100%..."); (*Id.* at 26) ("Medical Capital Corporation is responsible for...the underwriting evaluation of receivables and other financial assets...").

        b   <u>Allegations that Medical Capital Invested Assets in Non-Medical Investments.</u>

Plaintiffs allege that "the PPMs failed to disclose that Medical Capital used investor proceeds to make the improper investments" unrelated to the healthcare field. (Compl. ¶¶ 105-106). However, the PPMs <u>did</u> disclose this fact. The PPMs specifically stated that Medical Capital will invest in assets other than healthcare accounts receivable. *See Exhibits A, B, and C* at 11. (Under risk factor titled "We have limited experience outside the healthcare industry," – "We will limit our investment in assets <u>other than healthcare accounts receivable</u> to not more than 40% of our assets...") (emphasis added); (Under risk factor titled "We have limited experience making loans." – "We will limit our investment in assets,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CFS' MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

including loans, <u>other than healthcare accounts receivable</u>.") (emphasis added).  Moreover, Plaintiffs do not state in their Complaint when these alleged improper investments were made so it is unclear at the time the MP III, MP IV and MP V Notes were offered and sold through the respective PPMs if these assets even existed and even had to be disclosed or whether the investor proceeds for the specific MPs was used for these purchases.

c   <u>Allegations that Medical Capital Misused Investor Proceeds.</u>

Plaintiffs allege that "the PPMs failed to disclose that Medical Capital overstated the amount of investor proceeds used to purchase accounts receivable and understated the amounts of investor proceeds used to pay commissions, other expenses and administrative fees." (Compl. ¶ 111). This allegation, however, refers to MP VI (which was after the other MP PPMs) and has no bearing on any of the Notes offered and sold to Plaintiffs from CFS. If the allegation relates to MP III, MP IV or MP V, the Plaintiffs need to be specific as to the untrue statement or omission in these PPMs related to a misuse of investor proceeds.

d   <u>Allegations that Medical Capital Inflated and Used Unreliable Collateral Valuations.</u>

Plaintiffs allege that "the PPMs' failed to disclose that Medical Capital collateral reports would include inflated and unreliable collateral valuations" (Compl. ¶ 116) and that "the PPMs failed to disclose that administrative fees were improperly paid to MCC based on inflated collateral values and incorrectly calculated NCCRs." (Compl. ¶ 117).  However, as stated previously, the PPMs disclosed that Medical Capital would <u>set its own administrative fees</u>, paying itself on the basis of its <u>own appraisals</u> of the assets held by the MPs.  See *Exhibits A, B, and C* at 13 ("The administrative fee consists of any amount in the trust account that exceeds the amount needed for the collateral coverage ratio to equal 100%..."); (*Id.* at 26) ("Medical Capital Corporation is responsible for...the underwriting evaluation of receivables and other financial assets...").

e   <u>Allegations that SPC's Were in Default.</u>

19

Plaintiffs allege that the MP VI PPM stated that the SPC's were not in default, when they were (Compl. ¶¶ 120-121). However, this allegation relates only to MP VI, not to MP III, IV and V. The defaults did not allegedly occur until August 2008 (Compl. ¶ 118), after the PPMs for MP III, MP IV and MP V, so the omission of such a statement from these PPMs is not relevant here. . *See Exhibits A, B, and C* at 2. (PPM dated April 10, 2007, May 2, 2007, and October 8, 2007, respectively).

f    Allegations that Medical Capital Lacked Sufficient Internal Controls.

Plaintiffs allege that "the PPMs failed to disclose that Medical Capital lacked sufficient internal controls." (Compl. ¶ 122). However, the PPMs all stated that the investments in the Notes involve significant risks (including risk of entire investment) and highlighted the significant risks. *See Exhibits A, B, and C* at 3 and 15. The PPM's specifically stated that "these risks, uncertainties and assumptions include, but are not limited to, those discussed in this Private Placement Memorandum." *Id.* at 15. A few of these risks include, but are not limited to, that (i) the MPs have no or limited operating history (Id. at 11), (ii) the MPs may have conflicts of interest that may result in them taking actions that are not in the investors best interest (Id. at 12); and (iii) Medical Capital would set its own administrative fees, paying itself on the basis of its own appraisals of the assets held by the MPs.

Because the Plaintiffs do not plead factual content for the Court to draw the reasonable inference that CFS is liable for the misconduct alleged under the plausibility standard, the Complaint against it should be dismissed. Even if not dismissed, the Court should at least require the Plaintiffs to amend their Complaint to provide more specificity as required under Rule 8 and Rule 9(b) and as set forth herein.

