Daniel C. Girard (State Bar No. 114826)
dcg@girardgibbs.com
Jonathan K. Levine (State Bar No. 220289)
jkl@girardgibbs.com
Amanda M. Steiner (State Bar No. 190047)
as@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Lead Plaintiffs' Counsel

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| JANA MCCOY, HENRY MITCHELL, JEFF HUBER, ALVIN SABROFF, JUNE SABROFF, JAMES MERRILL, CHERYL MERRILL and DON RIBACCHI, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CULLUM & BURKS SECURITIES, INC., CAPWEST SECURITIES, INC., SECURITIES AMERICA, INC., AMERIPRISE FINANCIAL, INC., SECURITIES AMERICA FINANCIAL CORP., NATIONAL SECURITIES CORP., NATIONAL HOLDINGS CORP., CAPITAL FINANCIAL SERVICES, INC. and CAPITAL FINANCIAL HOLDINGS, INC., <br><br> Defendants. | Case No. 8:09-CV-01084-DOC-RNB <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** <br><br> **CLASS ACTION** <br><br> Date:    May 24, 2010 <br> Time:    8:30 a.m. <br> Before:  The Hon. David O. Carter |
| This document relates to: <br>   ALL ACTIONS | |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................... 2

    A.   The Broker Defendants Offered and Sold Medical Capital Notes......................................................................................... 2

        1.   The Notes ............................................................... 3

        2.   The Offer and Sale of the Notes to the General Public ............... 3

        3.   The Purported Exemption From Registration ................................ 5

    B.   The Private Placement Memoranda Contained False and Misleading Statements ............................................................ 6

    C.   Medical Capital Defaults......................................................... 8

    D.   Plaintiffs' Claims .................................................................... 9

III.  LEGAL STANDARD........................................................................ 10

    A.   Rule 9(b) Does Not Apply to Plaintiffs' Claims ..................... 10

    B.   Plaintiffs' Claims Satisfy the Notice Pleading Standard of Rule 8 .................................................................................... 14

IV.   PLAINTIFFS STATE CLAIMS UNDER SECTION 12(a)(1)....................... 16

    A.   Defendants Do Not Dispute That Plaintiffs Have Adequately Alleged the Elements of a Section 12(a)(1) Claim .................. 16

    B.   Plaintiffs' Claims Are Timely.................................................. 18

V.    PLAINTIFFS STATE CLAIMS UNDER SECTION 12(a)(2)....................... 19

    A.   The Broker Defendants Offered and Sold the Notes.............. 20

    B.   Plaintiffs Have Alleged That the Sale of the Notes Was By Means of a "Prospectus" ........................................................ 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

C.   Plaintiffs Have Sufficiently Alleged Material Misstatements and Omissions of Fact .................................................................. 23

   1.   This Court Already Considered The Misstatements and Omissions in the SEC Case ............................................... 23

   2.   Plaintiffs Allege Material Misstatements and Omissions in the PPMs ......................................................................... 24

   3.   The Alleged Misstatements and Omissions Are Material ........ 26

   4.   The Purported Disclosures Do Not Insulate Defendants From Liability ........................................................................ 27

VI.   PLAINTIFFS STATE CLAIMS UNDER SECTION 15 ................................ 29

VII.   CONCLUSION ........................................................................... 34

# TABLE OF AUTHORITIES

**Cases**

*ABN AMRO, Inc. v. Capital Int'l Ltd.*
  595 F. Supp. 2d 805 (N.D. Ill. 2008)...............................................................18

*Ashcroft v. Iqbal*
  129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)............................................ 14, 15

*Basic Inc. v. Levinson*
  485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) ...............................26

*Batwin v. Occam Networks, Inc.*
  2008 WL 2676364 (C.D. Cal. July 1, 2008) .................................... 29, 30, 32

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .............. 14, 15, 16

*Belodoff v. Netlist, Inc.*
  2009 WL 1293690 (C.D. Cal. April 17, 2009)...................................... 11, 15

*Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.*
  735 F. Supp. 587 (S.D.N.Y. 1990) ...............................................................32

*Carroll v. Fort James Corp.*
  470 F. 3d 1171 (5th Cir. 2006) .....................................................................21

*Clinton v. Luke*
  2010 WL 114208 (C.D. Cal. Jan. 8, 2010)........................................... 14, 15

*Cogniplex, Inc. v. Hubbard Ross, L.L.C.*
  2001 WL 436210 (N.D. Ill. Apr. 27, 2001)...................................................23

*Cozzarelli v. Inspire Pharm. Inc.*
  549 F. 3d. 618 (4th Cir. 2008) .....................................................................13

*Credit Suisse First Boston Corp. v. ARM Financial Group*
  2001 WL 300733 (S.D.N.Y. Mar. 28, 2001)................................................28

*Employees' Ret. Sys. v. Chubb Corp.*
  394 F.3d 126 (3d Cir. 2004) .........................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Erickson v. Pardus*
   551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ...........................14

*Eshelman v. Orthoclear Holdings, Inc.*
   2009 WL 506864 (N.D. Cal. Feb. 27, 2009)..................................................17

*Falkowski v. Imitation Corp.*
   309 F.3d 1123 (9th Cir. 2002) .......................................................13

*Fecht v. Price Co.*
   70 F.3d 1078 (9th Cir. 1995) ........................................................26

*Ferland v. Orange Groves of Florida, Inc.*
   377 F. Supp. 690 (M.D. Fla. 1974)…………………………………………..25

*Fisk v. SuperAnnuities, Inc.*
   927 F. Supp. 718 (S.D.N.Y. 1996) ......................................... 22, 23

*Fouad v. Isilon Sys., Inc.*
   2008 WL 5412397 (W.D. Wash. Dec. 29, 2008)..........................................34

*FTC v. Five-Star Auto Club, Inc.*
   97 F. Supp. 2d 502 (S.D.N.Y. 2000) ..............................................27

*Gomez v. Toledo*
   446 U.S. 635, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980) ...........................18

*Gustafson v. Alloyd Co., Inc.*
   513 U.S. 561, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995) ...............................22

*Hart v. Massaneri*
   266 F.3d 1155 (9th Cir. 2001)……………………………………………...…19

*Hienergy Tech. Sec. Litig.*
   2005 WL 3071250 (C.D. Cal. Oct. 25, 2005)…………………….......30, 33

*Hollinger v. Titan Capital Corp.*
   914 F.2d 1564 (9th Cir. 1990)……………………………………......29, 33

*Howard v. Everex Sys., Inc.*
   228 F. 3d 1057 (9th Cir. 2000) ......................................... 29, 30, 33

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

*In re Alliance Equip. Lease Program Sec. Litig.*
   2007 WL 627950 (S.D. Cal. Feb. 23, 2007)....................................................17

*In re Amgen Inc. Sec. Litig.*
   544 F. Supp. 2d 1009 (C.D. Cal. 2008)..........................................................29

*In re Charles Schwab Corp. Sec. Litig.*
   257 F.R.D. 534 (N.D. Cal. 2009) .............................................. 12, 20, 30, 32

*In re Countrywide Fin. Corp. Sec. Litig.*
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................. 11, 30

*In re Daou Sys., Inc.*
   411 F.3d 1006 (9th Cir. 2005) .................................................................. 10, 13

*In re DDI Corp. Sec. Lit.*
   2005 WL 3090882 (C.D. Cal. July 21, 2005) .................................................20

*In re Digital Island Sec. Litig.*
   223 F. Supp. 2d 546 (D. Del. 2002) ...............................................................33

*In re Downey Sec. Litig.*
   2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ...............................................34

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*
   310 F. Supp.2d 819 (S.D. Tex. 2004)..............................................................23

*In re Giant Interactive Group, Inc. Sec. Litig.*
   643 F. Supp. 2d 562 (S.D.N.Y. 2009) ............................................................29

*In re Glenfed, Inc. Sec. Litig.*
   42 F.3d 1541 (9th Cir. 1994) ..........................................................................12

*In re Harmonic, Inc. Sec. Litig.*
   163 F. Supp. 2d 1079 (N.D. Cal. 2001)..........................................................13

*In re Heritage Bond Litig.*
   2004 WL 1638201 (C.D. Cal. July 12, 2004) ................................................27

*In re Immune Response Sec. Litig.*
   375 F. Supp. 2d 983 (S.D. Cal. 2005) .............................................. 20, 26, 28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

*In re Infonet Services Corp. Sec. Litig.*
    310 F. Supp. 2d 1080 (C.D. Cal. 2003)…………………………………...13

*In re Leadis Technology, Inc.*
    2006 WL 496039 (N.D. Cal. March 1, 2006) ...............................................12

*In re Musicmaker.com Sec. Litig.*
    2001 WL 34062431 (C.D. Cal. June 4, 2001)...............................................32

*In re Prudential Sec. Ltd. Pshps. Litig*
    930 F. Supp. 68 (S.D.N.Y. 1996) ..................................................28

*In re Shoretel Inc., Sec. Litig.*
    2009 WL 248326 (N.D. Cal. Feb. 2, 2009)....................................................11

