BRUCE M. BETTIGOLE (Admitted *Pro Hac Vice*)
bruce.bettigole@sutherland.com
NICHOLAS T. CHRISTAKOS (Admitted *Pro Hac Vice*)
nicholas.christakos@sutherland.com
PETER LIGH (Admitted *Pro Hac Vice*)
peter.ligh@sutherland.com
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004-2415
Telephone:  (202) 383-0100
Facsimile:  (202) 637-3593

MIKE MARGOLIS, ESQ. SBN: 087785
margolis@winlaw.com
TIMOTHY J. MARTIN, ESQ. SBN: 150304
tmartin@winlaw.com
MARGOLIS & TISMAN LLP
444 South Flower Street, Suite 2300
Los Angeles, California 90071
Telephone: (213) 683-0300
Facsimile: (213) 683-0303

Attorneys for Defendant
SECURITIES AMERICA, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JANA MCCOY, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>CULLUM & BURKS SECURITIES, INC., et al.,<br><br>Defendants. | Case No. SACV 09-1084 DOC(RNBx)<br><br>**DEFENDANT SECURITIES AMERICA, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| This document relates to:<br>No. 09-SACV-1084 DOC (RNBx)<br>No. 09-SACV-1295 DOC (RNBx)<br>No. 09-SACV-1340 DOC (MLG)<br>No. 09-SACV-8482 DOC (RNBx) | **Date:      May 24, 2010**<br>**Time:      8:30 a.m.**<br>**Place:     Ctrm 9D** |

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW
444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN SUPPORT
OF ITS MOTION TO DISMISS, ETC.

♲
Printed on Recycled Paper

# <u>TABLE OF CONTENTS</u>

**Page**

1.   RULE 9(b) DOES APPLY BECAUSE PLAINTIFFS ATTEMPT TO
     ALLEGE A UNIFIED COURSE OF FRAUDULENT CONDUCT ................1

    A.   The Allegation of a Continuous Fraudulent Scheme by the Medical
          Capital Entities, With the Alleged Involvement of the Broker
          Defendants, Is Unmistakable ....................................................................1

    B.   An Alleged Fraudulent Scheme of This Comprehensive Nature,
          Perpetrated By Unrelated Non-Parties With The Alleged
          Involvement of the Broker Defendants, Triggers Strict Application
          of Rule 9(b)… ..........................................................................................4

2.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE A COGNIZABLE
     CLAIM UNDER SECTION 12(a)(1) OF THE ACT (COUNT I) ...................8

    A.   There Is No Applicable Discovery Rule or Other Equitable Tolling
          Doctrine To Prevent Dismissal of the Claim as Time Barred ................8

    B.   Plaintiffs Fail to Demonstrate That The Claim Has Been Properly
          Alleged…… ..............................................................................................9

3.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE A COGNIZABLE
     CLAIM UNDER SECTION 12(a)(2) OF THE ACT (COUNT II).................12

    A.   Plaintiffs Fail to Demonstrate How They Pled Either the
          Underlying Fraud or Securities America's Alleged Role In It
          With Particularity ....................................................................................12

    B.   Plaintiffs Fail To Demonstrate That The Alleged
          Misrepresentations Or Omissions in the PPMs Were False
          or Misleading When Made.......................................................................15

4.   CONCLUSION……… ....................................................................................17

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

**DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN
SUPPORT OF ITS MOTION TO DISMISS, ETC.**

Printed on Recycled Paper

# <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

**Cases**

*Ashcroft v. Iqbal*
___ U.S. ___
129 S. Ct. 1937
173 L. Ed. 2d 868 (2009) .......................................................................................11

*Brown v. Earthboard Sports USA, Inc.*
481 F.3d 901 (6th Cir. 2007).................................................................................12

*Erickson v. Kiddie*
No. C-85-4798-MHP, 1986 WL 544 (N.D. Cal. Feb. 24, 1986) .............................9

*Eshelman v. Orthoclear Holdings, Inc.*
No. C-07-1429-JSW, 2009 WL 506864 (N.D. Cal. Feb. 27, 2009) ...............3, 9, 10

*Herrington v. Household Int'l., Inc.*
No. 02-C-8257, 2004 WL 719355 (N.D. Ill. Mar. 31, 2004)...................................5

*In re Daou Systems, Inc. Securities Litigation*
411 F.3d 1006 (9th Cir. 2005)....................................................................4, 5, 14

*In re IKON Office Solutions, Inc. Sec. Litig.*
86 F. Supp. 2d 481 (E.D. Pa. 2000) ........................................................................6

*In re Leadis Technology, Inc. Securities Litigation*
No. C-05-00882 CRB, 2006 WL 496039 (N.D. Cal. Mar. 1, 2006) ........................6

*In re Rexplore, Inc. Secs. Litig.*
671 F. Supp. 679 (N.D. Cal. 1987) .........................................................................9