2.    *Neither the Underlying Fraud nor CFS's Alleged Role in the Fraud is Pled With Particularity*

a    The Alleged Underlying Scheme to Defraud Investors Is Not Pled With Particularity.

20

In paragraphs 89 to 122 of the Complaint, Plaintiffs purport to set forth the fraudulent scheme - misrepresentations and omissions - made in the offer and sale of notes issued by the various Medical Capital entities via the issuance of PPMs, but does so only in conclusory fashion and based on an SEC Action (allegations of which have not been proven yet in a court of law) and the SEC Receiver's Reports.  Relatively few specifics of the scheme are provided.  To the extent the alleged underlying fraud consists of misrepresentations, the Complaint fails to specify the statements (from the PPM or oral communications) contended to be fraudulent at the time the Notes and PPM were offered and sold to the investors, to identify the speaker to the misrepresentation, to state when and where the statements were made, to explain how the statements were fraudulent, and to specify the role of each defendant in the alleged fraud, with respect to each of the PPMs alleged to be fraudulent.  To the extent the alleged underlying fraud consists of omissions, the Plaintiffs have failed to plead the type of material fact(s) omitted, the place in which the material omission(s) should have appeared, the way in which the material omitted fact(s) made the representations misleading, and the role of each defendant in the material omission(s), with respect to each of the PPMs that allegedly omitted material facts.

Accordingly, Plaintiff's Complaint fails to meet the requirements of 9(b) and Rule8.

      b   CFS's Alleged Role in the Underlying Scheme to Defraud Investors is Not Pled With Particularity.

CFS's alleged role in the underlying fraud is even more mysterious.  The Complaint here furnishes no clues as to which of the broker-defendants (must less which of their employees) supposedly participated in the solicitation seminars, dinners, etc. and made material misstatements or omissions, or when and where the alleged material misstatements or omissions took place.  Specifically, although the Complaint alleges that Plaintiff Ribacchi purchased notes in MP III, MP IV and MP V through CFS, nowhere does the Complaint identify who provided the PPM or oral communications with respect to MP III, MP IV and MP V to Plaintiff Ribacchi.  Second, the Complaint does not allege what the material untrue

21

statement or omission was in each of the PPMs or oral communications with respect to MP III, MP IV and MP V and with regards to CFS. Third, the Complaint does not specify where Plaintiff Ribacchi, or any other Plaintiff, received the PPMs or oral communications containing the allegedly false and misleading statements. Fourth, the Complaint does not specifically allege when the PPMs or oral statements with respect to MP III, MP IV and MP V, and the allegedly false and misleading statements contained within those PPMs or oral communications, were given to Plaintiff Ribacchi. Fifth, the Complaint does not specify how the statements were fraudulent or how the omitted fact(s) made the representations misleading. Finally, the Complaint fails to specifically identify the role of CFS, or any broker defendant for that matter, in the alleged fraud. Rather than plead any of these necessary specifics with respect to CFS, Plaintiffs instead lump all defendants together and fail to differentiate among the defendants as to any substantive allegations of wrongdoing.

The failure to plead any aspect of the alleged fraud with particularity mandates dismissal of the claim.

## IV.  **CONCLUSION**

For the foregoing reasons, CFS respectfully requests that the Court dismiss all of the claims in the Complaint asserted against it with prejudice.

DATED: March 1, 2010 CORPORATE LEGAL, LLC

By: __/s/ Christine K Dusbabek__
Christine K. Dusbabek

Attorneys for Defendant
CAPITAL FINANCIAL SERVICES, INC.

22

## PROOF OF SERVICE

I, the undersigned, declare as follows:

I am employed by Corporate Legal, LLC, 6041 South Syracuse Way, Suite 305, Greenwood Village, Colorado 80111.  I am over 18 years of age and not a party to this action.

On March 1, 2010, I served the following documents:

1.   **DEFENDANT CAPITAL FINANCIAL SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

On:         **ATTACHED SERVICE LIST**

__X__ By electronically filing with the Clerk of the United States District Court for the Central District of California, using the CM/ECF System, to the firms marked for *Via Electronic Service*.  The Court's CM/ECF System will send an email notification of the foregoing filing to the parties and counsel of record who are registered with the Court's CM/ECF System.

__X__ By electronically transmitting via email to the email addresses marked for *Via E-Mail* on the attached service list on this date.

_____ By placing the document(s) listed above for collection for mailing to the firms marked for *Via First Class Mail* on the attached service list following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Greenwood Village, Colorado addressed as set forth below.