*In re Stac Electronics Sec. Litig.*
    89 F.3d 1399 (9th Cir. 1996) .........................................................13

*In re UTStarcom, Inc. Sec. Litig.*
    617 F. Supp. 2d 964 (N.D. Cal. 2009)............................................................31

*In re Washington Mutual, Inc. Sec., Derivative & ERISA Litig.*
    259 F.R.D. 490 (W.D. Wash. 2009) ...................................................... 11, 30

*Jacobson v. Schwarzenegger*
    357 F. Supp. 2d 1198 (C.D. Cal. 2004) ........................................................18

*Kearns v. Ford Motor Co.*
    567 F. 3d 1120 (9th Cir. 2009) .....................................................................21

*Lewis v. Walston & Co.*
    487 F.2d 617 (5th Cir. 1973) .......................................................................17

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*
    238 F.3d 363 (5th Cir. 2001) .......................................................................11

*Lopes v. Vieira*
    488 F. Supp. 2d 1000 (E.D. Cal. 2007) .......................................................22

*Lopes v. Vieira*
    543 F. Supp. 2d 1149 (E.D. Cal. Mar. 13, 2008) .................................. 18, 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

*Meckenstock v. International Heritage, Inc.*
  1998 U.S. Dist. LEXIS 21042 (E.D.N.C. Dec. 9, 1998)................................26

*Melder v. Morris*
  27 F.3d 1097 (5th Cir. 1994) ........................................................................13

*Metzler Inc GMBH v. Corinthian Colleges, Inc.*
  540 F. 3d 1049 (9th Cir. 2008) .....................................................................31

*Miller v. Thane Int'l, Inc.*
  519 F.3d 879 (9th Cir. 2008) ................................................. 12, 20, 26, 28, 29

*Moore v. Kayport Package Exp., Inc.*
  885 F. 2d. 531 (9th Cir. 1989) ......................................................................21

*Moss v. U.S. Secret Service*
  572 F.3d 962 (9th Cir. 2009) ........................................................................14

*P. Stolz Family P'ship L.P. v. Daum*
  355 F.3d 92 (2d Cir. 2004)……………………………………..……………19

*Padilla v. Yoo*
  633 F. Supp. 2d 1005 (N.D. Cal. 2009)........................................................15

*Patel v. Holiday Hospitality Franchising, Inc.*
  172 F. Supp. 2d 821 (N.D. Tex. 2001) .........................................................12

*Pinter v. Dahl*
  486 U.S. 622, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988) ................. 2, 12, 21

*R.J. Wolf v. Banco Nacional de Mexico*
  549 F. Supp. 841 (N.D. Cal. 1982).............................................................17

*Safron Capital Corp. v. Leadis Technology, Inc.*
  2008 WL 1776407 (9th Cir. April 18, 2008)................................... 10, 11, 12

*Schmidt v. Bassett Furniture Indus*.
  2009 WL 3380354 (E.D. Wis. Oct. 20, 2009)...............................................27

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc*.
  806 F.2d 1393 (9th Cir. 1986) ......................................................................12

*Sears v. Likens*
    912 F.2d 889 (7th Cir. 1990) .......................................................13

*SEC v. Better Life Club of Am., Inc.*
    995 F. Supp. 167 (D.D.C. 1998).................................................27

*SEC v. Medical Capital Holdings, Inc.*
    2010 WL 809406 (C.D. Cal. Feb. 24, 2010) ......................... 24, 26

*SEC v. Murphy*
    626 F.2d 633 (9th Cir. 1980) .....................................................23

*SEC v. Ralston Purina Co.*
    346 U.S. 119, 73 S. Ct. 981, 97 L. Ed. 1494 (1953) ............... 2, 18

*Shaw v. Digital Equip. Corp.*
    82 F.3d 1194 (1st Cir. 1994).......................................................11

*Siemers v. Wells Fargo & Co.*
    2006 WL 2355411 (N.D. Cal. Aug. 14, 2006).............. 29, 32, 33

*Smedley v. Reid*
    2010 WL 391831 (S.D. Cal. Jan. 27, 2010) ...............................15

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*
    2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) ............................22

*Swartz v. KPMG, LLP*
    476 F.3d 756 (9th Cir. 2007) .....................................................12

*U.S. v. AMC Entertainment, Inc.*
    549 F.3d 760 (9th Cir. 2008) …………………………………19

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ............................................ 10, 21

*Wagner v. First Horizon Pharm. Corp.*
    464 F.3d 1273 (11th Cir. 2006) .................................................13

*Webster v. Omnitrition Int'l, Inc.*
    79 F.3d 776 (9th Cir. 1996) ................................................ 19, 26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

*Western Fed. Corp. v. Erickson*
    739 F.2d 1439 (9th Cir. 1984) ........................................................18

*Williams v. WMX Tech., Inc.*
    112 F.3d 175 (5th Cir. 1997) .........................................................12

**Statutes**
15 U.S.C. § 77e .................................................................................16
15 U.S.C. § 77l............................................................................ 16, 18, 19
15 U.S.C. § 77o........................................................................... 10, 29
15 U.S.C. §§ 77a .............................................................................9
17 C.F.R. § 230.405 ..........................................................................30
17 C.F.R. § 230.501 ........................................................................ 5, 25
17 C.F.R. § 230.502…………………………………………………...5, 6
17 C.F.R. § 230.506 ........................................................................5, 6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

## I.    INTRODUCTION

Lead Plaintiffs respectfully submit this omnibus memorandum in opposition to motions to dismiss filed by defendants Capital Financial Services, Inc., National Securities Corp., and Securities America, Inc. (collectively, "Broker Defendants") and defendants Capital Financial Holdings, Inc., National Holdings Corp., Securities America Financial Corp. and Ameriprise Financial, Inc. (collectively, "Control Person Defendants").

This action arises out of the collapse of an investment scheme in which Medical Capital Holdings, Inc. ("MCHI"), between November 2003 and July 2009, raised approximately $2.2 billion from over 20,000 investors around the United States.  Plaintiffs sue Defendants as primary violators and control persons under Sections 12(a)(1), 12(a)(2) and 15 of the Securities Act of 1933.  Defendants sold Plaintiffs promissory notes issued by special purpose corporations ("SPCs") affiliated with MCHI.  Plaintiffs allege these note offerings constituted an integrated offering, that the offering was not registered under the Securities Act, and that no exemption from registration was available.  Plaintiffs contend Defendants' sale to them of Medical Capital notes thus violated the Securities Act's prohibition on sales of unregistered securities.  Plaintiffs also contend that because each "Private Placement Memorandum" ("PPM") distributed in connection with the sale of Medical Capital notes contained materially misleading statements about the sources and uses of funds, asset valuations and business practices of MCHI and its affiliates, Defendants violated the Securities Act's prohibition on sales of securities by means of a misleading prospectus.

Defendants' motions to dismiss are mainly based on their argument that Plaintiffs have not sued the "proper defendants" and "attempt to stretch provisions of the Securities Act … beyond the breaking point."  But Defendants are the proper defendants because they fall squarely within the scope of "sellers" that Congress

intended be held liable for violations of the Securities Act.  The Act was designed to protect investors by promoting the full and fair disclosure of information that investors need to make informed decisions.  *See SEC v. Ralston Purina Co.*, 346 U.S. 119, 124, 73 S. Ct. 981, 97 L. Ed. 1494 (1953).  Courts have recognized since the passage of the Securities Act that Section 12 liability applies to brokers, who are in a position to "control the flow of information" to investors and ensure they are provided all material information before investing.  *Pinter v. Dahl*, 486 U.S. 622, 646, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988).

Defendants also seek to hold Plaintiffs to a heightened pleading standard even though their claims are not fraud-based and Defendants cite no valid cases in which a court has applied Rule 9(b) to a complaint alleging solely Securities Act claims.  Plaintiffs have pled a straightforward case against Defendants for selling unregistered securities through the use of a misleading prospectus.  Plaintiffs' allegations easily satisfy the Rule 8 notice pleading standard.  Defendants' contention that Plaintiffs should be required to support their claims with evidentiary details should be rejected, and Defendants' motions to dismiss should be denied.

## II.   FACTUAL BACKGROUND

### A.   The Broker Defendants Offered and Sold Medical Capital Notes

The Broker Defendants were part of a national network of broker-dealers across the country that offered and sold Medical Capital promissory notes ("the Notes") to investors.  The brokers received commissions based on the aggregate principal amount of the Notes sold.  ¶¶ 6, 81.[1]

---

[1] All "¶ __" cites are to Plaintiffs' Consolidated Amended Class Action Complaint (Dkt. No. 38).

### 1.    The Notes

The Notes were issued by special purpose corporations (SPCs) created by Medical Capital Holdings, Inc. ("MCHI").  The SPCs were named "Medical Provider Financial Corporation" or "Medical Provider Funding Corporation" followed by sequential numerical designations, such as Medical Provider Financial Corporation I (or "MP I").  Through wholly-owned subsidiaries and the SPCs, MCHI purportedly provided financing to healthcare providers by purchasing their accounts receivable and by making loans to them.  This case involves the Notes issued by MP III, MP IV, MP V and MP VI.[2]  ¶¶ 1-5, 30, 32, 38-41.