*In re Stac Elecs. Securities Litigation*
89 F.3d 1399 (9th Cir. 1996)
*cert. denied*, 520 U.S. 1103 (1997) ............................................................5, 11, 16

*In re Vonage Initial Public Offering (IPO) Securities Litigation*
No. 07-177 (FLW), 2009 WL 936872 (D.N.J. Apr. 6, 2009)...................................7

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW
444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

ii

Printed on Recycled Paper

*Ladman Partners, Inc. v. Globalstar, Inc.*
  No. 07 Civ. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30 2008).................. 8

*Lewis v. Fresne*
  252 F.3d 352 (5th Cir. 2001) ....................................................................... 12

*Lubin v. Sybedon Corp.*
  688 F. Supp. 1425 (S.D. Cal. 1988) ............................................................. 9

*Maher v. Durango Metals, Inc.*
  144 F.3d 1302 (10th Cir. 1998) .................................................................... 9

*Meadows v. Pac. Inland Sec. Corp.*
  36 F. Supp. 2d 1240 (S.D. Cal. 1999) .......................................................... 9

*Mora v. Harley-Davidson Credit Corp.*
  No. 1:08-cv-01453 OWW GSA, 2009 WL 1953433 (E.D. Cal. July 7, 2009) ....... 11

*Safron Capital Corp. v. Leadis Tech., Inc.*
  No. 06-15623, 2008 WL 1776407 (9th Cir. Apr. 18, 2008)
  *cert. dismissed*, 129 S. Ct. 1545 (2009) ...................................................... 6

*SEC v. Med. Capital Holdings, Inc.*
  No. SACV 09-0818 DOC (RNBx), 2010 WL 809406
  (C.D. Cal. Feb. 24, 2010) ........................................................................... 13

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003)..................................................................... 4

*Wagner v. First Horizon Pharm. Corp.*
  464 F.3d 1273 (11th Cir. 2006).................................................................... 5

*Webster v. Omnitrition Int'l, Inc.*
  79 F.3d 776 (9th Cir.)
  *cert. denied*, 519 U.S. 865 (1996) ........................................................... 8, 9

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

**DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN
SUPPORT OF ITS MOTION TO DISMISS, ETC.**

Printed on Recycled Paper

M2Dismiss(SAI)_100524_Reply

Defendant Securities America, Inc. ("Securities America") submits this Reply Memorandum of Points and Authorities in Support of its Motion to Dismiss the Consolidated Amended Class Action Complaint ("Complaint" or "Compl.").

Plaintiffs' opposition memorandum ("Opposition" or "Opp.") graphically demonstrates the need for strict application of Rule 9(b) to the allegations of the Complaint.  Plaintiffs effectively concede the nature of the underlying fraud claim against the non-party Medical Capital entities as a predicate for their claims against Securities America (and the other Defendants), and thereby seek to force Securities America to defend itself by responding to conclusory fraud claims against unrelated non-parties.  This is precisely the sort of result that Rule 9(b) is intended to prevent. Regardless of the labels that Plaintiffs attach to their claims, Plaintiffs' attempt to hold Securities America (and the other Defendants) liable for an alleged comprehensive and continuous scheme to defraud perpetrated by others must satisfy the basic particularity requirements of Rule 9(b).  Plaintiffs fail to do so.  Indeed, Plaintiffs fail even to satisfy the requirements of Rule 8 under the reformulated pleading standard articulated by the Supreme Court.  For these and many other reasons, set forth in Securities America's opening memorandum and amplified below, all claims against Securities America should be dismissed.

**1.     RULE 9(b) DOES APPLY BECAUSE PLAINTIFFS ATTEMPT TO ALLEGE A UNIFIED COURSE OF FRAUDULENT CONDUCT**

**A.     The Allegation of a Continuous Fraudulent Scheme by the Medical Capital Entities, With the Alleged Involvement of the Broker Defendants, Is Unmistakable**

Securities America reviewed in some detail in its opening memorandum ("opening memorandum" or "SA Mem.") the many allegations through which Plaintiffs have effectively alleged a six-year scheme to defraud investors for personal and improper purposes, through a series of purported misrepresentations and omissions in "substantially similar" Private Placement Memoranda ("PPM") issued

1

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN
SUPPORT OF ITS MOTION TO DISMISS, ETC.

Printed on Recycled Paper

by the Medical Capital entities.  (SA Mem. 13-14.)  Rather than deny the allegation of an underlying fraudulent scheme by the Medical Capital entities, Plaintiffs effectively concede such a scheme in the opening pages of the Opposition.  Plaintiffs expressly state that the "action arises out of the *collapse of an investment scheme*" through which Medical Capital "raised approximately $2.2 billion from over 20,000 investors around the United States" (Opp. 1, emphasis added), from which "Medical Capital and its executives misappropriated more than $300 million of investor funds through the improper payment of purported administrative fees" (Opp. 9).