_____ By personally delivering the document(s) listed above to the person(s) marked for *Via Personal* on the attached service list on this date.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

Executed on March 1, 2010, at Greenwood Village, Colorado.

By: __/s/ Christine K Dusbabek_____
Christine K. Dusbabek

23

**SERVICE LIST**

| | |
|---|---|
| Daniel C. Girard (Via Electronic Service)<br>Jonathan K. Levine (Via Electronic Service)<br>Todd I. Espinosa (Via Email)<br>**GIRARD GIBBS LLP**<br>601 California Street, 14th Floor<br>San Francisco, CA 94108<br>Phone: (415) 981-4800<br>Fax: (415) 981-4846<br>Email: dcg@girardgibbs.com<br>Email: jkl@girardgibbs.com<br>Email: tie@girardgibbs.com<br><br>*Plaintiffs' Co-Lead Counsel* | Robin F. Zwerling (Via Electronic Service)<br>Stephen L. Brodsky (Via Electronic Service)<br>**ZWERLING, SCHACHTER &**<br>**ZWERLING, LLP**<br>41 Madison Avenue<br>New York, NY 10010<br>Phone: (212) 223-3900<br>Fax: (212) 371-5969<br>Email: rzwerling@zsz.com<br><br><br>*Plaintiffs' Co-Lead Counsel* |
| Dan Drachler (Via Electronic Service)<br>**ZWERLING, SCHACHTER &**<br>**ZWERLING, LLP**<br>1904 Third Avenue, Suite 1030<br>Seattle, WA 98101<br>Phone: (206) 223-2053<br>Fax: (206) 343-9636<br>Email: ddrachler@zsz.com<br><br><br>*Plaintiffs' Co-Lead Counsel* | Ari H. Jaffe (Via Email)<br>**KOHRMAN JACKSON & KRANTZ,**<br>**PLL**<br>One Cleveland Center, 20th Floor<br>1375 East Ninth Street<br>Cleveland, OH 44114<br>Phone: (216) 696-8700<br>Fax: (216) 621-6536<br>Email: ahj@kjk.com<br><br>*Plaintiffs' Counsel* |
| Julia Rider (Via Electronic Service)<br>**JEFFER MANNGELS BUTLER &**<br>**MARMARO LLP**<br>1900 Avenue of the Stars, 7th Floor<br>Los Angeles, CA 90067<br>Phone: (310) 203-8080<br>Fax: (310) 203-0567<br>Email: jjr@jmbm.com<br><br>*Counsel for Defendant Cullum & Burks<br>Securities, Inc.* | Gregory J. Sherwin (Via Email)<br>**FIELDS FEHN & SHERWIN**<br>11755 Wilshire Blvd., 15th Floor<br>Los Angeles, CA 90025<br>Phone: (310) 473-6338<br>Email: gregsherwin@ffandslaw.com<br><br><br>*Counsel for Defendant CapWest Securities,<br>Inc.* |

**SERVICE LIST**

| Jeffrey K. Riffer (Via Electronic Service) **ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP** 1800 Century Park East, 7th Floor Los Angeles, CA 90067 Phone: (310) 746.4400 Fax: (310) 746.4499 E-mail: jriffer@elkinskalt.com *Attorneys for Defendants National Securities Corp. and National Holdings Corp.* | Mike Margolis (Via Email) Timothy J. Martin (Via Electronic Service) **MARGOLIS & TISMAN LLP** 444 South Flower St., Suite 2300 Los Angeles, CA 90071 Phone: (213) 683-0300 Fax: (213) 683-0303 Email: margolis@winlaw.com Email: tmartin@winlaw.com *Counsel for Defendants Securities America, Inc., Ameriprise Financial, Inc., and Securities America Financial Corporation* |
|---|---|
| Bruce M. Bettigole (Via Electronic Service) Deborah G. Heilizer (Via Electronic Service) **SUTHERLAND ASBILL & BRENNAN LLP** 1275 Pennsylvania Avenue, NW Washington D.C. 20004 Phone: (202) 383-0165 Fax: (202) 637-3593 Email: bruce.bettigole@sutherland.com Email: deb.heilizer@sutherland.com *Counsel for Defendants Securities America, Inc., Ameriprise Financial, Inc., and Securities America Financial Corporation* | Peter Ligh (Via Electronic Service) **SUTHERLAND ASBILL & BRENNAN LLP** Grace Building 1114 Avenue of the Americas, 40th Floor New York, NY 10036-7703 Email: peter.ligh@sutherland.com *Counsel for Defendants Securities America, Inc., Ameriprise Financial, Inc., and Securities America Financial Corporation* |

25

**SERVICE LIST**