Medical Capital initially attempted to raise funds through a registered public offering in December 2002, but withdrew the registration statement (without having sold any securities) because it was unable to file audited financial statements.  ¶¶ 43-48.  In September 2003, after abandoning its efforts to issue registered securities, Medical Capital began offering the Notes through the SPCs. The offerings were all structured and conducted in a similar manner:  the Notes were priced at $1,000 and were available in several classes with different maturity dates and interest rates; the proceeds were to be used primarily to purchase healthcare receivables; and the purchased assets were to serve as security for the Notes.  ¶¶ 45, 49-51.

### 2.    The Offer and Sale of the Notes to the General Public

A nationwide network of more than 60 broker-dealers, including the Broker Defendants, offered and sold the Notes to the public by advertising in newspapers, mailing postcards that solicited potential investors to attend meetings, and delivering sales pitches at seminars, meetings and dinners, without regard to the investors' sophistication or knowledge, or whether they qualified as "accredited

---

[2] In this brief, "Medical Capital" refers to all of the Medical Capital entities.

investors." ¶¶ 66, 69.  For example, in the Sarasota, Florida area, a Broker Defendant and a Medical Capital representative hosted at least six dinner meetings to pitch the MP III, MP IV and MP V offerings.  The meetings were open to interested investors who were encouraged to bring friends and other potential investors.  There was no effort made to limit attendance to accredited investors.  About 25 potential investors attended each meeting.  ¶ 70.

In the Dallas/Fort Worth, Texas area, potential investors were solicited by a Broker Defendant through newspaper advertisements highlighting the potential returns investors would receive if they invested in the notes.  Investors who responded to the ads were invited to lunch and dinner meetings attended by the Broker and a Medical Capital representative.  More than 50 potential investors attended each meeting, and there was no effort to limit attendees to accredited investors.  ¶ 71.

In the Boston, Massachusetts area, one of the Broker Defendants held dinner seminars to provide information about the Medical Capital Notes.  No effort was made to limit attendance to accredited investors.  Each seminar was attended by 80 to 100 potential investors.  ¶ 72.

In the Los Angeles, California area, one of the Broker Defendants mailed postcards to potential investors with whom it had no prior relationship or dealings.  The postcards solicited individuals to attend dinner meetings.  The meetings, which were attended by approximately 25-50 potential investors, included a presentation on a variety of investments, including the Medical Capital Notes.  The Broker Defendant collected names and phone numbers from interested investors and called them after the meeting to ask them to invest in the Medical Capital offerings.  ¶ 73.

Written materials about investing in the Notes were disseminated and made available to the general public on the internet.  These materials were essentially the

same as PowerPoint presentations used by the broker-dealers during the seminars, meetings and dinners that were conducted to solicit sales of the Notes.  ¶ 74.

The nationwide sales effort worked.  More than 20,000 investors from all over the United States purchased more than $2.2 billion of Medical Capital Notes. ¶ 75.  Many of the investors who were offered and sold Notes had no prior relationship with the broker-dealers.  ¶ 77.

### 3.    The Purported Exemption From Registration

The Notes were issued and sold as purportedly private offerings exempt from registration under Rule 506 of Regulation D.  ¶ 51.  But this exemption did not apply because the Notes were offered and sold to the general public, including unaccredited investors.  ¶¶ 8, 76.

Rule 506 allows a company to sell an unlimited amount of unregistered securities as long as they (1) are not marketed through any form of "general solicitation" or "advertising" and (2) are sold to no more than 35 investors who are not "accredited investors."  17 C.F.R. § 230.501 (promulgated March 10, 1988); 17 C.F.R. § 230.506 (promulgated March 20, 1989).  Examples of general solicitation and advertising include "[a]ny advertisement, article, notice or other communication published in any newspaper, magazine or similar media" and "[a]ny seminar or meeting whose attendees have been invited by any general solicitation or general advertising."  17 C.F.R. § 230.502(c) (promulgated March 16, 1982).

An accredited investor is an individual with a net worth (alone or together with a spouse) that exceeds $1 million or an income that exceeds $200,000 in each of the two most recent years.  17 C.F.R. § 230.501(a).[3]  Rule 506 requires that any

---

[3] Other types of "accredited investors" are banks, insurance companies, or investment companies; certain employee benefit plans; charitable organizations

purchaser who is not an accredited investor have "such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment." 17 C.F.R. § 230.506(b)(2)(i)-(ii). Unaccredited investors must also be provided before their purchase with the same kind of information required to be included in a registration statement, including financial information about the business and the securities. 17 C.F.R. § 230.502(b).

Plaintiffs allege that the Notes were offered through forms of general solicitation and advertising and that the Notes were sold to more than 35 unaccredited investors who lacked the financial sophistication to evaluate the merits and risks of the Notes and were not provided required information about Medical Capital and the Notes. ¶¶ 8, 69-80.

## B. The Private Placement Memoranda Contained False and Misleading Statements

The Broker Defendants and other broker-dealers sold the Notes using a private placement memorandum ("PPM"). Although each offering had its own PPM, they were substantially similar in all material respects. ¶ 83. The PPMs described the SPCs as special purpose subsidiaries created primarily to purchase, hold and collect healthcare receivables and other assets related to the healthcare industry. The PPMs also described, among other things, the business operations of the Medical Capital entities, the underwriting criteria for receivables, the receivables acquisition process, the administration and servicing of the Notes and related assets, and the manner in which the SPC would use investor proceeds. ¶¶ 84-85.

---

with more than $5 million in assets; a director, executive or general partner of the seller; and certain trusts with assets in excess of $5 million. *See* 17 C.F.R. § 230.501.

The PPMs contained false statements and omitted material facts that were necessary to make the statements in the PPMs describing Medical Capital and the SPCs not misleading to investors.  ¶¶ 89-121.  Among other things:

- The PPMs did not disclose that accounts receivable were transferred from older SPCs to new SPCs (known as "round-tripping") at least 301 times, amounting to over $829 million in sales of assets from one SPC to another.  ¶¶ 94-95.

- The PPMs did not disclose that Medical Capital commingled funds between entities and overpaid for assets.  ¶¶ 98-99.

- The PPMs did not disclose that certain receivables purchased by SPCs did not exist at the time of purchase, and that the SPCs thus "purchased" non-existent receivables.  ¶¶ 96-97.

- The PPMs did not disclose that Medical Capital mischaracterized non-medical collateral as medical receivables.  ¶¶ 100-101.

- The PPMs falsely stated that administrative fees would be paid to Medical Capital entities only if the "collateral coverage ratio" (the NCCR) remained at 100% after all other required payments.  ¶ 88.

- The PPMs did not disclose that administrative fees were improperly paid to a Medical Capital entity based on inflated collateral values and incorrectly calculated NCCRs.  ¶¶ 116-117.

- The PPMs did not disclose that Medical Capital's accounting records did not comply with GAAP and that Medical Capital did not keep its records in a GAAP-compliant manner.  ¶ 92-93.

- The PPMs did not disclose that Medical Capital's collateral reports (which were provided to the Trustees of the purported collateral for the notes) overstated assets and resulted in improper payments of administrative fees to Medical Capital entities.  ¶¶ 102-104; 116-117.

- The PPMs did not disclose that Medical Capital overstated the amount of investor proceeds used to purchase accounts receivable.  ¶ 111.

- The PPMs did not disclose that Medical Capital executives considered themselves free to spend money raised from investors on investments and purchases not reasonably discernible from the description of Medical Capital's business contained in the PPMs, as reflected in Medical Capital's investments in a mobile phone application venture, a pornographic website advertising firm, and an unreleased film, and Medical Capital's purchase of a $4.5 million, 118-foot luxury yacht for executives to host private parties.  ¶¶ 105-106.

- In a section entitled "Restriction on Use of Proceeds," the PPMs falsely stated that investor proceeds would not be used to pay administrative fees or service fees to Medical Capital entities.  ¶ 86.

- The PPMs did not disclose that Medical Capital misappropriated and wrongfully used investor funds to pay administrative fees to Medical Capital-affiliated entities.  ¶¶ 107-109.

## C.   Medical Capital Defaults

Starting in August 2008, MP II, MP III, MP IV and MP V began to default on payments of interest and principal to investors.  The Broker Defendants and other broker-dealers continued to offer and sell the Notes without disclosing the defaults.  The PPM for the MP VI offering, which began in August 2008, stated that "[MP VI's] affiliates have never defaulted in the payment of their obligations on these debt securities, and all interest payments on those securities were made when due."  ¶¶ 54-55, 118-121.