Plaintiffs further concede that the gravamen of this case is fraud through their superficial attempt to distinguish their claims against the Broker Defendants from the underlying fraudulent conduct of the Medical Capital entities:

> The Broker Defendants fundamentally mischaracterize Plaintiffs' claims by arguing that the Securities Act claims "sound in fraud," on the grounds that they are based on the "unified course of fraudulent conduct perpetrated by the Medical Capital entities."  Plaintiffs assert no claims against the "Medical Capital entities."  They are not even parties to this case.  Plaintiffs do not allege that any Defendants participated in *any of the fraudulent conduct that the Medical Capital entities may have perpetrated*.  And Plaintiffs assert no fraud-based claims against Defendants.

(Opp. 10, citations omitted, emphasis added.)  If there were any remaining doubt that the gravamen of the case is fraud, such doubt would readily be dispelled by Plaintiffs' allegation of the "improper and/or other wrongful practices that Medical Capital committed" that are allegedly set forth in the court-appointed Receiver's First Report (Compl. ¶ 63), as well as by Plaintiffs' reference to allegations in the SEC complaint

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN
SUPPORT OF ITS MOTION TO DISMISS, ETC.

that "Medical Capital misappropriated and wrongfully used investor funds to pay MCC [its affiliated management company] administrative fees" (*Id.* ¶ 107).

Plaintiffs' attempt to distinguish their claims against the Broker Defendants from the underlying fraud allegedly perpetrated by Medical Capital does not withstand even minimum scrutiny of the Complaint.  The Complaint plainly alleges that "at least 60 brokerage firms" sold "overlapping integrated unregistered offerings of the Notes" to "more than 20,000 investors" on a nationwide basis by using numerous "substantially similar" PPMs containing material misrepresentations or omitting material facts.  (*Id.* ¶¶ 4, 8, 66, 75, 83, 89-121.)  Indeed, despite purporting to "specifically disclaim any allegations of fraud in connection with these Securities Act claims" (*Id.* ¶ 2), Plaintiffs expressly allege that four of the six Medical Capital offerings (MP III through MP VI) began to default on their obligations to make payments of interest and/or principal to Noteholders in August 2008, and that "[t]he Broker Defendants and other broker-dealers continued to offer and sell the Notes and represent that Medical Capital had never defaulted on any of the Notes" (*Id.* ¶¶ 54-55).  Plaintiffs thus imply, if not allege, some measure of knowing and purposeful conduct by all Broker Defendants in allegedly making untrue statements in the continued sale of the Notes, but fail to provide any detail regarding such alleged conduct.  *See Eshelman v. Orthoclear Holdings, Inc.*, No. C-07-1429-JSW, 2009 WL 506864, at *12 (N.D. Cal. Feb. 27, 2009) ("Rule 9(b) 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'") (citation omitted).

///

///

///

///

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW
444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

3

Printed on Recycled Paper

**B.     An Alleged Fraudulent Scheme of This Comprehensive Nature, Perpetrated By Unrelated Non-Parties With The Alleged Involvement of the Broker Defendants, Triggers Strict Application of Rule 9(b)**

Plaintiffs would obviously like to enjoy the perceived benefits of casting the Medical Capital enterprise as a colossal fraud scheme, perpetrated with the alleged participation of the Broker Defendants, while avoiding the corresponding burden of pleading the details of the fraud, and Securities America's alleged involvement in it, with particularity.  Plaintiffs' denial of any attempt to allege fraud against the Broker Defendants rings hollow in light of the allegations discussed above and the clear attempt to taint Securities America and the other Broker Defendants by associating them with the underlying Medical Capital scheme.   The case law is clear in this circuit and beyond that such pleading is subject to Rule 9(b).

Nowhere do Plaintiffs deny that Rule 9(b) applies to an alleged unified course of fraudulent conduct; to the contrary, Plaintiffs concede that, under *In re Daou Systems, Inc. Securities Litigation*, 411 F.3d 1006, 1027 (9th Cir. 2005), and other authorities, "non-fraud-based claims [are held] to the higher Rule 9(b) standard if they 'sound in fraud,'" and that a claim sounds in fraud "if a plaintiff chooses to allege 'that the defendant has engaged in fraudulent conduct,' or alleges 'a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim.'"  (Opp. 10, quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) and citing *In re Daou*, 411 F.3d at 1027.)

As discussed in Securities America's opening memorandum and above, the claim against Securities America and the other Broker Defendants arises from the "unified course of fraudulent conduct" allegedly perpetrated by the Medical Capital entities and relies "entirely on that course of conduct" as the basis of the claim, thereby triggering a requirement that "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."  *In re Daou*, 411 F.3d at 1027

4

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

Printed on Recycled Paper

(citation omitted).  Thus, the claim against the Broker Defendants rests entirely on their alleged sale of Notes to Plaintiffs using PPMs that misrepresented or failed to disclose the alleged underlying fraudulent conduct of the Med Cap entities.  (Compl. ¶¶ 81-83, 89-111, 143-48.)  If the Medical Capital entities had not engaged in the fraudulent conduct alleged in the Complaint, there would be no basis on which to allege that the PPMs misrepresented or omitted material facts regarding such conduct, and in turn there would be no Securities Act of 1933 ("Securities Act") claim against the Broker Defendants.