On July 16, 2009, the SEC initiated an enforcement action against Medical Capital and its principals for securities violations.  At the SEC's request, the court appointed a receiver.  The receiver's reports detail Medical Capital's accounting violations, improper use of investor proceeds, and inflated collateral valuations,

among other things.  ¶¶ 56-63.  The revelations about Medical Capital's operations include:

- MP II, MP III, MP IV and MP V were in default or late in paying principal and interest on at least $992.5 million in notes since August 2008;

- Medical Capital and its executives misappropriated more than $300 million of investor funds through the improper payment of purported administrative fees;

- MP II-MP VI were never profitable and resulted in losses totaling in excess of $316 million;

- $617 million of the $625 million of accounts receivables on the books of the SPCs at the time the receiver assumed control of Medical Capital either were too old to be collectible or the companies that owed the money no longer existed; and

- Loans and other assets with a claimed value of almost $1 billion were transferred between and among the SPCs to pay improper administrative fees and to pay earlier investors from new investors' funds.  ¶ 65.

### D.   Plaintiffs' Claims

Lead Plaintiffs filed this action on behalf of a class consisting of all persons and entities who purchased or otherwise acquired Medical Capital Notes issued by MP III, MP IV, MP V and/or MP VI that were offered and sold to them by any of the Broker Defendants, or their affiliates, and were damaged.  Plaintiffs allege that the Broker Defendants violated Section 12(a)(1) of the Securities Act, which prohibits the offer or sale of unregistered securities in interstate commerce, and Section 12(a)(2), which prohibits the sale of a security by means of a prospectus that contains an untrue statement of material fact or omits to state a material fact necessary to make the statements not misleading.  15 U.S.C. §§ 77a(1) & a(2).

Finally, Plaintiffs assert Section 15 claims against the Control Person Defendants, which own and control the Broker Defendants.  15 U.S.C. § 77o.

## III.   LEGAL STANDARD

### A.   Rule 9(b) Does Not Apply to Plaintiffs' Claims

The Broker Defendants fundamentally mischaracterize Plaintiffs' claims by arguing that the Securities Act claims "sound in fraud," on the grounds that they are based on the "unified course of fraudulent conduct perpetrated by the Medical Capital entities."[4]  Plaintiffs assert no claims against the "Medical Capital entities." They are not even parties to this case.  Plaintiffs do not allege that any Defendants participated in any of the fraudulent conduct that the Medical Capital entities may have perpetrated.  And Plaintiffs assert no fraud-based claims against Defendants.

Plaintiffs' claims arise under the Securities Act.  Because Securities Act claims are not fraud-based, Rule 9(b) does not apply to Plaintiffs' allegations.  *See Safron Capital Corp. v. Leadis Technology, Inc.*, No. 06-15623, 274 Fed. Appx. 540, 2008 WL 1776407, at *1 (9th Cir. April 18, 2008).  While courts have held non-fraud-based claims to the higher Rule 9(b) standard if they "sound in fraud," a claim is deemed to sound in fraud only if a plaintiff chooses to allege "that the defendant has engaged in fraudulent conduct," or alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim."  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003); *see also In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (finding that the plaintiffs' complaint "sounds in fraud" because it alleged "*a fraudulent scheme and course of business by defendants*" as "misrepresentations made by defendants, of which defendants had full knowledge").  Neither basis for applying Rule 9(b) applies to Plaintiffs' allegations.

---

[4] *See* Sec. Am. at 12; Cap. Fin. Serv. at 20-22.

Plaintiffs do not allege that Defendants engaged in fraudulent conduct, as Defendants themselves acknowledge.[5]  Courts reject the "sounds in fraud" argument in cases like this one, where plaintiffs do not allege that the defendants engaged in fraudulent activity.  *See, e.g., Leadis*, 2008 WL 1776407, at *1 (reversing dismissal because the district court improperly applied Rule 9(b)); *Belodoff v. Netlist, Inc.*, No. SACV 07-00677 DOC, 2009 WL 1293690, at *5 (C.D. Cal. April 17, 2009); *In re Shoretel Inc., Sec. Litig.*, No. C 08-00271 CRB, 2009 WL 248326, at *2 (N.D. Cal. Feb. 2, 2009); *In re Washington Mutual, Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 504 (W.D. Wash. 2009) ("because it is possible for a defendant to participate in the dissemination of fraudulent statements without awareness of the actual fraud, Rule 9(b) applies only to those defendants also accused in the underlying fraud"); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1162-63 (C.D. Cal. 2008) (applying Rule 8 to claims against defendants who were not "alleged to have participated in the fraud" because applying Rule 9(b) to those defendants would "eviscerate" Section 11).  Other Circuits also hold that a properly pleaded complaint alleging only Securities Act claims is subject to Rule 8, not Rule 9(b).  *See, e.g., Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368-69 (5th Cir. 2001); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1222-23 (1st Cir. 1994).

Nor do Plaintiffs rely on an alleged unified course of conduct as the basis for their claims.  Plaintiffs' claims against the Broker Defendants are based on their status as offerors and sellers of the Notes.  To "promote full and fair disclosure of

---

[5] *See* Sec. Am. at 17 ("Securities America's alleged role in devising the underlying fraud scheme, or in preparing the documents containing the alleged misrepresentations or omissions, is non-existent."); Cap. Fin. Serv. at 6 ("CFS is not alleged to have created or issued the PPMs or any other offering documents issued by Medical Capital or the Medical Capital Entities.").

information to the public in the sales of securities," the Securities Act imposes liability on sellers for negligent or even innocent conduct. *Pinter*, 486 U.S. at 646; *see also Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) ("Section 12(a)(2) is a virtually absolute liability provision"). Plaintiffs' claims against the Broker Defendants are based on negligent conduct or the absolute liability imposed by Section 12 of the Securities Act, and do not rely on any alleged unified course of fraudulent conduct. *See In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 545 (N.D. Cal. 2009) ("This order declines to characterize the claims as necessarily sounding in fraud where plaintiffs have not expressly pled fraud and have pled non-fraud bases for liability.").

Defendants cite only one Ninth Circuit case in which a court applied Rule 9(b) to a complaint asserting only Securities Act claims. But the district court's application of 9(b) in that case, *In re Leadis Technology, Inc.*, No. C-05-00882 CRB, 2006 WL 496039 (N.D. Cal. March 1, 2006), was **reversed** by the Ninth Circuit because the plaintiffs did not rely upon a unified course of fraudulent conduct as the basis for their claims. *Leadis*, 2008 WL 1776407, at *1. Defendants also cite cases that do not involve Securities Act claims. *See Swartz v. KPMG, LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (RICO and fraud claims); *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (RICO and 10b-5 claims); *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (Section 10(b) claim); *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (RICO claim); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) (common law fraud claim).

Every other decision Defendants cite involve a complaint that asserts fraud-based claims (such as a 10(b) Exchange Act claim or RICO) in addition to Securities Act claims (or other statutory non-fraud claims), and bases both claims

on the same factual allegations. *See*, *e.g.*, *Cozzarelli v. Inspire Pharm. Inc.,* 549 F. 3d. 618, 629 (4th Cir. 2008) ("plaintiffs' [Securities Act] allegations … are exactly the same as plaintiffs' allegations of fraud under the Exchange Act"); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006) (applying Rule 9(b) where Securities Act and Exchange Act claims were based on the same allegations, and declining to consider plaintiffs' belated argument that Rule 8 should apply to the claims against the underwriter defendants who are not alleged to have acted fraudulently); *Daou*, 411 F.3d at 1028 ("the complaint makes a 'wholesale' adoption of the securities fraud allegations for purposes of the Securities Act claims"); *Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 & n.24 (3rd Cir. 2004) (applying Rule 9(b) to Securities Act claims that incorporated factual allegations of Exchange Act claims); *Falkowski v. Imitation Corp.*, 309 F.3d 1123, 1133-34 (9th Cir. 2002) (applying Rule 9(b) to complaint that asserted both Securities Act and Exchange Act claims); *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996) ("the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims levied at the Prospectus"); *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994) (applying Rule 9(b) to Securities Act claims "in light of the complaint's wholesale adoption of the allegations under the securities fraud claims"); *Sears v. Likens*, 912 F.2d 889, 892-93 (7th Cir. 1990) (applying Rule 9(b) to complaint alleging RICO, Exchange Act and Securities Act claims); *In re Infonet Services Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1094 (C.D. Cal. 2003) (applying Rule 9(b) because the Securities Act and Section 10(b) claims "relie[d] on the same allegations"); *In re Harmonic, Inc. Sec. Litig.*, 163 F. Supp. 2d 1079, 1088-89 & n.8 (N.D. Cal. 2001) (applying Rule 9(b) to Securities Act claims because the plaintiffs alleged that the defendants knew statements in the prospectus were false in case also involving Exchange Act claims).

**B.** **Plaintiffs' Claims Satisfy the Notice Pleading Standard of Rule 8**

Rule 8(a)(2) requires a complaint to state a "short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court revisited Rule 8 and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  The Court held that a well-pleaded complaint "does not require 'detailed factual allegations,'" but must include "sufficient factual matter…to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570); *see also Clinton v. Luke*, No. CV 08-4179-DOC (OP), 2010 WL 114208, at *3 (C.D. Cal. Jan. 8, 2010).  A complaint need only state "enough facts to raise a reasonable expectation that discovery will reveal evidence" to prove the claim. *Twombly*, 550 U.S. at 556.