Although it is clear that Plaintiffs would not have a Securities Act claim in the absence of the alleged fraudulent scheme of the Medical Capital entities, it should nevertheless be noted that Rule 9(b) applies regardless of whether Plaintiffs could have alleged their claims without alleging fraud; once they chose to reap whatever benefits they believe follow from basing their claims on a massive scheme to defraud, Plaintiffs must accept the corresponding pleading burdens of Rule 9(b).  *In re Daou*, 411 F.3d at 1027; *see also In re Stac Elecs. Securities Litigation*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996), *cert. denied*, 520 U.S. 1103 (1997) (Rule 9(b) applies to a non-fraud claim under Section 11 of the Securities Act even where the complaint affirmatively disclaims reliance on fraud, where "the gravamen of the complaint is plainly fraud"); *Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1278 (11th Cir. 2006) ("The purpose of [Rule 9] is to protect a defendant's good will and reputation when that defendant's conduct is alleged to have been fraudulent."); *Herrington v. Household Int'l., Inc.,* No. 02-C-8257, 2004 WL 719355, at *6 (N.D. Ill. Mar. 31, 2004) (complaint alleging knowing misrepresentation triggered

///
///
///
///
///

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN
SUPPORT OF ITS MOTION TO DISMISS, ETC.

Printed on Recycled Paper

Rule 9(b) despite negligence claim); *In re IKON Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481, 488-89 (E.D. Pa. 2000) (same).[1]

Relying on the questionable premise that they have not alleged fraud against the Broker Defendants, Plaintiffs argue that Rule 9(b) does not apply "where plaintiffs do not allege that the defendants engaged in fraudulent activity." (Opp. 11, citation omitted.)  Assuming *arguendo* that Plaintiffs have correctly characterized their allegations against the Broker Defendants, they are incorrect where, as here, a pervasive underlying fraud scheme has been alleged as the principal foundation for claims against the Broker Defendants.

Indeed, the case for applying Rule 9(b) is even more compelling where, as here, a defendant must defend itself by demonstrating that the PPMs did not contain misrepresentations or fail to disclose material facts regarding the alleged underlying fraudulent conduct of non-parties over whom the defendant has no relationship or control.  Securities America and the other Broker Defendants have no relationship with, or control over, the Medical Capital entities or any access to the facts regarding their alleged conduct.  Yet, Plaintiffs seek to hold the Broker Defendants liable for disseminating PPMs containing misrepresentations and omissions regarding such conduct.  If Rule 9(b) is necessary to insure that defendants are given proper notice of claims against them based on their own alleged fraud, the application of Rule 9(b) is absolutely vital to insure that defendants facing potentially huge liability based on the fraudulent conduct of others fully understand the nature of the alleged fraud.

---

[1]  Plaintiffs correctly note that one case cited by Securities America in its opening memorandum, *In re Leadis Technology, Inc. Securities Litigation*, No. C-05-00882 CRB, 2006 WL 496039 (N.D. Cal. Mar. 1, 2006), was reversed by the Ninth Circuit. *See Safron Capital Corp. v. Leadis Tech., Inc.*, No. 06-15623, 2008 WL 1776407, at *2 (9th Cir. Apr. 18, 2008), *cert. dismissed*, 129 S. Ct. 1545 (2009).   Securities America inadvertently failed to note the reversal of the district court's decision and apologizes for this error.

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

6

Printed on Recycled Paper

Plaintiffs also suggest that Rule 9(b) does not apply to a non-fraud claim unless there is an accompanying fraud claim simultaneously alleged.   (Opp. 2, 11-13.) Plaintiffs are wrong.   Even if the Complaint does not contain a separate cause of action for fraud, the Rule 9(b) pleading standard would still apply where the gravamen of the Complaint is fraud.   Plaintiffs fail to cite any authority contrary to that proposition, and instead base their argument on the observation that Defendants' cases involved both fraud and non-fraud claims.

As a threshold matter, the mere fact that many cases applying Rule 9(b) to non-fraud claims also involve the assertion of fraud claims does not lessen the reach of Rule 9(b).   In any event, there are indeed numerous authorities applying Rule 9(b) to non-fraud claims that are not accompanied by fraud claims, where, again, the gravamen of the action sounds in fraud.   In *In re Vonage Initial Public Offering (IPO) Securities Litigation*, No. 07-177 (FLW), 2009 WL 936872 (D.N.J. Apr. 6, 2009), for example, plaintiffs alleging non-fraud claims under the federal securities laws (coincidentally represented by one of the instant Plaintiffs' firms) similarly argued that the court should not apply Rule 9(b) to non-fraud claims that are not accompanied by fraud claims.   The court categorically rejected that argument with the following analysis:

> During   oral   argument,   Lead   Plaintiff   argued, unconvincingly,   that   the   securities   cases   upon   which Defendants rely with respect to the standard of pleading are cases that have both a section 10(b) claim, as well as a section 11 or 12 claim.   Lead Plaintiff argued that because this case is solely brought under sections 11 and 12, the Court should not infer any fraud.   The Court disagrees.   The Court's inquiry here focuses on the language of the allegations, and not on whether a separate section 10(b) claim has been pled.   Indeed, the Third Circuit has clearly

7

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES,
CALIFORNIA 90071

> held that the determination of the pleading standard
> pursuant to Rule 9(b) is predicated on allegations of fraud
> regardless of the type of the claims pled.

2009 WL 936872, at *6 n.4 (citations omitted).  *See also Ladman Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976 (LAP), 2008 WL 4449280, at * 11 (S.D.N.Y. Sept. 30 2008) ("[A] complaint may sound in fraud even where, as here, no fraud claims . . . are asserted. . . .  The ultimate question is whether, at its core, the complaint is predicated on allegations of fraudulent conduct.") (citation omitted).

## 2.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE A COGNIZABLE CLAIM UNDER SECTION 12(a)(1) OF THE ACT (COUNT I)

Securities America demonstrated in its opening memorandum that Count I should be dismissed as untimely under the applicable one-year statute of limitations, and in the alternative because the claim was not properly pled.  Plaintiffs fail to overcome these grounds of dismissal.

### A.   There Is No Applicable Discovery Rule or Other Equitable Tolling Doctrine To Prevent Dismissal of the Claim as Time Barred

Securities America noted in its opening memorandum that the two Plaintiffs allegedly purchasing Medical Capital Notes through Securities America did so more than one year prior to filing their suit, and therefore are time-barred from asserting a Section 12(a)(1) claim.  (SA Mem. 8.)  Plaintiffs cite *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 788 (9th Cir.), *cert. denied*, 519 U.S. 865 (1996), for the proposition that claims under both Sections 12(a)(1) and 12(a)(2) may be brought within one year of discovery.  (Opp. 19.)  The Ninth Circuit in *Webster*, however, does not cite any authority for that proposition and fails to address Section 13 of the Securities Act, which indicates that the discovery rule applies to Section 12(a)(2) but not Section 12(a)(1).  The suggestion in *Webster* that Section 12(a)(1) claims are subject to a discovery rule has never subsequently been cited by the Ninth Circuit or any other court and appears to have been made in error.

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

Printed on Recycled Paper

M2Dismiss(SAI)_100524_Reply

District court cases in California before and after *Webster* have correctly recognized that Section 13 precludes application of the discovery rule to claims under Section 12(a)(1).  "[T]he statutory language compels the conclusion that the equitable tolling doctrine was not intended to apply to section 12(1) claims.   The statute specifically provides for accrual upon discovery for section 12(2) claims, but does not include similar language as to section 12(1) claims.  A reasonable construction of this language is that Congress intended the one year limitations period of section 12(1) claims to be absolute."  *Meadows v. Pac. Inland Sec. Corp.*, 36 F. Supp. 2d 1240, 1250-51 (S.D. Cal. 1999); *accord Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1451 (S.D. Cal. 1988); *In re Rexplore, Inc. Secs. Litig.*, 671 F. Supp. 679, 687 (N.D. Cal. 1987); *Erickson v. Kiddie*, No. C-85-4798-MHP, 1986 WL 544, at *4-5 (N.D. Cal. Feb. 24, 1986).[2]

Plaintiffs' claim under Count I that unregistered securities were improperly sold to the public must therefore be dismissed with prejudice as untimely.

### B.     Plaintiffs Fail to Demonstrate That The Claim Has Been Properly Alleged

As noted by Securities America in its opening memorandum, a plaintiff must demonstrate that his/her own purchase violated the registration or qualification requirements under Section 5 of the Securities Act, "either because the plaintiff was not an accredited investor or because the company was not entitled to an exemption *at the time of the plaintiff's investment*."   (SA Mem. 9, quoting *Eshelman v. Orthoclear Holdings, Inc.*, No. C-07-1429-JSW, 2009 WL 506864, at *11 (N.D. Cal.

---

[2]   Prior to 1995, the claim asserted by Plaintiffs would have been referred to as a claim arising under Section 12(1) of the Securities Act.  In 1995, Congress added another subsection to Section 12.  Therefore, Section 12(1) became Section 12(a)(1). *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1303 n.1 (10th Cir. 1998).  Some post-1995 opinions continue to refer to Section 12(1).