Defendant Securities America characterizes *Twombly* as "usher[ing]" in a new "fact-intensive test" for assessing the sufficiency of a complaint.  Sec. Am. at 6.  On the contrary, as the Ninth Circuit recently observed, the decision "should not be read as effecting a sea change in the law of pleadings."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 968 (9th Cir. 2009).  While a court need not accept "a legal conclusion couched as a factual allegation," *Iqbal,* 120 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 555), the Supreme Court made it clear that a complaint "should not be found deficient even if it is apparent 'that a recovery is very remote and unlikely.'" *Moss*, 572 F.3d at 968 (quoting *Twombly*, 550 U.S. at 556).  Moreover, "[s]pecific facts are not necessary" to satisfy the requisites of Rule 8(a)(2).  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *see also Clinton*, 2010 WL 114208, at *3 (citing *Erickson*, among other cases, for the standards on a Rule 12(b)(6) motion).

Recent decisions of this Court and other courts in this Circuit have followed *Twombly*'s guidance.  *See, e.g., Clinton*, 2010 WL 114208, at *3 (a "complaint

does not need detailed allegations"); *Smedley v. Reid*, No. 08cv1602 BTM (BLM), 2010 WL 391831, at *7 (S.D. Cal. Jan. 27, 2010) (a pleading is not deficient "merely because 'recovery is very remote and unlikely'") (quoting *Twombly*, 550 U.S. at 557); *Padilla v. Yoo*, 633 F. Supp. 2d 1005, 1018-19 (N.D. Cal. 2009) ("To survive a motion to dismiss, a complaint need not provide detailed factual allegations.").

On a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff.*" *Belodoff*, 2009 WL 1293690, at *3 (citations omitted).  A claim is sufficient for purposes of Rule 12(b)(6) when its "factual content … allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  Plaintiffs' pleading burden is simply to allege facts, accepted as true, from which reasonable inferences can be drawn to plausibly support the elements of their claims.  *Twombly,* 550 U.S. at 562 ("a complaint … must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory") (citation omitted); *see also Clinton*, 2010 WL 114208, at *3 (a court must determine whether the "factual allegations and reasonable inferences from them plausibly support a claim for relief").

In an effort to escape the "virtually absolute" liability imposed by the Securities Act,  Defendants misapply *Twombly* by arguing that an "equally possible" and "certainly plausible" interpretation of the facts is that Plaintiffs lost their investments "through no fault of any" Defendant.  *See* Sec. Am. at 16; Cap. Fin. Serv. at 13-14.  But Plaintiffs are not required to allege facts or otherwise demonstrate that their right to recover is "more plausible than not" or more plausible than any inference the Defendants may propose.  *See Twombly,* 550 U.S.

at 570 (complaint must allege "only enough facts to state a claim to relief that is plausible on its face" but "[a]sking for plausible grounds . . . does not impose a probability requirement at the pleading stage"); *Clinton*, 2010 WL 114208, at *3 (the "plausibility standard is not a probability requirement").   The plausibility analysis is not comparative, but instead addresses whether the allegations "nudge[] [the] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 547.

Plaintiffs' factual allegations easily satisfy the Rule 8 pleading standards and Defendants' motions should be denied.

## IV.   PLAINTIFFS STATE CLAIMS UNDER SECTION 12(a)(1)

### A.   Defendants Do Not Dispute That Plaintiffs Have Adequately Alleged the Elements of a Section 12(a)(1) Claim

Section 12 of the Securities Act creates liability for the sale of unregistered securities.  Section 12(a)(1) holds sellers strictly liable for the unlawful sale of an unregistered security:

> Any person who … offers or sells a security in violation of section 77e of this title ... **shall be liable** ... to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77l(a)(1) (emphasis added).  Section 77e states, in relevant part:

> It **shall be unlawful** for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus

> or otherwise any security, unless a registration statement has
> been filed as to such security....

15 U.S.C. § 77e(c) (emphasis added).

Plaintiffs' burden in pleading a violation of Section 12(a)(1) is modest.
Plaintiffs must allege: (1) that the securities were not registered; (2) the offer or
sale of the securities; and (3) the use of interstate transportation or communication
or the mails in connection with the offer or sale.  *See, e.g., In re Alliance Equip.
Lease Program Sec. Litig.*, Civ. No. 98cv2150 J(NLS), 2007 WL 627950, at *3
(S.D. Cal. Feb. 23, 2007); *see also R.J. Wolf v. Banco Nacional de Mexico*, 549 F.
Supp. 841, 853 (N.D. Cal. 1982), *rev'd on other grounds*, 739 F.2d 1458 (9th Cir.
1984) ("Liability under this section is 'absolute'; a purchaser may recover damages
'regardless of whether he can show any degree of fault, negligent or intentional, on
the seller's part.'") (quoting *Lewis v. Walston & Co.*, 487 F.2d 617, 621 (5th Cir.
1973)).

Defendants do not argue that Plaintiffs have insufficiently pled any of these
elements of their claims.  They do not dispute that the Notes were unregistered,
that the Broker Defendants offered or sold the Notes, or that interstate
transportation or the mails were used in connection with the offer and sale of the
Notes.

Instead, Defendants argue that Plaintiffs have insufficiently alleged that the
Notes should have been registered at the time Plaintiffs purchased them.  Sec. Am.
at 9.  In the only case they cite to support this argument, the court found that the
plaintiffs lacked standing to pursue a Section 12(a)(1) claim because the plaintiffs
alleged that the sale "became illegal **after** they made the purchases." *Eshelman v.
Orthoclear Holdings, Inc.*, No. C 07-1429 JSW, 2009 WL 506864, at *11 (N.D.
Cal. Feb. 27, 2009) (emphasis added).  The court dismissed the claim because

17

"[t]here is no allegation in the complaint that the Plaintiffs themselves were offered or sold securities in violation of the registration requirements."  *Id.*

Unlike *Eshelman*, Plaintiffs do allege that, at the time of their purchases, they were sold securities in violation of the registration requirements.  *See* ¶ 16 ("Prior to the time of Mr. Mitchell's purchases of MP V Notes, a violation of Section 5 of the Securities Act had occurred."); *see also* ¶¶ 15, 17-20.  Plaintiffs have also alleged that the Notes were sold publicly by at least the time of the first offering at issue in this case, MP III.  *See* ¶ 70.

Defendants characterize Plaintiffs' allegations as conclusory, but in making this argument Defendants are trying to evade their own burden of proving that the notes were exempt from the registration requirement.  Defendants have the burden of proving a valid registration exemption as an affirmative defense.  *See, e.g., Ralston Purina,* 346 U.S. at 126-27; *Western Fed. Corp. v. Erickson*, 739 F.2d 1439, 1442 (9th Cir. 1984) (granting summary judgment for plaintiff); *Lopes v. Vieira*, 543 F. Supp. 2d 1149, 1170 (E.D. Cal. Mar. 13, 2008) ("Plaintiffs are not required to allege that the offering failed to meet the safe harbor requirements of Rules 505 or 506 because the burden of claiming an exemption to the registration requirements falls on the Defendants, not the Plaintiffs.").  "[E]xemption is an affirmative defense" and Plaintiffs "need not anticipate affirmative defenses" in their complaint.  *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 833 (N.D. Ill. 2008); *see also Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1217 (C.D. Cal. 2004) ("Federal pleading rules generally do not require a plaintiff to anticipate and plead around an affirmative defense") (*citing Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980)).

## B.   Plaintiffs' Claims Are Timely

Defendants contend that Plaintiffs' claim is time barred because the first complaint was filed more than one year after the Plaintiffs' purchases of the Notes.

18

In the Ninth Circuit, however, "[c]laims under §§ 12[(a)](1) and 12[(a)](2) of the Securities Act of 1933 (15 U.S.C. §§ 77l(1) and 77l(2)) must be brought within one year of the plaintiff's **discovery** of the allegedly illegal sale or false statement, respectively." *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 788 (9th Cir. 1996) (emphasis added).  Plaintiffs could not have discovered the illegal sale of the Notes until, at the earliest, July 16, 2009, when the SEC filed its case against Medical Capital for securities violations. *See* ¶¶ 55-56, 120-21.  This is well within one year of the filing of the first complaint on September 18, 2009.

Unlike *Webster v. Omnitrition*, the cases Defendants cite from other circuits are not binding precedent. *See* Sec. Am. at 8; Cap. Fin. Serv. at 9. *See also Hart v. Massaneri,* 266 F.3d 1155, 1170-71, 1180 (9th Cir. 2001); *U.S. v. AMC Entertainment, Inc.*, 549 F.3d 760, 771 (9th Cir. 2008) ("it goes without saying that we expect our pronouncements will be the final word within the Ninth Circuit's geographical area, subject only to en banc or Supreme Court review."). *P. Stolz Family P'ship L.P. v. Daum* is also distinguishable because it addresses the three-year statute of repose, not the one-year statute of limitations.  355 F.3d 92, 98-99 (2d Cir. 2004).