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

9

Printed on Recycled Paper

M2Dismiss(SAI)_100524_Reply

Feb. 27, 2009) (citation omitted, emphasis added).)  Plaintiffs respond by pointing to the purely conclusory allegation that a violation of Section 5 of the Securities Act had occurred prior to the time of each individual Plaintiff's purchase of the Notes.  (Opp. 18.)  Plaintiffs also point to their allegation that the Notes were sold publicly by the time of the first offering at issue in the case.  *Id.*  Plaintiffs' conclusory allegations are belied by the SEC complaint against the Medical Capital entities on which they so heavily rely, and are insufficient to meet their pleading burden even under Rule 8.

At several points in their Complaint and Opposition, Plaintiffs rely heavily on the fact and content of the SEC complaint against the Medical Capital entities in purporting to state their claim against Securities America and the other Defendants. (*See* Compl. ¶¶ 42, 91, 105, 107-08, 112; Opp. 8-9, 23-24.)  It should be noted, however, that the SEC's complaint against Medical Capital Holdings, Inc. and the other Medical Capital entities and controlling individuals, filed in this Court in Case No. SACV 09-0818, on July 16, 2009, expressly alleges in paragraph 17 that "[t]he SPCs sold the notes through registered broker-dealers *to only accredited investors under Rule 506 of Regulation D.*"  (SEC complaint ¶ 17, Doc. No. 1, emphasis added.)[3]  Thus, even the SEC does not take the position that there has been a violation of Section 12(a)(1) of the Securities Act; to the contrary, the SEC has expressly alleged that the offerings were sold through registered broker-dealers "to only accredited investors" under Regulation D which sets forth a recognized exemption from SEC registration requirements.

Since Plaintiffs purport to rely on the SEC complaint as providing the basis for their claims against the Broker Defendants, they are also subject to those allegations

---

[3]   In Case No. 8:09-cv-0818, the SEC has subsequently filed a First Amended Complaint and a Second Amended Complaint, each of which repeats this allegation. (*See* SEC First Amended Complaint, Doc. No. 111 at ¶ 21; SEC Second Amended Complaint, Doc. No. 185 at ¶ 21.)

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES,
CALIFORNIA 90071

**DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN
SUPPORT OF ITS MOTION TO DISMISS, ETC.**

Printed on Recycled Paper

M2Dismiss(SAI)_100524_Reply

in the SEC complaint that are contrary to their allegations in the instant Complaint. Count I should therefore be dismissed because Plaintiffs' referenced document, on which they rely, belies the allegation that securities were sold to more than thirty-five unaccredited investors. *See In re Stac*, 89 F.3d at 1405 n.4 (documents alleged in a complaint may be considered in a Rule 12(b)(6) motion); *Mora v. Harley-Davidson Credit Corp.*, No. 1:08-cv-01453 OWW GSA, 2009 WL 1953433, at *2 (E.D. Cal. July 7, 2009) (court may consider documents relied upon but not attached to the complaint, and "need not accept as true allegations that contradict facts which may be judicially noticed" from such documents) (citation omitted).   At a minimum, the inconsistency between their own Complaint and the SEC filing on which they rely mandates that Plaintiffs allege specific facts, rather than conclusory speculation, to support their claim under Count I.

The only other allegations even potentially relevant to the issue consist of conclusory allegations that certain unspecified Broker Defendants generally solicited attendees and conducted Medical Capital presentations in a variety of states, accompanied by pure speculation that more than thirty-five of the resulting investors from such presentations were not "accredited investors." (Compl. ¶¶ 69-73, 76, *see* SA Mem. 9.)   Plaintiffs fail to allege that they themselves are not "accredited investors" or to identify even one person, let alone thirty-five, who is not an "accredited investor."   Accordingly, Plaintiffs' allegations, which are belied by the SEC's allegations, are not "facts" that give rise to any plausible inference of a violation of Section 5 of the Securities Act prior to any individual Plaintiff's purchase through Securities America. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (to survive dismissal, a complaint must contain sufficient factual matter to state a claim that is "plausible" on its face).

///

///

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES,
CALIFORNIA 90071

11

DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN
SUPPORT OF ITS MOTION TO DISMISS, ETC.

Printed on Recycled Paper

M2Dismiss(SAI)_100524_Reply

### 3.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE A COGNIZABLE CLAIM UNDER SECTION 12(a)(2) OF THE ACT (COUNT II)

Count II, asserting a claim under Section 12(a)(2), suffers from inherent pleading deficiencies, and Plaintiffs' Opposition fails to adequately address those deficiencies.  Count II should be dismissed.[4]

#### A.   Plaintiffs Fail to Demonstrate How They Pled Either the Underlying Fraud or Securities America's Alleged Role In It With Particularity

Arguing that they need not "specify the 'time' and 'place' of the alleged misrepresentations" (Opp. 21), Plaintiffs concede that they focused only on "Rule 8's notice pleading standards" and made little, if any, effort to plead their claim in accordance with Rule 9(b) (*id.* 25).   Accordingly, it comes as no surprise that Plaintiffs fail to demonstrate how they pled either the underlying fraud or Securities America's alleged role in that fraud with particularity.