## V.   PLAINTIFFS STATE CLAIMS UNDER SECTION 12(a)(2)

Section 12(a)(2) imposes liability on any person who offers to sell or sells a security by means of a prospectus containing untrue statements or material omissions.  15 U.S.C. § 77l(a)(2).  To state a Section 12(a)(2) claim, Plaintiffs must plead: (1) an offer or sale of a security, (2) by the use of a means or instrumentality of interstate commerce, (3) by means of a prospectus or oral communication (4) that includes an untrue statement of material fact or omits to state a material fact that is necessary to make the statements not misleading. *See Miller,* 519 F. 3d at 885; *In re Immune Response Sec. Litig.,* 375 F. Supp. 2d 983, 1038 (S.D. Cal. 2005).

The Broker Defendants do not challenge the first two elements of Plaintiffs' claim (an offer or sale of a security and use of interstate means).  They assert only that the PPMs were not "prospectuses" and that the PPMs did not contain misstatements or omissions of fact.  As discussed below, Plaintiffs sufficiently allege each of the elements of a Section 12(a)(2) claim and the motions to dismiss this claim should be denied.

### A.  The Broker Defendants Offered and Sold the Notes

The Broker Defendants do not contest their status as "offerors" and "sellers" of the Notes, nor can they.  Plaintiffs allege that the Broker Defendants offered and sold the Notes in interstate commerce.  *See* ¶¶ 15-20; 66-80, 131-151.  Although not required to, Plaintiffs have also alleged which Broker Defendant sold the Notes to each of the named Plaintiffs.  ¶¶ 15-20.  Plaintiffs have also filed certifications with this Court that identify the dates of Plaintiffs' purchases, the amounts invested, the price per Note, and the number of Notes purchased.  *See* Dkt. No. 15, Exs. B-G.  Nothing more is required.  *See Schwab,* 257 F.R.D. at 549-50 (allegation "that defendants 'actively solicited the sale of the fund's shares' and that certain defendants were involved in marketing the fund" was sufficient); *see also In re DDI Corp. Sec. Lit.*, 2005 WL 3090882, at *19-20 (C.D. Cal. July 21, 2005) (at the pleading stage, "Plaintiffs need not allege 'which underwriter sold securities to each plaintiff'").

The Broker Defendants nonetheless assert that they are not the "proper defendants," pointing to the Medical Capital defendants in the SEC case.  *See* Sec. Am. at 1; Cap. Fin. Serv. at 2.  The Broker Defendants misconstrue the nature of a Section 12 claim.  Brokers fall squarely within the scope of the "sellers" that Congress intended to hold liable.  "The applicability of § 12 liability to brokers and others who solicit securities purchases has been recognized frequently since the passage of the Securities Act."  *Pinter,* 486 U.S. at 646; *see also Moore v. Kayport*

*Package Exp., Inc.,* 885 F. 2d. 531, 536 (9th Cir. 1989) (Section 12 claim was stated against brokers who allegedly "distributed sales promotion data").  As the Supreme Court recognized, this is due to the broker's critical role in a securities purchase:  "The solicitation of a buyer is perhaps the most critical stage of the selling transaction. It is the first stage of a traditional securities sale to involve the buyer, and it is directed at producing the sale." *Pinter*, 486 U.S. at 646.  Brokers are "well positioned to control the flow of information to a potential purchaser, and, in fact, such persons are the participants in the selling transaction who most often disseminate material information to investors." *Id.*  The broker's sale to an investor is "the stage at which an investor is most likely to be injured, that is, by being persuaded to purchase securities without full and fair information." *Id.* at 646-47.

Because brokers may be held liable under Section 12 even if they had no role in drafting the material misstatements or omissions at issue, Capital Financial Services' argument that Plaintiffs failed to identify which Broker Defendant "made material misstatements or omissions" in the PPMs is irrelevant. *See* Cap. Fin. Serv. at 21-22.  Equally misplaced is Defendants' argument that Plaintiffs must specify the "time" and "place" of the alleged misrepresentations, for which they cite Rule 9(b) cases that do not address Securities Act claims. *See, e.g.*, *Kearns v. Ford Motor Co.,* 567 F. 3d 1120, 1125 (9th Cir. 2009) (the plaintiff alleged "that Ford engaged in a fraudulent course of conduct" in violation of California law); *Carroll v. Fort James Corp.*, 470 F. 3d 1171, 1174 (5th Cir. 2006) (addressing plaintiff's common law fraud claim); *Vess*, 317 F. 3d. at 1101 (allegations of a fraudulent conspiracy under California law).

**B.**    **Plaintiffs Have Alleged That the Sale of the Notes Was By Means of a "Prospectus"**

Defendant Capital Financial Services argues that "Section 12 of the Securities Act applies to a prospectus (*i.e.*, public offering), not a private placement as in this matter."  Cap. Fin. Serv. at 10.  But the self-serving label an issuer may place on a purportedly private offering is not dispositive.  *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 569, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995); *see also Fisk v. SuperAnnuities, Inc.,* 927 F. Supp. 718, 730 (S.D.N.Y. 1996).  In *Gustafson*, the Supreme Court held that Section 12(a)(2) liability may arise from any document that would be required to contain the information in a registration statement, but for the operation of a valid registration exemption.  513 U.S. at 584.  In other words, **any** offering document is a "prospectus" if it is used to offer securities in either a registered offering or an offering that should have been registered.  *See Lopes v. Vieira*, 488 F. Supp. 2d 1000, 1024 (E.D. Cal. 2007).

Plaintiffs allege that the Medical Capital PPMs—although labeled "private placements"—were used to offer the Notes to the public.  *See* ¶¶ 69-74.  Plaintiffs also allege that the offerings were not registered and did not qualify for exemption under Rule 506 of Regulation D.  *See* ¶¶ 8, 15-20, 69-80.  Courts uphold Section 12(a)(2) claims where a complaint, like Plaintiffs' complaint, alleges that the purported private placements were in fact unregistered public offerings.  *See, e.g., Lopes*, 543 F. Supp. 2d at 1169 (denying motion to dismiss because plaintiff's allegation that the defendants "approached a large number of potential investors in a fashion that constituted 'general solicitation or advertising'" sufficiently pled a public offering); *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, No. 00 CIV 8058 (NRB), 2001 WL 1111508, at *6 (S.D.N.Y. Sept. 20, 2001) (denying motion to dismiss because "while the offering pursuant to the PPM here was structured on its face to come within the Section 4(2) exemption," it is premature to reach

"conclusions at this stage"); *Fisk,* 927 F. Supp. at 730 (denying motion to dismiss where the plaintiff alleged that purportedly exempt offering was not "a *bona fide* private placement").

Courts also widely recognize that determining whether an offering was public or private involves "fact-intensive inquiries" that "are not appropriate … under a motion to dismiss," particularly because the burden of proving an exemption is on the defendant. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* 310 F. Supp.2d 819, 866 (S.D. Tex. 2004) ("discovery and submission of evidence are essential before such a determination can be made"); *see also SEC v. Murphy*, 626 F.2d 633, 644-48 (9th Cir. 1980) (applying a "flexible test" for determining whether private offering exemption applies and affirming summary judgment for SEC because the defendant failed to meet his burden of proof); *Cogniplex*, *Inc. v. Hubbard Ross, L.L.C.,* 2001 WL 436210, at *12 (N.D. Ill. Apr. 27, 2001) (because the "public/private offering determination requires a careful analysis of all facts and surrounding circumstances," which is not appropriate for resolution on a motion to dismiss, "we think it prudent to allow discovery to go forward so that we may conduct the intensive factual analysis warranted under the case law").

### C. Plaintiffs Have Sufficiently Alleged Material Misstatements and Omissions of Fact

#### 1. This Court Already Considered The Misstatements and Omissions in the SEC Case

In the related SEC action, this Court held that the SEC had sufficiently alleged false and misleading statements in the PPM and Supplemental Private Placement Memorandum for MP VI:

The FAC [First Amended Complaint] [] specifically sets forth statements made in those documents that were false at the time they

23

were made and how the documents were misleading through a failure to disclose certain information. *See, e.g., id.* ¶ 28 (the SPPM misrepresented how the note offering's proceeds had been used); ¶ 33-34 (PPM misrepresented the default history of prior offerings).

*SEC v. Medical Capital Holdings, Inc.,* No. SACV 09-0818 (DOC), 2010 WL 809406, at *2 (C.D. Cal. Feb. 24, 2010).

Plaintiffs identify largely the same misstatements and omissions that this Court has already found to be actionable. Although the SEC action only concerned MP VI, the PPMs are "substantially similar in all material respects." ¶ 83.[6] For the same reasons stated in its SEC Order, the Court should hold that Plaintiffs have sufficiently alleged material misstatements and omissions of fact in the PPMs.

### 2. Plaintiffs Allege Material Misstatements and Omissions in the PPMs

Plaintiffs have identified specific material misstatements and omissions of fact contained in the PPMs that were distributed to investors at the time of their purchases. These misstatements and omissions concerned, for example, the business operations of the SPCs, Medical Capital's accounting irregularities and failures, improper investments in pet projects and waste of corporate assets on personal luxuries, and the misuse of investor proceeds to pay administrative fees. ¶¶ 89-122.