As to the alleged fraudulent scheme of the Medical Capital entities, Plaintiffs argue first that this Court has already held that the SEC had sufficiently alleged false and misleading statements in the PPM for one of the six offerings at issue (MP VI)

---

[4]   Securities America notes that co-Defendant Capital Financial Services correctly argued in its motion to dismiss that a claim under Section 12(a)(2) of the Securities Act cannot be asserted with respect to a private placement, since Section 12 applies only to public offerings.  *See, e.g., Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 916 (6th Cir. 2007) (Section 12(a)(2) of the Securities Act "is inapplicable to private offerings") (citation omitted); *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) ("Section 12 of the 1933 Act does not apply to private transactions.").  As is clear from Plaintiffs' Opposition, Plaintiffs' allegation of a claim under Section 12(a)(1) is intended to circumvent the foregoing limitation on their ability to bring a Section 12(a)(2) claim -- they thus argue, through their Section 12(a)(1) claim, that the Medical Capital offerings should be treated as a non-exempt public offering that is subject to Section 12(a)(2).  (*See* Opp. 22-23.)  Accordingly, should the Court at any stage of this litigation rule in favor of Defendants with respect to Plaintiffs' claim under Section 12(a)(1), Plaintiffs' claim under Section 12(a)(2) necessarily falls.

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES,
CALIFORNIA 90071

**DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN SUPPORT OF ITS MOTION TO DISMISS, ETC.**

Printed on Recycled Paper

and that they have identified "largely the same misstatements and omissions that this Court has already found to be actionable" (Opp. 23-24).   As a threshold matter, Plaintiffs fail to note, but this Court is certainly aware, that the Court dismissed claims in the SEC's First Amended Complaint against Defendants Sidney Field and Joseph Lampariello, the alleged principals of the Medical Capital enterprise, for failure to plead aspects of the alleged fraud with the requisite level of particularity. *SEC v. Med. Capital Holdings, Inc.*, No. SACV 09-0818 DOC (RNBx), 2010 WL 809406, at *3 (C.D. Cal. Feb. 24, 2010).   Thus, even the SEC's First Amended Complaint did not satisfy the applicable particularity standard in all respects.

More fundamentally, Plaintiffs' complete reliance on the SEC's investigation and initial complaint, coupled with their failure to distinguish between the various Broker Defendants with respect to the substantive allegations of wrongdoing, exposes the fundamental flaw in their Complaint:   it is impossible to discern what "facts" render which "representation" or alleged "omission" in the PPMs false, and precisely when any such representation or omission became false or misleading.   Like the SEC, Plaintiffs focus solely on the PPM for MP VI.   They paraphrase the SEC complaint in alleging that Medical Capital "misappropriated and wrongfully used investor funds to pay" administrative fees to Medical Capital entities, and they then cite the precise figures relied on by the SEC in its complaint.   (*Compare* Compl. ¶¶ 107-08 *with* SEC complaint ¶¶ 24-25.)   In the SEC complaint, however, the SEC aggregates the total amounts paid in administrative fees as of February 28 and June 19, 2009, with no corresponding detail or allegations regarding whether or to what extent excessive administrative fees were paid at earlier points in time.

According to the Complaint, Plaintiff Henry Mitchell purchased MP V (not MP VI) Notes from Securities America in December 2007 and July 2008, while Plaintiffs Alvin and June Sabroth purchased MP IV (not MP VI) Notes from Securities America in July 2007.   (Compl. ¶¶ 16, 18.)   There is thus no basis in Plaintiffs' Complaint, or in the SEC complaint on which they place significant reliance, for

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

**DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN SUPPORT OF ITS MOTION TO DISMISS, ETC.**

Printed on Recycled Paper

M2Dismiss(SAI)_100524_Reply

inferring that excessive amounts had been paid to Medical Capital entities in administrative fees at the time these Plaintiffs purchased their Notes from Securities America, allegedly relying on misleading statements or omission in the PPMs for MP V and MP IV, respectively, neither of which is discussed in any detail in the Complaint.

The foregoing is but one example of the inherent flaw arising from Plaintiffs' group pleading against all Defendants, relying largely on a complaint in a parallel proceeding that itself is limited to only one of the six offerings alleged to be at issue. Such pleading cannot possibly satisfy Rule 9(b), and similarly does not satisfy even Rule 8, as it is impossible to discern from the Complaint that Plaintiffs have alleged a claim that is "plausible" against these Defendants.

Plaintiffs' pleading deficiencies are even more glaring in the context of their failure to allege with particularity the Broker Defendants' participation in the underlying fraudulent scheme.  There can be no question that Plaintiffs have alleged a "unified course of fraudulent conduct" and rely "entirely on that course of conduct as the basis" of their claim.  *In re Daou*, 411 F.3d at 1027.  They have alleged a six-year scheme to secure investor funds for improper purposes, using numerous "substantially similar" PPMs containing misrepresentations or omissions to sell "overlapping integrated unregistered offerings of the notes" to "more than 20,000 investors" on a national basis by "at least 60 brokerage firms."  (*See* Compl. ¶¶ 4, 8, 66, 75, 83, 89-121; SA Mem. 13-14.)  Indeed, in the first two paragraphs of the SEC complaint relied on by Plaintiffs, it is alleged that "[t]his matter concerns fraud," and that the "Defendants are committing fraud in the offer and sale of MP VI Notes." (SEC complaint ¶¶ 1-2.)