Contrary to Securities America's argument, Plaintiffs have pled sufficient details to show that these misstatements and omissions were false or misleading when made. *See* Sec. Am. at 19-20. For example, Plaintiffs allege that the PPMs failed to disclose Medical Capital's accounting irregularities and failures, including

---

[6] The MP III, MP IV and MP V PPMs that Capital Financial Services filed with its motion confirm the substantial similarity of the PPMs.

the fact that its accounting records did not comply with GAAP.   ¶¶ 91-93.  This fact is specific, existed at all times relevant to the offerings at issue in the case, and is readily discernable from the PPMs for those offerings, none of which disclose Medical Capital's lack of compliance with GAAP.  ¶ 93.  The complaint provides specific examples of the GAAP violations, including at least 301 sham "round-trip" transactions among SPCs totaling more than $829 million that were used to inflate accounts receivables.  ¶ 94.

Capital Financial Services argues that the PPMs could not have included false or misleading statements about GAAP violations because each SPC was a "new entity" with "no" or "limited" prior operating history.  *See* Cap. Fin. Serv. at 16.  As Plaintiffs allege, the SPCs were wholly-owned "subsidiaries" of Medical Capital and the "private placements" constituted an integrated offering under the securities laws.  ¶ 67.  A single Medical Capital affiliate (MCC) served as the "Administrator" for all of the SPCs and another (MTSI) provided related administrative services for the SPCs.  ¶¶ 36-41, 43-53, 66-67.  The historical failure of Medical Capital entities to maintain GAAP-compliant accounting records was material information that should have been disclosed.  *See* ¶¶ 47, 91-93, 100.[7]

Plaintiffs have pled their complaint in accordance with Rule 8's notice pleading standards and therefore did not include all of the information and evidence available in the Receiver's reports and the SEC complaint.  Exhibit 2 to the Receiver's August 14, 2009 report, for example, sets forth the details of each of

---

[7] Although Securities America asserts in a footnote that Plaintiffs' claim fails "to the extent that" Plaintiffs do not provide proof of the falsity of "forward-looking statements," Securities America does not identify any allegations as forward-looking and cites only a case that was decided after a full evidentiary hearing and has no application to this motion.  *See* Sec. Am. at 15 n. 6 (citing *Ferland v. Orange Groves of Florida, Inc*., 377 F. Supp. 690, 692-93 (M.D. Fla. 1974)).

the 301 "round-trip" transactions, which date back to November 2003—well before the first PPM at issue in this case was disseminated.[8]  Defendants contend that Plaintiffs' complaint should include such evidentiary detail.  Should the Court find additional details are required, Plaintiffs request leave to amend.

### 3.    The Alleged Misstatements and Omissions Are Material

Securities America also challenges the materiality of the false and misleading statements that Plaintiffs have identified.  *See* Sec. Am. at 19-20.  But "[a]ssessing materiality is a 'fact-specific inquiry' that 'depends on the significance the reasonable investor would place on the withheld or misrepresented information.'"  *Miller*, 519 F.3d at 889 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 240, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988)) (noting that "[t]he district court received testimony from both sides' experts on the question of materiality").  Whether a document is misleading "may be determined as a matter of law only when reasonable minds could not disagree as to whether the *mix* of information in the document is misleading."  *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995).  Therefore, the determination of "whether a statement is misleading … should be left to the trier of fact."  *Immune Response*, 375 F. Supp. 2d at 1039.

Numerous courts have concluded that the fact one is investing in a Ponzi or pyramid scheme is material to a reasonable investor.  *See, e.g., Omnitrition*, 79 F.3d at 785 (reversing summary judgment of plaintiff's securities claims because "a company which promotes an inherently fraudulent pyramid scheme 'omits to state a material fact' for purposes of § 12(2) when it does not explain that the program is bound to collapse"); *Meckenstock v. International Heritage, Inc.*, No. 5:98-CV-237-BR(2), 1998 U.S. Dist. LEXIS 21042, at *14-15 (E.D.N.C. Dec. 9,

---

[8] *SEC v. Medical Capital Holdings, Inc.*, Central District of California Case No. SACV 09-818 DOC, Docket No. 40.

1998) (addressing motion to dismiss Section 10(b) claim: "[A] reasonable investor could consider the existence of a pyramid scheme and Defendants' failure to comply with SEC requests as material to the decision to invest …. Therefore, whether Defendants' alleged misstatements and omissions were material is a question for the jury to decide."); *SEC v. Better Life Club of Am., Inc.*, 995 F. Supp. 167, 177 (D.D.C. 1998) (holding that "there is no question" that the fact that an investment was a pyramid scheme is material to a reasonable investor); *see also In re Heritage Bond Litig*., No. 02-ML-1475 DT, 2004 WL 1638201, at *4 (C.D. Cal. July 12, 2004) (certifying a class of investors in an alleged Ponzi scheme because "the existence and nature of the material omissions/false and misleading statements in the Official Statements and the question of whether these bonds could have been marketed at all if the truth was known present nearly identical issues"); *Schmidt v. Bassett Furniture Indus*., No. 08-C-1035, 2009 WL 3380354, at *13 (E.D. Wis. Oct. 20, 2009) (finding that plaintiffs' allegation that defendants failed to disclose the existence of a "Ponzi-like scheme" was a material fact for purposes of fraud conspiracy claim); *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 53233 (S.D.N.Y. 2000) (failure to disclose existence of pyramid scheme was a material omission for purposes of the FTC Act).

### 4.   The Purported Disclosures Do Not Insulate Defendants From Liability

Defendant Capital Financial Services' argument that all of the alleged misstatements and omissions were disclosed or the subject of "warnings" in the PPMs cannot be resolved on a motion to dismiss.  Citing no case law, Capital Financial Services makes a fact-intensive argument that the "disclosures" render the misstatements and omissions not misleading as a matter of law.  *See* Cap. Fin. Serv. at 15-20.

None of the identified disclosures or warnings comes close to alerting investors that they are buying into a Ponzi scheme.  "[D]isclosures of risk provide 'no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away.'"  *Credit Suisse First Boston Corp. v. ARM Financial Group,* 2001 WL 300733, at *8 (quoting *In re Prudential Sec. Ltd. Pshps. Litig*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996)).  And "reasonable minds" could disagree about whether the statements and omissions Plaintiffs have identified were misleading in the context of the general disclosures in the PPMs.  For example,

- the statement that an SPC may purchase receivables at "greater or less than fair market value" did not adequately disclose that "non-existent receivables" were purchased;

- that statement that accounts may be sold among Medical Capital "affiliates" did not adequately disclose the transfers of $829 million worth of receivables from older to new SPCs, at least 301 times; and

- the statement that investments may be made in "non-healthcare" assets did not adequately disclose an investment in a pornography advertising enterprise, the purchase of a 118-foot yacht, and a foray into film production.

The assessment of the nature and extent of the cautionary language and whether disclosures are adequate "should be left to the trier of fact."  *Immune Response*, 375 F. Supp. 2d at 1039.  Moreover, "literal truth is not the standard for determining whether statements in a prospectus are misleading."  *Miller,* 519 F.3d at 886 (9th Cir. 2008).  "Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors."  *Id.* (citation omitted).  In addition, "[i]ncomplete statements are …

misleading if they affirmatively create an impression of a state of affairs which differs in a material way from the one that actually exists." *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1034 (C.D. Cal. 2008) (internal citation omitted).

Whether disclosures are adequate is "measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers." *Miller*, 519 F.3d at 886 (citation omitted); *see also Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 2355411, at *5, *7 (N.D. Cal. Aug. 14, 2006) (an "affirmative statement" may constitute a "half truth" and be "materially misleading because of a failure to make additional disclosure"). "At best, Defendants have raised a factual issue as to the adequacy of the disclosures that cannot be resolved on this motion to dismiss." *In re Giant Interactive Group, Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 570, 571 (S.D.N.Y. 2009) (denying motion to dismiss Section 12(a)(2) claim where disclosures "failed to disclose the extent ... and full scope of [the] impact" of certain of defendant's business practices).

## VI. PLAINTIFFS STATE CLAIMS UNDER SECTION 15

Section 15 of the Securities Act imposes liability on "[e]very person who, by or through stock ownership, agency, or otherwise … controls any person liable under sections [11 or 12]." 15 U.S.C. § 77o. To state a control person claim under Section 15, a plaintiff must allege (1) a primary violation of federal securities laws and (2) that the defendant exercised actual power or control over the primary violator. *Howard v. Everex Sys., Inc.*, 228 F. 3d 1057, 1065 (9th Cir. 2000). [9] The Rule 8(a) notice pleading standard governs. *See Batwin v. Occam Networks, Inc.*, No. CV 07-2750 CAS, 2008 WL 2676364, at *24 (C.D. Cal. July 1, 2008);

---

[9] The Ninth Circuit has instructed that "the controlling person analysis is the same" under Section 15 of the Securities Act and Section 20 of the Exchange Act. *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990).