Nevertheless, despite the clear requirement in this circuit that "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)" (*In re Daou*, 411 F.3d at 1027), Plaintiffs have failed to allege with any particularity whatsoever Securities America's alleged involvement in this fraudulent enterprise.

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

**DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN SUPPORT OF ITS MOTION TO DISMISS, ETC.**

Printed on Recycled Paper

M2Dismiss(SAI)_100524_Reply

Thus, the Complaint does not allege where Plaintiff Mitchell or the Sabroff Plaintiffs purchased their respective MP V and MP IV Notes, when such purchases were made, the allegedly false and misleading statements contained in the PPMs for those investments, or when those PPMs were even given to those Plaintiffs.  (*See* SA Mem. 18-19.)  Securities America is entitled to know precisely the conduct for which it has been sued, and when, where, and how such conduct facilitated the alleged fraud of the Medical Capital entities.  Plaintiffs' failure to so allege mandates dismissal of the claims against Securities America.

### B.      Plaintiffs Fail To Demonstrate That The Alleged Misrepresentations Or Omissions in the PPMs Were False or Misleading When Made

Securities America noted in its opening memorandum that Plaintiffs made no attempt to demonstrate that the alleged misrepresentations or omissions in the PPMs were false or misleading at the time the PPMs were issued, or more importantly, at the time of Plaintiffs' purchase of Notes from Securities America.  (*See* SA Mem. 19-20.)  Plaintiffs' Opposition fails to address this point.  Instead, Plaintiffs continue to rely in their Opposition on group pleading as to all Defendants, with no attempt to differentiate among the individual Defendants, and conclusory allegations regarding all six of the alleged Medical Capital offerings.   They make no attempt to differentiate among Plaintiffs, PPMs, specific alleged misrepresentations and/or omissions, or to substantiate the falsity of any of the alleged misrepresentations and/or omissions at the time of each individual Plaintiff's purchase.

As noted above, Plaintiff Mitchell purchased MP V Notes in December 2007 and July 2008, while the Sabroff Plaintiffs purchase MP IV Notes in July 2007. Plaintiffs, however, allege a purported series of misrepresentations and/or omissions in the PPM for MP VI, then conclusorily allege that the PPMs for each offering "were substantially similar in all material respects" (Compl. ¶ 83), but all of these allegations are conclusorily made within the context of a six-year pattern of conduct by the Medical Capital entities, with no attempt to highlight which statement or

15

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

**DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN
SUPPORT OF ITS MOTION TO DISMISS, ETC.**

Printed on Recycled Paper

M2Dismiss(SAI)_100524_Reply

1  omission became misleading at what point in time within that six year period.  For

2  example, in their Opposition Plaintiffs refer to the transfer of accounts receivable

3  among entities, commingling of funds, the characterization of non-medical collateral

4  as medical receivables, and the improper payment of administrative fees (Opp. 7), but

5  there is no allegation, and more importantly no facts on which to base even a

6  conclusory allegation, that any or all of these practices had occurred or were

7  occurring at the precise instance that Plaintiffs purchased their Notes from Securities

8  America.  *See In re Stac*, 89 F.3d at 1404 ("[T]he statement or omission must be

9  shown to have been false or misleading *when made*.") (emphasis in original).  The

10  Complaint must be dismissed for this additional reason.

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

16

DEFENDANT SECURITIES AMERICA, INC.'S REPLY MPAS IN
SUPPORT OF ITS MOTION TO DISMISS, ETC.

Printed on Recycled Paper

M2Dismiss(SAI)_100524_Reply

## 4.    CONCLUSION

For all of the foregoing reasons, and for the reasons discussed in Securities America's opening memorandum, all claims against Securities America should be dismissed.

Dated:  April 28, 2010            Respectfully submitted,


BRUCE M. BETTIGOLE
NICHOLAS T. CHRISTAKOS
PETER LIGH
SUTHERLAND ASBILL & BRENNAN LLP


By: /s/ Nicholas T. Christakos
    Nicholas T. Christakos

MIKE MARGOLIS
TIMOTHY J. MARTIN
MARGOLIS & TISMAN LLP


By: /s/ Timothy J. Martin
    Timothy J. Martin

Attorneys for Defendant
SECURITIES AMERICA, INC.

MARGOLIS & TISMAN LLP
ATTORNEYS AT LAW

444 SOUTH FLOWER STREET
SUITE 2300
LOS ANGELES
CALIFORNIA 90071

17

Printed on Recycled Paper