29

*Washington Mutual,* 259 F.R.D. at 504 (citation omitted).  Accordingly, a defendant's control over the primary violator need only be "plausible."  *Schwab,* 257 F.R.D. at 550 (upholding Section 15 claim and stating "[i]t is a plausible inference … that [the defendants] were in a position to exercise power and control"); *Countrywide,* 588 F. Supp. 2d at 1184 (holding that the "§ 15 defendants … are plausible control persons").

The Ninth Circuit follows the SEC's definition of control, which is the "possession, direct or indirect, of the power to direct or cause the direction of the management of the policies of a person, whether through ownership of voting securities, by contract or otherwise."  *Howard*, 228 F.3d at 1065 n.9 (quoting 17 C.F.R § 230.405).  Traditional indicia of control are "having a prior lending relationship, owning stock in the target company, or having a seat on the board." *Batwin*, 2008 WL 2676364, at *25 (citation omitted).  However, resolving control person liability is "an intensely factual question" not appropriate on a motion to dismiss.  *Id.* (quoting *Howard,* 228 F.3d at 1065); *see also Hienergy Tech. Sec. Litig*., No. SACV04-1226 DOC, 2005 WL 3071250, at *13 (C.D. Cal. Oct. 25, 2005) ("The question of who is a control person is tremendously fact intensive").

Plaintiffs sufficiently state a Section 15 claim against Securities America Financial, Ameriprise, Capital Financial Holdings, and National Holdings (the "Control Person Defendants").  Plaintiffs allege the Broker Defendants' primary securities violations (Section 12 of the Securities Act).  ¶¶ 131-151 (Counts I and II).  Plaintiffs also allege the Control Person Defendants' control over the Brokers. Plaintiffs allege that each of the Control Person Defendants "had the power to influence and control" and "actively used this influence and control" over its subsidiary.  ¶ 154.

In addition, Plaintiffs allege that Securities America Financial is a "Direct Owner" of Securities America (owning at least 75% of the stock), while

Ameriprise "wholly owns" Securities America Financial and "direct[s] the management or policies" of Securities America.  The companies also share critical executive officers, including the President and COO.  ¶¶ 24- 25.  For example, Steven F. McWhorter serves as Securities America Financial's Chairman, CEO and President and as Securities America's Chairman and CEO.  James Delwyn Nagengast serves as Securities America Financial's COO, CFO and Treasurer, and Securities America's COO and CFO.  ¶ 25.

Plaintiffs also allege that National Holdings and Capital Financial Holdings wholly-owned and controlled their respective subsidiaries.  ¶¶ 26-29.  Public records, which may be considered on a motion to dismiss, support Plaintiffs' control allegations.  *See, e.g., Metzler Inc GMBH v. Corinthian Colleges, Inc.*, 540 F. 3d 1049, 1064, n. 7 (9th Cir. 2008) (finding that district court properly took judicial notice of publicly available documents and SEC filings).  Capital Financial Holdings' 2009 Form 10-K and a Capital Financial Services report generated by the Financial Industry Regulatory Authority (FINRA) reveal that the two companies share important executive officers and directors:  Bradley P. Wells is Capital Financial Holdings' President, CEO and CFO, and is also a Director and Treasurer of Capital Financial Services; and Vance C. Castleman is a Director of both entities.  *See* Plaintiffs' Request for Judicial Notice, Ex. A at 20; Ex. C at 7-8. The Capital Financial entities also share the same address and phone number.  *Id.*, Ex. A at 1, Ex. C at 3.  Publicly available documents also show that National Holding and National Securities share important executive management—Mark Goldwasser serves as Chairman and CEO of both entities.  *Id.*, Ex. B at 34; Ex. D at 6.

Parent corporations are control persons in regards to their wholly-owned or majority-owned subsidiaries.  *See In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 979 (N.D. Cal. 2009) (parent was subsidiary's "largest shareholder");

*Batwin*, 2008 WL 2676364, at *26 ("allegations that the VC defendants' majority stake in Occam enabled them to control decisions"); *In re Musicmaker.com Sec. Litig.*, No. CV00-2018 CAS, 2001 WL 34062431, at *17 (C.D. Cal. June 4, 2001) ("at the time of the IPO, Virgin held a majority interest in Musicmaker" and even after the IPO, when Virgin held less than 40% of Musicmaker, its "stake in Musicmaker was sufficient to make it a controlling person"); *Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.*, 735 F. Supp. 587, 591 (S.D.N.Y. 1990) ("Plaintiffs' allegation that defendants were sole shareholders of SBCY clearly meets this standard").

In *Schwab,* for example, the court upheld a control person claim in the parent/subsidiary context on a motion to dismiss. The plaintiffs asserted a Section 15 claim against certain Schwab "parent companies" of a fund. The court rejected the defendant's assertion that the parent companies were "completely separate" from the fund, calling it a "factual rebuttal inappropriate for a motion to dismiss." 257 F.R.D. at 550. The court stated that while the defendants "may ultimately establish" their separateness, that conclusion was not the only "inference drawn from the allegations in the complaint." *Id.* The court held that Section 15 claims should be sustained where the plaintiffs provide "fair notice" of the claims to the defendants and allege an "inference" of control (even if other inferences are possible). *Id.*

In *Siemers*, the plaintiff asserted a Section 15 claim against the parent bank based on acts of the bank's indirect subsidiaries. 2006 WL 2355411, at *13. The court summarized:

> The complaint alleges that Wells Fargo & Co. "is the ultimate parent of all Defendants." H.D. Vest is alleged to be "an affiliated non-bank subsidiary of Wells Fargo & Company." Wells Fargo Funds Management is an "indirect, wholly-owned

subsidiary of Wells Fargo & Company."  Wells Fargo & Co. is
alleged to be a control-person of the other defendants by virtue
of its position of operational control, operational management,
ownership and/or "direct and supervisorial involvement" in their
operations.

*Id.*  The court upheld the control person claim on the grounds that these allegations
of ownership were sufficient under Rule 8.  *Id.* at *14.

Plaintiffs' allegations that the Control Person Defendants are parent
companies that either wholly-own or have a majority ownership of their
subsidiaries are sufficient to state a Section 15 claim under Rule 8.  The Control
Person Defendants cite no case law holding otherwise.

Instead, Capital Financial Holdings asks this Court to apply a standard that
the Ninth Circuit has rejected.  *See* Cap. Fin. Hold. at 7-8.  The Ninth Circuit does
not require that control persons be "culpable participants" in the underlying
violations.  *See Hollinger*, 914 F.2d at 1575 ("The statute does not place such a
burden on the plaintiff"); *Howard*, 228 F.3d at 1065 ("Plaintiff need not show that
the defendant was a culpable participant"); *see also Hienergy*, 2005 WL 3071250,
at *12 ("To plead under Section 20(a), the plaintiff need not allege the controlling
person's scienter or that they were a culpable participant in the alleged
wrongdoing.").  It is the parent company's affirmative burden to demonstrate good
faith and a failure to directly or indirectly induce the violations.  *See, e.g.,
Hollinger*, 914 F.2d at 1575; *Hienergy*, 2005 WL 3071250, at *12 (defendants may
"rebut liability . . . if they can show they acted in good faith and did not induce the
act or acts constituting the violation.").

The cases cited by Securities America Financial and Ameriprise are also
inapposite.  The court in *In re Digital Island Sec. Litig.,* 223 F. Supp. 2d 546, 560-
61 (D. Del. 2002), applied heightened particularity standards not followed in the

Ninth Circuit on control person claims. *In re Downey Sec. Litig.*, No. CV-08-3261-JFW, 2009 WL 2767670, at *15(C.D. Cal. Aug. 21, 2009), concerned an attempt to implicate individual officers and directors as control persons. *Fouad v. Isilon Sys., Inc.,* No C07-1764 MJP, 2008 WL 5412397, at *12-13 (W.D. Wash. Dec. 29, 2008), concerned allegations of collective ownership by multiple venture capital firms.

None of Defendants' cases supports their motions to dismiss to Plaintiffs' Section 15 claims, and their motions should therefore be denied.

## VII.   CONCLUSION

Plaintiffs request that the Court deny each Defendant's motion to dismiss.

Dated:  March 31, 2010                    Respectfully submitted,


**GIRARD GIBBS LLP**


By:   _/s/ Daniel C. Girard_

Daniel C. Girard
Jonathan K. Levine
Amanda M. Steiner
Todd I. Espinosa
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800

Plaintiffs' Co-Lead Counsel

**ZWERLING, SCHACHTER & ZWERLING, LLP**

Robin F. Zwerling
Stephen L. Brodsky
Stephanie E. Kirwan
41 Madison Avenue
New York, New York 10010
Telephone:  (212) 223-3900
Facsimile:   (212) 371-5969

- and -

Dan Drachler
1904 Third Avenue, Suite 1030
Seattle, Washington 98101
Telephone: (206) 223-2053

Plaintiffs' Co-Lead Counsel

**KOHRMAN JACKSON &
KRANTZ, PLL**

Ari H. Jaffe
One Cleveland Center, 20th Floor
1375 East Ninth Street
Cleveland, OH  44114
Telephone:  (216) 696-8700
Facsimile:   (216) 621-6536

Plaintiffs' Counsel

35